UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HOME POINT FINANCIAL CORPORATION,

    Plaintiff,

v.

DONALD MARK LANE, CANDACE ROBERTSON, CHRISTOPHER WILKINS, and GUARANTY HOME MORTGAGE CORPORATION,

    Defendants.

Case No. 6:20-cv-01819-CEM-EJK

### DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL EXPERT REPORT AND SUPPORTING MEMORANDUM OF LAW

Plaintiff served a timely damages expert disclosure and subsequently served rebuttal opinions from the same expert. However, two days after Defendants deposed the expert and confronted him with several flaws in his methodologies and opinions presented, Plaintiff served a "Supplemental Report" in an effort to rehabilitate its expert. This Supplemental Report was served at 11:57 p.m. on the day of the discovery cutoff. The Supplemental Report is untimely, an improper supplement, and should be stricken by the Court.

1

## BACKGROUND

Plaintiff brings this claim asserting that Defendants Lane and Robertson breached non-solicitation agreements by organizing a mass exodus of Plaintiff's mortgage underwriters in September of 2020, and that Guaranty Home Mortgage Corporation ("GHMC") conspired with Lane and Robertson and tortiously interfered with Plaintiff's non-solicitation agreements. On September 14, 2022, the Court entered the Third Amended Case Management and Scheduling Order ("CMO") (Dkt. 136) which set forth various deadlines in the case. Specifically, the CMO provided that Plaintiff's expert report disclosure would be March 31, 2023; Rebuttal expert report disclosure would be May 15, 2023; and discovery cut off would be June 15, 2023.

On March 30, 2023, the parties filed a Joint Unopposed Motion to Extend Expert and Discovery Deadlines by Approximately Thirty Days (Dkt. 155) seeking to extend the deadlines for Plaintiff's expert report disclosure (until April 28, 2023), Defendants' expert report disclosure (until June 1, 2023); Rebuttal expert report disclosure (until June 15, 2023), and discovery completion (until July 15, 2023). The Court promptly denied this joint motion, adding that "[d]ue to the Court's busy docket, the District Judge cannot accommodate further extensions in this case absent extraordinary circumstances . . . ." (Dkt. 156).

With the request for extension denied, Plaintiff served the Expert Report of Robert W. Crandall, MBA ("Initial Report") on March 31, 2023.[1] Mr. Crandall

---

[1] A redacted copy of the Initial Report is attached as Exhibit 1.

2

listed as a category of damages the disgorgement of certain profits of Defendant GHMC but did not include any value for these damages, instead "reserving the right" to supplement his report to reflect information learned from any subsequent production.

On May 15, 2023, after Defendants served their own expert report on damages, Plaintiff served the Rebuttal Expert Report of Robert W. Crandall, MBA ("Rebuttal Report").[2] While the Rebuttal Report purportedly addressed the opinions of Defendants' expert, it also added to the Initial Report by opining that the previously unvalued disgorgement of profits damages were over $3.1 million. Mr. Crandall stated in his Rebuttal Report that he may supplement the report, "[i]f more information is produced by GHMC regarding loans closed by these same employees after December 2020 . . . ." Mr. Crandall did not otherwise state that his analysis required more information.

Defendants took Mr. Crandall's deposition on June 13, 2023. Given the nature of Mr. Crandall's opinions and amount of damages alleged, Defendants incurred great expense to travel to California where Mr. Crandall resides to depose him.  When asked whether he had any additional updates or changes to his opinion, Mr. Crandall responded that he did not have any at that time but reserved the right to supplement his opinion or further reply to Defendants' expert.

Two days after Mr. Crandall's deposition, and at 11:57 p.m. on June 15, 2023 (the discovery cutoff date), Plaintiff served the Supplemental Expert Report of

---

[2] A redacted copy of the Rebuttal Report is attached as Exhibit 2.

3

Robert W. Crandall, MBA ("Supplemental Report").[3] In the first paragraph, Mr. Crandall claims he was presented documents at his deposition, and after considering those documents he updated his analysis. (Ex. 3 at 2). He then added that the Supplemental Report "does not claim new opinions." (Ex. 3 at 2). Despite this conclusory statement, the Supplemental Report was in fact rife with new opinions.

For example, Mr. Crandall, Home Point's damages expert, increased his opinion of the amount of damages in this matter from $6.9 million to $8.3 million. Mr. Crandall's Initial Report based its calculations on several categories of damages, including outside recruiter costs, signing bonus costs, and training time costs, on certain employees that Home Point claims it hired to replace the employees who had resigned; yet only two of the twelve employees listed in his Initial Report appear in his Supplemental Report. (Ex. 1 at 22; Ex. 3 at 12). The Supplemental Report also seeks disgorgement damages against Defendant GHMC for an additional eight-month period and used a completely different calculus to approximate GHMC's alleged profits. In fact, Mr. Crandall's Supplemental Report changed the values for seven out of the eight categories of damages upon which he opined.

Plaintiff also produced approximately 79 pages of documents at 11:32 p.m. on the same night as the Supplemental Report. The Supplemental Report cites to several of these "newly" produced documents in footnote 26. (Ex. 3 at 12).

---

[3] A redacted copy of the Supplemental Report is attached as Exhibit 3.

4

However, many of these documents had been previously produced and cited in Mr. Crandall's Initial Report. For example, HPLANE00004502 is reproduced at HPLANE00005518; HPLANE00004505 is reproduced at HPLANE00005519; and HPLANE00004515 is reproduced at HPLANE00005520.[4] This can best be summarized using Table S2 of the Supplemental Report, which lists the "Recruiting Invoice Amount" for eight employees. For each of these employees, the recruiting invoice to which Mr. Crandall cites had actually previously been produced under an earlier Bates number.[5] Thus, any suggestion that the changes were based on "new" information is improper because this information was already reviewed by Mr. Crandall prior to the Initial Report. (Ex. 1 at Attachment B, p. 2).

Likewise, the Supplemental Report relies on documents produced at GHMC 003257 and 003264 in the revised calculation of the purported disgorgement of profits section of Mr. Crandall's opinion. (Ex. 3 at 17). These documents were relied upon by Mr. Crandall in preparing his Rebuttal Opinion and expressly cited in footnote 40 on page 19 therein. (Ex. 2 at 19).

In fact, the only "new" document relied upon by Mr. Crandall that was not previously available to him was GHMC 003297, a single page spreadsheet describing the total number of loans funded per month and core earnings of GHMC

---

[4] The documents, which are invoices from various recruiting firms, have been marked as "Confidential" under the Parties' Confidentiality Agreement, and Defendants do not attach them as exhibits to this Motion. However, those invoices can be provided to the Court under seal for review upon request or at a hearing on this Motion.

[5] Footnote 27 of the Supplemental Report cites to four additional employees as having recruiting invoices, but each of these additional four employee had their recruiting invoice also produced in an earlier production.

5

per month during calendar year 2020. Using this document, the Supplemental Report now purports to extrapolate the percentage of loans funded in 2020 by the employees who resigned from Home Point *and* create estimates for the loans worked on by those employees from January through August 2021, as well as the total profits per loan funded during that time period. Aside from the fact that Mr. Crandall's methodology is flawed and purely speculative (e.g., he improperly uses 2020 data to frame a new opinion about profits in 2021), this new opinion raised the category of damages by $1.7 million. Notably, this "new" document was produced on May 24, 2023, several weeks before Mr. Crandall's deposition. Plaintiff made no effort to "supplement" Mr. Crandall's opinion before his deposition, which Plaintiff could have easily done.

## **M**EMORANDUM OF **L**AW

Complying with Rule 26 is "'not merely an aspiration' as 'the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise.'" *Reese v. Herbert,* 527 F.3d 1253, 1266 (11th Cir. 2008). The expert disclosure requirement is met when an expert disclosure "is sufficiently complete, detailed, and in compliance with the Rules **so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced.**" *Columna, Inc. v. United Healthcare Ins. Co.*, 2020 WL 624120, at *1 (S.D. Fla. Feb. 11, 2020) (emphasis added).

"Exclusion is also appropriate pursuant to Rule 16(b), which 'authorizes the district court to control and expedite pretrial discovery through a scheduling order'

and which gives the court 'broad discretion to preserve the integrity and purpose of the pretrial order,' including the exclusion of evidence as a means of enforcing the pretrial order." *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 2019 WL 2013007, at *6 (S.D. Fla. Mar. 11, 2019); *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1348–49 (11th Cir. 2004) (affirming the exclusion of an untimely expert report). Courts have broad discretion to exclude untimely expert testimony—even when it is designated as a "supplemental" report. *See Corwin v. Walt Disney Co.,* 475 F.3d 1239, 1252 (11th Cir. 2007) ("[A] supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed.").

## I.     Although labeled "supplemental," this is a new opinion.

"'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written expert report containing 'a *complete* statement of all opinions' and 'the basis and reasons therefore.'" *Reese v. Herbert*, 527 F.3d at 1265 (emphasis added). Parties are obligated under Federal Rule of Civil Procedure 26(e) to supplement an expert report "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect." A "supplement" is not a tool to set forth an entirely new opinion, as Plaintiff has done here. *See Brincku v. Nat'l Gypsum Co.*, 2012 WL 1712620, at *2 (M.D. Fla. May 15, 2012) ("A revised report which includes a new theory or opinion is not proper supplementation under Rule 26(e).")

7

In addition to changing Tables 2, 3, and 4 in his Supplemental Report based on information Mr. Crandall could and should have considered in his Initial Report (e.g., raising his opinion from $6.9 to $8.3, using different employees, and changing values of seven out of eight categories of damages upon which he opined), Mr. Crandall adds nearly $2 million to his opinion for disgorgement of GHMC's alleged profits based on an estimated amount of loans funded. While the Supplemental Report purports to use the "same methodology" as the Rebuttal Report, in reality, it is an entirely new opinion. The Rebuttal Report does not even reference damages relating to loans funded; rather, it states that he only needed to know "overall profit, expenses, and the number of loans closed for a period of time." (Ex. 2 at 17). At no point in the Rebuttal Report does Mr. Crandall calculate for loans funded (as opposed to loans underwritten) in his opinion—even though the Rebuttal Report refers to the loans funded by Plaintiff during 2020 (Ex. 2 at 17 (Table R3)). His new theory provides that he needs to reduce that number by a percentage to address the total loans funded over a period—a point that is never addressed in his rebuttal.

The Rebuttal Report further provides that, if information relating to the loans worked on by these specific employees after December 2020 is produced, Mr. Crandall would update his analysis. (Ex. 2 at 19). However, there was no subsequent production relating to data after December 2020 in this lawsuit. Instead, the Supplemental Report relies on industry data that was available at the time of his prior reports to "estimate" the number of units funded from January

8

2021 through August 2021. (Ex. 3 at 18). This is a material change in his opinion—made two days after his deposition—with information that was previously available but simply not considered by Mr. Crandall.

Because the new opinions are untimely, submitted 76 days after the Initial Report deadline, 31 days after the Rebuttal deadline, and three minutes before the close of discovery, the Supplemental Report should be stricken.

II. **Even if the Court does not consider the Report to be a new opinion, it is still an improper attempt to supplement in an effort rehabilitate Mr. Crandall's flawed opinions and methods.**

Parties are obligated under Federal Rule of Civil Procedure 26(e) to supplement an expert report "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC*, 2022 WL 523549, at *1 (M.D. Fla. Feb. 22, 2022); *see also Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019). However, Rule 26(e) "permits supplemental reports **only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report.**" *Aileron,* 2022 WL 523549, at *1 (citing *Companhia Energetica Potiguar v. Caterpillar Inc.*, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016))(emphasis added). An expert report thus "may not be supplemented in order **to cure a major omission or to remedy an expert's**

9

**inadequate or incomplete preparation."** *Id.* (citing *Lincoln Rock, LLC v. City of Tampa*, 2016 WL 6138653, at *2 (M.D. Fla. Oct. 21, 2016))(emphasis added). Succinctly, "a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report." *Guevara*, 920 F.3d at 719.

Mr. Crandall admits in his Supplemental Report that he was making changes to his opinion as a result of being confronted with conflicting documents at his deposition. (Ex. 3 at 2). He explains that, due to these documents, he prepared new Tables 2, 3, and 4 in his Supplemental Report. However, none of the documents presented to Mr. Crandall at his deposition were documents that had not previously been considered by Mr. Crandall in preparing his earlier reports. He merely failed to consider the data and information that he was presented and he prepared an admittedly flawed opinion.

For example, while footnote 26 in the Supplemental Report cites to "new" production, this "new" production was duplicative of documents previously produced in this matter—and upon which Mr. Crandall included as documents he previously considered. When reviewing Table S2 in the Supplemental Report relating to purported recruiting costs incurred by Plaintiff, Mr. Crandall identifies 12 Home Point employees who were not previously disclosed on prior reports from Mr. Crandall. Mr. Crandall then attributes a recruiting invoice amount as damages for six of these "new" employees. These "new" employees account for 75 percent of the amount of damages for this category of damages, and Mr. Crandall cites to recruiting invoices from these employees as the basis for his calculations.

However, the recruiting invoices for each one of these six "new" employees were previously produced by Plaintiff and were even listed in the documents considered by Mr. Crandall in his prior report. (*See* Ex. 1 at Attachment B, p. 2.)

It was merely Mr. Crandall's oversight and error that caused his prior reports to identify other harm that purportedly resulted from Defendants' actions. That is not a proper basis for a supplemental opinion under Rule 26. *See Guevara*, 920 F.3d at 719.

Finally, even if the single-page table produced at GHMC 003297—the lone document produced after the Rebuttal Report—was somehow instrumental to Mr. Crandall's opinion, that document was produced on May 24, 2023, nearly three weeks prior to his deposition. Yet Plaintiffs waited until *after* Mr. Crandall was deposed and until 11:57 p.m. on the last day of discovery to serve the Supplemental Report. There can be no basis for delaying the Supplemental Report until after the deposition, other than Mr. Crandall being confronted with his flawed analysis at his deposition. In short, Mr. Crandall is attempting a second bite at the apple after being educated by Defendants.

### III.   The late disclosure was not harmless or justified.

Rule 37(c)(1) provides a self-executing sanction for untimely disclosures; when "a party fails to provide information . . . as required by [Federal Rule] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Edmondson v. Caliente Resorts, LLC*, 2017 WL 10591833, at *13

11

(M.D. Fla. Aug. 31, 2017). Substantial justification requires justification to a degree that would satisfy a reasonable person that the parties could differ as to whether the party was required to comply with the disclosure request. *See Access Now Inc. v. Macy's E., Inc.*, 2001 WL 36380366, at *3 (S.D. Fla. Oct. 22, 2001). Courts have found harm is caused when a filing hinders the opposing party's ability to depose an expert, as is the case here. *See Guevara*, 920 F.3d at 719 (stating the failure was not harmless because the late filing foreclosed the defendants' opportunity to depose [the expert]); *Gargano v. Philip Morris USA, Inc.*, 2011 WL 13100471, at *2 (S.D. Fla. Aug. 1, 2011) (finding that a plaintiff's failure to serve expert reports is not harmless because a party may only take an expert's deposition after they have received a report).

Here, the late disclosure was in no way substantially justified or harmless. Mr. Crandall adds nearly $2 million to his value of the alleged disgorgement of profits damages, at best based on a single page document he received several weeks before his deposition. Yet, he waited until *after* his deposition and with only three minutes remaining in the discovery period to produce his Supplemental Report. By delaying until the last remaining moments of discovery, Plaintiff foreclosed Defendants' ability to inquire into the Supplemental Report or confront Mr. Crandall on his new opinions, theories and damages estimates. Notably, this was after the Court had already informed the parties that no extensions would be given absent extraordinary circumstances. (Dkt. 156). Plaintiff's unjustified delay was not due to any extraordinary circumstances. Even if Mr. Crandall were made

available for a second deposition outside of the discovery period, this would only come at a significant and unnecessary expense to the Defendants in additional legal fees, reporter fees, transcript fees, travel costs, and expert fees—expenses that Defendants should not be required to bear. As such, the Supplemental Report served after the deposition of Mr. Crandall is extremely harmful to Defendants. *See Guevara*, 920 F.3d at 719; *Gargano,* 2011 WL 13100471, at *2.

The facts in this case are similar to the facts in *Guevara*, where the Eleventh Circuit upheld the trial court's decision to exclude portions of a first supplemental report and a second supplemental report in its entirety. 920 F.3d at 718–19. In *Guevara*, the plaintiff served the first supplemental report almost a month after the rebuttal report disclosure deadline set by the court. *Id.* at 715. The first supplemental report was served on the Friday *before* the expert's Monday deposition, and contained previously undisclosed opinions and references to authoritative materials. *Id.* The plaintiff there asserted that the late report was necessary because of the late disclosure of certain documents by the defendant. *Id.* at 716. In that case, the trial court found that supplementing the report based on new information was justified but the expert "did not, however, have 'carte blanche to supplement everything in both his initial and rebuttal expert reports.'" *Id.* The court struck the portions of the first supplemental report that did not rely on new information. *Id.* It also struck the entirety of the second supplemental report because it was served five weeks after the new documents were received, it was

13

after close of discovery, and it did not leave defendants an opportunity to depose the expert about the report. *Id.*

In *Guevara*, the Eleventh Circuit affirmed the trial court's decision to strike the reports. *Id.* at 719. It noted that the trial court did not abuse its discretion—that serving the supplemental report on the eve of the deposition foreclosed defendant's ability to adequately depose the expert on the first supplemental report. *Id.* at 719. In the case at bar, Plaintiff served the Supplemental Report *after* Mr. Crandall's deposition.

Also important to note in *Guevara*, the Eleventh Circuit agreed that the first supplemental report was served in response to the defendant's report and was merely an attempt to bolster the plaintiff's expert's prior defective or problematic report. *Id.* This is directly on point with the present case, where the Supplemental Report was served in an effort to "correct" Mr. Crandall's prior reports.

Finally, in *Guevara* the Eleventh Circuit agreed with the trial court's decision to strike the second supplemental report in its entirety because it was served five weeks after the "new" information was received and a month after the discovery deadline. *Id.* Here, Mr. Crandall waited three weeks after receiving the "new" information before preparing the Supplemental Report, and the single-page document produced after he prepared his Rebuttal Report was only relied upon in the Supplemental Report for one section of damages. While it is true that the plaintiff in *Guevara* waited a month after the discovery deadline to prepare the second supplemental report, in this case, Plaintiff served the Supplemental Report

three minutes before midnight on the date of the discovery cutoff—effectively precluding any ability for Defendants to conduct discovery related to the Supplemental Report. Consistent with the Eleventh Circuit's guidance, the Court should strike the Supplemental Report. *Id.*

In contrast, the facts in this case are significantly distinguishable from the facts in cases where the courts have found substantial justification or harmless supplemental disclosures. For example, *SFR Services LLC v. Electric Insurance Company,* 2021 WL 1193284 (M.D. Fla. Mar. 30, 2021) is easily distinguishable because in that case the court analyzed an affidavit from an expert that was filed in response to a *Daubert* motion in a hurricane roof damage case. The affidavit primarily set forth the steps the disclosing expert took in performing his inspection, the origin of the documents he relied on in his initial opinion, and the specific building code he relied upon for his testing. *Id.* at *2. There, the court considered five factors in determining whether the affidavit was harmless or substantially justified. First, the court considered whether the affidavit was a surprise to the party against whom the evidence was offered. It found that the affidavit did *not* provide a critical link missing from the expert's earlier submissions and did not include any new theories, but instead included information that one would *expect* the producing party to elicit at trial. *Id.* at *5. Compare this to Mr. Crandall's Supplemental Report that unexpectedly changes the value of seven of his eight listed categories of damages.

15

The *SFR Services* court then looked at whether the surprise could be cured by reopening discovery. *Id.* The court determined that the minimal surprise could be easily cured by reopening discovery to allow the expert to be deposed. *Id.* Again, this is in stark contrast to the present matter where the Court has already determined that no extensions would be granted barring exceptional circumstances. Furthermore, Defendants here incurred significant expense to depose Mr. Crandall in California, just two days before the supplement was served. To force Defendants to bear the costs of a second deposition merely because Mr. Crandall failed to appropriately consider the facts in this lawsuit that were previously available to him is no easy cure and is not justified. Moreover, the late disclosure precludes Defendants' own expert from responding to these new opinions that should have been included in the Initial Report.

The *SFR Services* court next considered the extent to which allowing the evidence would disrupt the trial, the importance of the evidence, and the non-disclosing party's explanation for its failure to disclose the evidence. *Id.*  It is true that similar to *SFR Services*, the trial date in the case at bar is several months away and Mr. Crandall is Plaintiff's only witness.  However, the *SFR Services* court noted in its opinion that an expert does not have to stand mute in *response* to a *Daubert* motion. *Id.* at *6. Again, that is not the case in this matter, as Mr. Crandall did not supplement his opinion in response to a *Daubert* motion or to add clarity to his opinion. He changed his opinion as to seven of the eight categories of damages

16

after re-considering information he had already reviewed, and added $1.7 million to his overall damages estimate.

It is clear that the Supplemental Report is not the type of supplement that is permissible under the Rules and it is easily distinguishable from cases where the courts have permitted a supplement under Rule 26(e). It is not harmless or justified. Rather, it is exactly the type of supplement that is an improper effort to cure a major omission or to remedy an expert's inadequate or incomplete preparation. *Guevara*, 920 F.3d at 719.

Finally, this Motion to Strike is necessary because the Daubert deadline is September 1, 2023 and defendants need to know which expert report(s) their Daubert motion should attack—only the Initial and Rebuttal Reports or to include this Supplemental Report.

WHEREFORE, Defendant Guaranty Home Mortgage Corporation respectfully requests this Court strike Plaintiff's Supplemental Expert Report and award any such further relief as this Court deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned have conferred with Plaintiff's counsel in good faith regarding the relief requested in this motion and Plaintiff's counsel opposes the requested relief.

/s/ *Matthew F. Hall*
S. Gordon Hill (FBN 0094374)
Gordon.Hill@hwhlaw.com
Matthew F. Hall (FBN 092430)

        Matthew.Hall@hwhlaw.com
        Debra.Whitworth@hwhlaw.com
        Hill Ward & Henderson, P.A.
        101 E. Kennedy Blvd., Suite 3700
        Tampa, FL 3361-2231
        813.221.3900 – Telephone
        813.221.2900 – Facsimile
        *Counsel for Defendants Donald Mark Lane, Candace Robertson, Christopher Wilkins, and Guaranty Home Mortgage Corporation*