# Exhibit 3

to

DEFENDANTS'

MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL EXPERT
REPORT AND SUPPORTING MEMORANDUM OF LAW

CASE NO.: 6:20-cv-01819
CEM-EJK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**

| | |
|---|---|
| HOME POINT FINANCIAL CORPORATION, | **Case No. 6:20-cv-01819-CEM-EJK** |
| Plaintiff, | |
| vs. | **SUPPLEMENTAL EXPERT REPORT OF ROBERT W. CRANDALL, MBA** |
| DONALD MARK LANE, CANDACE ROBERTSON, CHRISTOPHER WILKINS, and GUARANTY HOME MORTGAGE CORPORATION, | |
| Defendants. | |

**Table of Contents**

I.     SUPPLEMENTAL ANALYSES EXPLANATION ................................................. 2

II.    QUALIFICATIONS .......................................................................................... 5

III.   DISCUSSION OF AVAILABLE DATA ............................................................. 6

IV.   SUPPLEMENTAL AND UPDATED ANALYSIS OF COSTS INCURRED BY HOME POINT ........................................................................................................ 6

A.     Defendants' raid caused Home Point to pay $2,570,214 in Retention Bonuses to Maitland office associates ...................................................... 6

B.     As result of Defendants' raid, Home Point was compelled to increase the base salaries of 10 associates to retain them or convince them to return ................. 8

C.     Home Point incurred significant recruiting costs to replace the associates Defendants raided ........................................................................................ 9

Home Point incurred $256,635 in signing bonuses to replace the associates solicited by Defendants ...................................................................... 13

D.     Home Point incurred $57,538 in training costs as a result of Defendants' solicitation of its already trained and experienced associates ................................ 14

E.     Disgorgement: GHMC avoided significant recruiting costs by using Ms. Robertson and Mr. Lane to solicit Home Point associates .................................... 16

F.     Disgorgement: The solicited associates contributed to GHMC's profits ............... 16

G.     Total Amount in Controversy to Date ................................................... 20

## I. SUPPLEMENTAL ANALYSES EXPLANATION

1.      The report below presents an updated analysis of the issues addressed in my March 31, 2023 and May 15, 2023 expert reports.  At my deposition on June 13, 2023, I was provided documents to consider and was asked whether these documents would modify my opinions. After considering such documents, I have updated my analysis as follows.  This Supplemental Report does not contain new opinions.

2.      Generally, the focus of the inquiry is what occurred prior to versus after the *en masse* resignations on September 17, 2020. After considering the documents provided, I have revised Tables 2, 3, and 4 in my May 31, 2023 Expert Report, which discuss the expenses associated with associates Home Point hired to replace the 16 associates Defendants Guaranty Home Mortgage Corporation ("GHMC"), Candance Robertson, and Donald Lane (collectively, the "Defendants") had solicited.  More specifically, Table 2 summarizes outside recruiter costs associated with replacement hires, Table 3 presents signing bonus costs associated with replacement hires, and Table 4 presents training time costs associated with replacement hires.[1]

3.      In constructing these tables, the first question is which associates are the replacements. The initial assumption was that the first individuals hired by Home Point after September 17th into the positions from which associates had been solicited were hired as replacements for the 10 Senior Underwriters, 5 Directors, and 1 Underwriting Support Specialist who were solicited by Defendants.  Employees selected for the original Table 2 were selected chronologically – based on hire date after the raid (rather than offer letter date). The hiring costs associated with these individuals were used to estimate Home Point's cost to replace the solicited associates who went to GHMC.  While the most recent new hires that were included in the original analysis would have in fact helped to replace the capacity lost due to the raid, their offer letters show they were

---

[1] Tables 1, 2, 3, and 4 of my report from March 31, 2020 are updated in this report as Tables S1, S2, S3, and S4, respectively.

offered employment prior to the September 17, 2020 mass resignation event.[2]  Defendants appear to argue these specific individuals were therefore not hired as the direct replacements for those who resigned because the hiring decision was made before the raid and resignation event (as a matter of Home Point's normal hiring during that time period). After the raid, Home Point made numerous other hires of Underwriters and related personnel in the ensuing weeks to make up for the sudden loss of substantial personnel.  Thus, in this Supplemental Report I make a simple modification to my replacement cost analysis by using the costs associated with the first 16 associates who were offered employment after the raid, based on employment offer date (rather than the date such individuals were actually hired). As shown below, while the names on Tables 2, 3, and 4 changed, there is very little difference in terms of the economic damages result after applying the same methodology used in my previous report.

4.      At my deposition, I was also asked to consider whether the number of replacement associates used in these tables should be limited to 10 because 6 associates eventually returned. Upon reflection, I believe that it was and is reasonable to include 16 replacements for all 16 raided associates because Home Point did not know in mid-September of 2020  that six of the solicited associates later would be dissatisfied with their compensation at GHMC, and, moreover, return to Home Point. Furthermore, the first two returning associates did not return until October 26, 2020 (over one month after providing their resignation notice) and others did not return until later (one employee as late as February of 2021).  Therefore, it is unreasonable to assume that Home Point would have excluded those positions from its search for replacement employees during the industry peak based on a decision that had not yet been made by these associates to return to Home Point in the future.

5.      Additionally, I was also asked if the 16 solicited associates had accrued Underwriter Appreciation Fund benefits and, if so, whether that should be offset from my damages analysis. I

---

[2] HPLANE 00005536-91

requested that Home Point provide me with data regarding the Underwriter Appreciation Fund amounts these associates had accrued (if any, as a number of the associates were not eligible for any amounts under the Fund) – and information regarding any amounts paid to such associated with respect to the Fund.[3] It is my understanding that these amounts were not vested or earned by the employees based on the terms of the Underwriter Appreciation Fund. While I do not believe that offsetting these amounts is required, I have nonetheless applied the accrued but unvested (and therefore unpaid) amounts as an offset to my analysis associated with retention bonuses.

6. Furthermore, in his initial report from May 1, 2023, Dr. Fishkind had claimed that "it is not at all clear that a reliable estimate for the incremental profits generated by a small number of specialized staff can be developed. The Report offers no guidance."[4] He further stated that, "the Report could have attempted to use data from the Plaintiff to estimate profits associated with the small contingent of recruited staff. It is telling that the Report made no such attempt. This is consistent with likely inability to make such an estimate to a reasonable degree of economic certainty."[5] Nonetheless, after GHMC produced limited documents showing the number of loans worked on by GHMC associates from July 2020 through December 2020, I estimated damages associated with disgorgement of profits for the loans worked on by the Home Point associates who accepted employment with GHMC after the raid using the MBA market average profit per loan in Q4 2020.[6] Dr. Fishkind again labels my analysis of $3.1 million in disgorgement of profits for the months of October 2020 through December 2020 as "grossly inflated and not reliable" in his Rejoinder report.[7] Furthermore, he provides an alternative reduced amount of $1,822,254 for the three-month period based on additional documents produced by GHMC on May 24, 2023, which was after my rebuttal.[8] Dr. Fishkind claims that the newly produced document that contains information associated with GHMC's profits per loan for 2020 shows that GHMC only

---

[3] HPLANE00005592, HPLANE00004934.
[4] Dr. Hank Fishkind Report, p.12, 19 paragraph 47, 71.
[5] Dr. Hank Fishkind Report, p.12
[6] GHMC 003257; 3264.
[7] Expert Report Rejoinder of Dr. Hank Fishkind, p.6
[8] Expert Report Rejoinder of Dr. Hank Fishkind, p.6; GHMC 003297

Expert Report of Robert Crandall

earned $2,195 per loan on average between October and December 2020.[9] In this supplemental report, I will comment upon the additional information produced by GHMC regarding its loan profits and provide a revised analysis by updating my disgorgement of profits analysis to incorporate the newly provided information.

## II. QUALIFICATIONS

7.      I am a Partner at Resolution Economics LLC, a firm whose activities include conducting labor economics studies, performing economic and statistical analyses, and providing complex data analysis in connection with litigation and non-litigation issues. I have been retained in an expert or consulting capacity in more than 500 class or collective action matters alleging wage and hour violations under the Fair Labor Standards Act ("FLSA") and various state laws and numerous matters alleging discrimination in hiring. Finally, I have been retained in hundreds of matters where I have been asked to analyze potential economic damages. In connection with this work, I often am asked to measure work related activities, how work is organized within the employer's operations and evaluate employee productivity. In the mortgage industry, I have served as an expert in several matters involving loan originators, underwriters, processors, and/or funders where the project goals were to evaluate the nature of the work employees performed and measure employees' hours worked and productivity. I hold an M.B.A. from Loyola Marymount University, and a B.A. degree in History from the University of Southern California. I have been qualified as an expert witness in both Federal and State Courts. My resume and a list of the cases in which I have testified as an expert at trial or by deposition during the last 4 years is attached to this supplemental report as **Attachment A**. My hourly rate is $800 per hour, which is the rate I customarily charge for both consulting work and expert testimony.

---

[9] Expert Report Rejoinder of Dr. Hank Fishkind, p.6

Expert Report of Robert Crandall

**III.  DISCUSSION OF AVAILABLE DATA**

8.     In addition to the data and documents relied upon in my previous two reports, I have been provided with all additional documents produced in this action by all parties including Defendants' expert Dr. Hank Fishkind's June 9, 2023 report and additional information produced by GHMC relating to its profits per loan for calendar year 2020. Additionally, I reviewed additional documents produced by Home Point related to the Underwriter Appreciation Fund as well as additional recruiting invoices for new hires. A list of materials relied upon is included at the end of this report as **Attachment B.**

**IV.  SUPPLEMENTAL AND UPDATED ANALYSIS OF COSTS INCURRED BY HOME POINT**

**A.  Defendants' raid caused Home Point to pay $2,570,214 in Retention Bonuses to Maitland office associates**

9.     My previous report noted that Defendants solicited Home Point's associates for the purpose of orchestrating a mass exodus of associates to cause a significant disruption to Home Point's business. When the raid on associates occurred, Home Point was forced to pay retention bonuses across the board to employees in its Maitland operating center and some salary increases to retain associates and continue their ability to service their business. As noted in my initial report, Home Point paid $2,647,214 in retention bonuses to Maitland associates as a result of Defendants' solicitation efforts and mass raid.[10] The records showed that Home Point paid 192 retention bonuses to Maitland associates totaling $2,482,214 on the 9/25/2020 pay date. Home Point paid an additional 10 retention bonuses to Maitland associates totaling $165,000 on the 10/9/2020 pay date. In total, I had initially estimated that Home Point was forced to pay $2,647,214 in retention bonuses.[11]

10.     At my deposition on June 13, 2023, I was provided a document regarding one associate, Etta Pelletier, who had been promised a $5,000 retention bonus on 9/3/2020 to be paid on

---

[10] HPLANE 00004536
[11] HPLANE 00004536

9/25/2020 and asked whether this document would change my damages estimate associated with retention bonuses.[12] However, the records show that on 9/25/2020, Etta Pelletier received a $20,000 retention bonus. After considering the document provided, I have revised my retention bonus analysis to exclude the $5,000 that was promised to Ms. Pelletier prior to the raid.[13]

11.     As mentioned above, during my deposition, I was also asked about the Underwriter Appreciation Fund benefits that were scheduled to be paid out in two instalments on 10/15/2020 and 12/31/2020.[14] The Defendants questioned whether some of the solicited associates had accrued Underwriter Appreciation Fund benefits prior to their departure and asked if these amounts should be used as on offset in my analysis. The Defendants' claim appears to be based on the notion that Home Point saved costs by not having to pay these unvested bonuses to the solicited associates. The records show that seven of the solicited associates had accrued approximately $72,000 in Underwriter Appreciation Fund benefits that were not paid because they elected to resign prior to the scheduled vesting and pay dates.[15] After considering the document produced by Home Point, I have further reduced the retention bonus damages by $72,000.[16] With this offset, the updated damages calculation associated with retention bonus payments is **$2,570,214**.[17]

---

[12] HPLANE 00005209-00005210
[13] After excluding the $5,000 bonus payment to Etta Pelletier, the retention bonus damages suffered by Home Point get reduced to **$2,642,214**.
[14] HPLANE 00004934
[15] HPLANE00005592
[16] HPLANE00005592
[17] I excluded $5,000 + $72,000 from my initial $2,647,214 damages associated with retention bonuses.

**B.  As result of Defendants' raid, Home Point was compelled to increase the base salaries of 10 associates to retain them or convince them to return**

12.      As noted in my previous report, Home Point increased the salaries of 10 of the solicited associates who agreed to remain with, or return to, the company. Of these associates, four (4) agreed to stay after submitting a resignation notice to Home Point and six (6) others decided to return to Home Point after joining GHMC. It was brought to my attention that one of the six associates who returned to Home Point, Daniel Cook, had an approved salary increase on September 7, 2020.[18] While Daniel Cook received a salary increase upon his return to Home Point from GHMC, Defendants questioned whether the promised salary increase prior to the raid should be used as an offset when calculating damages associated with salary increases. After considering this information, I have updated my previous Table 1 in Table S1 below to reflect the promised salary increase as an offset for Daniel Cook.

13.      Using the methodology described in my previous report, I calculate the damages associated with compensation increases for each of the 10 associates in Table S1. In total, the incremental increased salary cost paid to these associates through their termination date or the present if still employed by Home Point is approximately **$282,157**.[19]

---

[18] HPLANE00000120. Daniel Cook was promised a salary increased from $▮▮▮▮ to $▮▮▮▮ on September 7, 2020. Upon his return to Home Point from GHMC on or around December 21,2020, Home Point increased his salary to $▮▮▮▮. Thus, this adjustment reduces his salary increase to 11.8%.
[19] Bates labeled HPLANE 00004537; Bates labeled HPLANE 00005190.

**Table S1**
**Total Estimated Salary Increase Cost Incurred by Home Point**

| Name | Salary Effective Date or Re-hire Date | Last Termination Date | Salary on 8/30/2020 | Updated Salary | Difference Per Year | Difference Per Pay Period | Total Number of Pay Periods Post Salary Increase | Total Estimated Salary Increase Cost |
|------|------|------|------|------|------|------|------|------|
| Ann Webb | 11/30/2020 | 2/11/2022 | | | $19,710 | $758.08 | 32 | $24,259 |
| Maraliz Rodriguez | 10/26/2020 | 3/25/2022 | | | $9,726 | $374.08 | 37 | $13,841 |
| Dora Lopez | 10/26/2020 | 11/1/2022 | | | $19,140 | $736.16 | 53 | $39,016 |
| Charlene Murray | 12/7/2020 | 11/1/2022 | | | $23,552 | $905.84 | 50 | $45,292 |
| Jarrett Herrin | 2/22/2021 | 11/1/2022 | | | $20,503 | $788.56 | 45 | $35,485 |
| Daniel Cook | 12/21/2020 | - | | | $10,014 | $385.17 | 60 | $23,110 |
| Christine Grant | 10/5/2020 | 11/1/2022 | | | $5,034 | $193.60 | 55 | $10,648 |
| Jaclyn Huber | 9/7/2020 | 11/1/2022 | | | $20,010 | $769.60 | 57 | $43,867 |
| Jody Thoennes | 9/7/2020 | 3/29/2022 | | | $15,068 | $579.52 | 41 | $23,760 |
| Kellie Hamilton | 9/7/2020 | 1/26/2022 | | | $16,076 | $618.32 | 37 | $22,878 |

Total: **$282,157**

### C. Home Point incurred significant recruiting costs to replace the associates Defendants raided

14.     In my initial report on March 31, 2023, I had estimated damages related to Home Point incurring recruiting fee expenses associated with finding replacements for the 16 individuals GHMC hired away.[20] My initial estimate was prepared by identifying replacement associates based on hire dates after the September 17, 2020 raid.  As mentioned above, during my deposition, Defendants questioned whether some of the individuals selected were true replacements for the solicited associates because they were sent offer letters prior to the *en masse* resignation. As noted above, while these new hires may have restored some of Home Point's lost capacity, the decision to hire them was made prior to the resignation event.

---

[20] The 16 hired away were: 10 Senior Underwriters, 5 Directors, and 1 Underwriting Support Specialist.

Expert Report of Robert Crandall

15.     It is important to note that the purpose behind Table 2 is estimating damages associated with Home Point's cost of finding replacements for 16 specific associates that were hired away by GHMC, rather than to identify their specific replacements by name. While it is true that some of the individuals on my prior Table 2 had received offers prior to the raid, I have in this supplemental report made a simple modification to my replacement cost analysis by using the costs associated with the first 16 associates that Home Point hired after the raid based on their offer dates. More specifically, I reviewed a list of all new hires starting on October 1, 2020 to ensure the hiring process occurred after the raid.[21] This modification does not have any impact on my substantive conclusions.

16.     As mentioned above, Home Point lost 10 Senior Underwriters, 5 Directors, and 1 Underwriting Support Specialist. Table S2 below includes a list of all 16 associates that were used in my analysis as replacements for the 16 associates that were hired away.[22,23] As described above, I selected replacements based on chronological order in which their offer letters were sent, and I stopped when I identified a potential replacement for each of the raided employees. In doing so, my damages analysis includes only 14 new hires because two of the solicited associates returned to Home Point before Home Point had replaced all 16 associates. In other words, these two associates are counted as both associates that were hired away, and as replacements.

17.     Furthermore, after selecting the 16 replacement associates based on the methodology described above, I reviewed whether Home Point incurred recruiting fees in connection with their

---

[21] There were three new hires with offer letter dates of September 22, 2020 that were likely engaged in the hiring process before the September 17, 2020 raid. I started with new hires on the next available offer date, October 1, 2020, to allow for a buffer for interview time for the replacement associates.

[22] It is my understanding that Home Point promoted three associates to Directors from Sr. Underwriter positions to replace the solicited Directors. The three associates were: Nancy Fulton, Christina Rodriguez, and Michael Denio. Therefore, I selected 13 Sr. Underwriter replacements (10 that left and 3 that got promoted to director), two director replacements (the other three were promoted within), and one Underwriter Support Specialist. In other words, Home Point still had to find replacements for a total of 16 associates.

[23] My initial Table 2, only listed associates with recruiting costs.

Expert Report of Robert Crandall

hiring.[24] As shown on Table S2, some newly hired associates, such as Lisa DiGiorgio and Matthew Kelley, did not have any recruiting costs.[25] Additionally, the two associates on Table S2 who were solicited by Defendants but returned to Home Point (Maraliz Rodriguez and Dora Lopez) would have $0 in associated recruiting costs. The invoices show that out of the 16 total replacement associates, Home Point incurred recruiting costs for 12 of them totaling **$165,417**. Table S2 below identifies the recruiting expenses Home Point incurred in replacing the positions held by the Maitland associates who left for GHMC. As shown below, while the names on Table S2 changed, there is very little difference in terms of the economic damages results after applying the same methodology as used in my previous report where 16 associates were hired to replace 16 associates hired away by Defendants.

---

[24] HPLANE00005517-35
[25] It is my understanding that Lisa DiGiorgio was referred through Home Point's Family First program.

Expert Report of Robert Crandall

**Table S2**
**Total Estimated Recruiting Costs Incurred by Home Point[26,27]**

| No. | Name | Hire Date | Offer Letter Sent Date | Job Title | Recruiting Firm | Recruiting Invoice Amount |
|-----|------|-----------|------------------------|-----------|-----------------|---------------------------|
| 1 | Brodrick, Douglas | 11/2/2020 | 10/1/2020 | Senior Underwriter | Park Hudson | $19,440 |
| 2 | Burton, Lacie | 10/26/2020 | 10/2/2020 | Senior Underwriter | Parker & Lynch | $16,202 |
| 3 | Owighowotu, Michele | 10/26/2020 | 10/5/2020 | Senior Underwriter | Park Hudson | $20,700 |
| 4 | Sanders, Michelle R | 10/26/2020 | 10/5/2020 | Senior Underwriter | Model Match | $22,200 |
| 5 | Martinez, Elizabeth | 11/9/2020 | 10/14/2020 | Senior Underwriter | Park Hudson | $19,800 |
| 6 | Brown, Sharelle | 11/9/2020 | 10/16/2020 | Senior Underwriter | Park Hudson | $20,700 |
| 7 | Klbecka, Linda | 11/9/2020 | 10/16/2020 | Senior Underwriter | Judge Technical Staffing | $0 |
| 8 | Redditt, Charetta M | 11/2/2020 | 10/21/2020 | Senior Underwriter | Judge Technical Staffing | $0 |
| 9 | Washington, DeNina C | 11/9/2020 | 10/23/2020 | Senior Underwriter | Judge Technical Staffing | $25,375 |
| 10 | Rodriguez, Maraliz | 10/26/2020 | - | Senior Underwriter | Rehire | $0 |
| 11 | Lopez, Dora | 10/26/2020 | - | Senior Underwriter | Rehire | $0 |
| 12 | Lubischer, Heather L | 11/30/2020 | 10/26/2020 | Senior Underwriter | Judge Technical Staffing | $0 |
| 13 | Vessell, Beverley C | 11/16/2020 | 10/27/2020 | Senior Underwriter | Insight Global | $0 |
| 14 | DiGiorgio, Lisa | 10/19/2020 | 10/8/2020 | Underwriter Support Specialist | - | $0 |
| 15 | Bertrand, Adam | 11/30/2020 | 11/6/2020 | Director - Underwriting Manager | Model Match | $21,000 |
| 16 | Kelley, Matthew | 12/7/2020 | 11/9/2020 | Director - Underwriting Manager | - | $0 |

**Total:** **$165,417**

[26] HPLANE00005517-35, HPLANE 00005593-95
[27] Linda Klbecka, Charetta Redditt, Beverly Vessell, and Heather Lubischer all had recruiting invoices in the data totaling $87,625, however, I did not include them in my damages calculation because they all had a tenure at Home Point of less than three months.

**Home Point incurred $256,635 in signing bonuses to replace the associates solicited by Defendants**

18.     In my initial report, I had estimated damages associated with signing bonuses paid by Home Point to replace associates that were solicited by Defendants. Table S3 includes the same associates on Table S2 of this report and reflects the same process of selecting replacement associates based on offer dates. The replacement associates that did not receive a signing bonus are included as $0 on Table S3, such as Charetta Redditt, Beverley Vessell, and Matthew Kelley.[28],[29] Review of the offer letters and payroll data shows that Home Point offered a total of $216,635 in signing bonuses to 14 of the 16 individuals who were hired after the solicitation to replace the associates who were solicited as an incentive to join Home Point so they could continue servicing their business.[30] In addition to these 14 associates, Home Point also offered a total of $40,000 in signing bonuses to the two Senior Underwriters who had left for GHMC and then returned to Home Point. Table S3 below presents the total signing bonus per associate and demonstrates that Home Point incurred signing bonus costs that totaled **$256,635** as a result of Defendants' mass raid. As shown below, while the names of the associates on Table S3 changed, my opinion and methodology remain the same where 16 associates were hired to replace the 16 associates hired away by Defendants.

---

[28] Table 3 of my initial report from March 31, 2023 did not include associates that did not receive a signing bonus.
[29] Linda Klbecka and Heather Lubischer each had a $10,000 signing bonus in the data, however I did not include them in my damages calculation because they all had a tenure at Home Point of less than three months.
[30] Bates labeled HPLANE 00005190

**Table S3**
**Total Estimated Training Costs Incurred by Home Point[31]**

| No. | Name | Job Title | Signing Bonus Amount |
|-----|------|-----------|---------------------|
| 1 | Brodrick, Douglas | Senior Underwriter | $ |
| 2 | Burton, Lacie | Senior Underwriter | $ |
| 3 | Owighowotu, Michele | Senior Underwriter | $ |
| 4 | Sanders, Michelle R | Senior Underwriter | $ |
| 5 | Martinez, Elizabeth | Senior Underwriter | $ |
| 6 | Brown, Sharelle | Senior Underwriter | $ |
| 7 | Klbecka, Linda | Senior Underwriter | $0 |
| 8 | Redditt, Charetta M | Senior Underwriter | $0 |
| 9 | Washington, DeNina C | Senior Underwriter | $ |
| 10 | Rodriguez, Maraliz | Senior Underwriter | $ |
| 11 | Lopez, Dora | Senior Underwriter | $ |
| 12 | Lubischer, Heather L | Senior Underwriter | $0 |
| 13 | Vessell, Beverley C | Senior Underwriter | $0 |
| 14 | DiGiorgio, Lisa | Underwriter Support Specialist | |
| 15 | Bertrand, Adam | Director - Underwriting Manager | |
| 16 | Kelley, Matthew | Director - Underwriting Manager | $0 |

Total: $256,635

### D. Home Point incurred $57,538 in training costs as a result of Defendants' solicitation of its already trained and experienced associates

19.　　My initial report also estimated damages associated with training the replacement hires. Therefore, I made the same adjustments as Table S2 and Table S3 to Table S4 to address Defendants' concern of selecting associates with offer dates after the raid. As I mentioned in my previous report, Home Point was paying the replacement associates while they were going through Home Point's two-week period training program without underwiring any loans.[32] Thus, the salary costs incurred for the new hire replacements during their training period represent an incremental expense incurred by Home Point. Table S4 below shows the hire date for each new associate and their hourly base rate at the time of hire, as well as an estimate of their total two-

---

[31] Bates labeled HPLANE 00005190
[32] Declaration of Donald Mark Lane, p.2

week training cost. As shown on Table S4, Home Point incurred total training costs of **$57,538** for the 16 replacement associates.[33]

**Table S4**
**Total Estimated Training Costs Incurred by Home Point[34]**

| No. | Name | Hire Date | Offer Letter Sent Date | Job Title | Base Hourly Rate | Training Hours (40 * 2) | Total Training Cost |
|---|---|---|---|---|---|---|---|
| 1 | Brodrick, Douglas | 11/2/2020 | 10/1/2020 | Senior Underwriter | $ | 80 | $4,154 |
| 2 | Burton, Lacie | 10/26/2020 | 10/2/2020 | Senior Underwriter | $ | 80 | $4,154 |
| 3 | Owighowotu, Michele | 10/26/2020 | 10/5/2020 | Senior Underwriter | $ | 80 | $4,423 |
| 4 | Sanders, Michelle R | 10/26/2020 | 10/5/2020 | Senior Underwriter | $ | 80 | $4,539 |
| 5 | Martinez, Elizabeth | 11/9/2020 | 10/14/2020 | Senior Underwriter | $ | 80 | $4,423 |
| 6 | Brown, Sharelle | 11/9/2020 | 10/16/2020 | Senior Underwriter | $ | 80 | $4,423 |
| 7 | Klbecka, Linda | 11/9/2020 | 10/16/2020 | Senior Underwriter | $ | 80 | $4,039 |
| 8 | Redditt, Charetta M | 11/2/2020 | 10/21/2020 | Senior Underwriter | $ | 38 | $1,919 |
| 9 | Washington, DeNina C | 11/9/2020 | 10/23/2020 | Senior Underwriter | $ | 80 | $4,423 |
| 10 | Rodriguez, Maraliz | 10/26/2020 | 10/26/2020 | Senior Underwriter | Rehire | | $0 |
| 11 | Lopez, Dora | 10/26/2020 | 10/26/2020 | Senior Underwriter | Rehire | | $0 |
| 12 | Lubischer, Heather L | 11/30/2020 | 10/26/2020 | Senior Underwriter | $ | 80 | $4,423 |
| 13 | Vessell, Beverley C | 11/16/2020 | 10/27/2020 | Senior Underwriter | $ | 80 | $3,846 |
| 14 | DiGiorgio, Lisa | 10/19/2020 | 10/8/2020 | Underwriter Support Specialist | $ | 80 | $2,885 |
| 15 | Bertrand, Adam | 11/30/2020 | 11/6/2020 | Director - Underwriting Manager | $ | 80 | $4,808 |
| 16 | Kelley, Matthew | 12/7/2020 | 11/9/2020 | Director - Underwriting Manager | $ | 80 | $5,077 |

**Total:** **$57,538**

---

[33] I did not assign any training costs for the two associates who were solicited but returned to Home Point.
[34] Charetta Redditt only worked a total of 38 hours, therefore I capped her training at 38 hours.

Expert Report of Robert Crandall

**E. Disgorgement: GHMC avoided significant recruiting costs by using Ms. Robertson and Mr. Lane to solicit Home Point associates**

20.     In my initial report from March 31, 2023, I presented an analysis that estimated an average market recruiting fee percentage. This average was used to calculate disgorgement due to GHMC's avoidance of recruiting costs for the solicited Home Point associates. After considering Defendants' argument of selecting people with both hire dates and offer letter sent dates after the solicitation, I decided that replacing Table 5 and Table 6 is unnecessary. My previous analysis had estimated an average market recruiting fee of 14.6%. Updating this analysis with the recruiting invoices for the replacements from Tables S2, S3, and S4 would result in exactly the same average market recruiting fee of 14.6%. The reality is that both of these percentages are a proxy for the average market recruiting fees that are used in Table 6 to estimate disgorgement due to GHMC avoiding recruiting expenses for the specific 16 solicited associates listed in Table 6. Therefore, I kept the same estimated average market recruiting fee of 14.6% in Table 6 which results in the same exact estimate of **$239,037** in avoided recruiting fees.

**F. Disgorgement: The solicited associates contributed to GHMC's profits**

21.     In my Rebuttal Report, I estimated disgorgement due to the additional profits GHMC earned that were generated by the solicited Home Point associates. My analysis was based on a document that GHMC produced that contains the number of loans worked on per solicited Home Point associate, and was limited to the period spanning from July 2020 to December 2020.[35] My Rebuttal Report noted that disgorgement of profits would potentially be higher due to the fact that the analysis reflected a limited time period based on the available data. Since the filing of my Rebuttal Report, GHMC has produced a document that shows the number of units funded per month through December of 2020.[36] Using this, in conjunction with the documents that show the

---

[35] GHMC 003257. For the purposes of my analysis, I looked at the data from the relevant time period spanning from October 2020 through December 2020.

[36] GHMC produced a document with a bates stamp GHMC 003297 which Defendants' expert, Dr. Fishkind, also relied upon. It is my understanding the documents I relied upon in my Rebuttal Report reflect the number of loans worked on, not necessarily the number of units funded per solicited Home Point associate. It is possible that

number of loans worked on overall by month and the number of loans worked on by associate per month, I am able to update my prior disgorgement calculation to reflect units funded, as well as estimate a projection for disgorgement of profits through the end of the loans worked on data (August of 2021).[37]

22.    This analysis can be conducted by taking the following steps:

    1)    Calculate GHMC's average funding percentage for the period that both the number of loans worked on and the number of units funded are available;

    2)    Estimate the number of units funded in the period for which only the number of loans worked on is available by applying the average funding percentage to the number of loans worked on;

    3)    Calculate the average percentage of loans worked on attributed to the solicited Home Point associates by dividing their number of loans worked on by the overall number of loans worked on;

    4)    Calculate the estimated number of units funded per solicited Home Point associate by applying each associate's share of loans worked on to the total estimated units funded; and,

    5)    Apply average profit per loan to each unit funded.

23.    More specifically, first, the overall number of loans worked on per month is first compared to the overall number of units funded per month for the period that both metrics are available (January 2020 through December 2020).[38] Second, the overall average funding percentage is calculated for this period by summing up all units funded (████), separately summing up all units worked on (████), and then dividing the number of units funded by the

---

associates work on loans that do not result in a unit funded. Therefore, I am now able to update my disgorgement estimates with the additional data I was provided.

[37] GHMC 003264

[38] GHMC 003264 contains the overall number of loans worked on per month and GHMC 003297 contains the overall number of units funded per month.

number of loans worked on ( ▬ / ▬ = 76.5%). Third, the number of units funded is calculated by applying the average funding percentage to the number of loans worked on per month for the period that the number of loans worked on is available, but the number of units funded is not available (January 2021 through August 2021). Fourth, the share of total loans worked on for each of the solicited Home Point associates is estimated by summing up their total loans worked on, separately summing up the overall total loans worked on, and dividing their individual total number of loans worked on by the overall total number of loans worked on.[39] Finally, their average share percentage is applied to the estimated number of units funded for the period spanning from January 2021 through August 2021.[40]

24.    Using this methodology, along with the additional data produced by GHMC, I am able to estimate that of the 830 loans worked on by solicited Home Point associates from October 2020 through December 2020 that I relied upon in my Rebuttal Report, 705 would have also been units funded. Furthermore, I estimate that the solicited Home Point associates would have generated an additional 787 units funded for the period spanning from January 2021 through August 2021. In total, the solicited Home Point associates would account for an estimated 1,492 units funded for the period spanning from October 2020 through August 2021.[41] This estimate is still likely an underestimation as six solicited Home Point associates were still active at GHMC up until, and potentially beyond, that date.

---

[39] GHMC 003257 contains the number of loans worked on per solicited Home Point associate. This document contains unredacted data for 10 solicited Home Point associates, namely Ann Webb, Brian Dwyer, Carla Rigdon, Chandy Burke, Charlene Murray, Chris Wilkins, Claudio Betts, Daniel Cook, Jarrett Herrin, and Michelle Izquierdo. It does not contain data for Patricia Clark, Maraliz Rodriguez, Mary Townsend, Dora Lopez, Kristen Wahl, or Maureen Deal. As a conservative estimate, I only included the 10 individuals contained in the data for my analysis.
[40] Four solicited Home Point associates had termination dates from GHMC listed in GHMC 003263 and/or GHMC 003261. Ann Webb left GHMC on 11/24/2020, Daniel Cook left GHMC on 12/18/2020, Charlene Murray left GHMC on 12/4/2020, and Jarrett Herrin left GHMC on 2/19/2021. Thus, my analysis ends at their termination month for these associates. All other associates in my analysis did not have a termination date before the end of my analysis in August 2021.
[41] All estimated monthly units funded were rounded down to complete units. For example, if I estimated an associate would account for 16.8 units funded in June of 2021, I would only count the 16 complete units funded.

25.     Using the same methodology from my Rebuttal Report, the quarterly average profit per loan from the MBA report is applied to the estimated units funded.[42,43,44,45,46] Applying this to the 1,492 units funded, I estimate a total additional profit of **$4,810,743** gained by GHMC as a result of its mass raid as shown on Table S5. Although Defendants argue that this methodology results in "double-dipping" because disgorgement of avoided recruiting costs should be included as an expense in my calculations, such expenses are already included in the MBA average that I apply.

**Table S5**
**Total Additional Profits Generated by Solicited Home Point Associates**
**- October 2020 through August 2021 -**

| Solicited Former Home Point Associate | Total Number of Units Funded | | | | | | | | | | | | Total Profit Using Quarterly MBA Average |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Oct 2020 | Nov 2020 | Dec 2020 | Jan 2021 | Feb 2021 | Mar 2021 | Apr 2021 | May 2021 | Jun 2021 | Jul 2021 | Aug 2021 | Total | |
| Ann Webb | | | | | | | | | | | | | |
| Brian Dwyer | | | | | | | | | | | | | |
| Carla Rigdon | | | | | | | | | | | | | |
| Chandy Burke | | | | | | | | | | | | | |
| Charlene Murray | | | | | | | | | | | | | |
| Chris Wilkins | | | | | | | | | | | | | |
| Claudio Betts | | | | | | | | | | | | | |
| Daniel Cook | | | | | | | | | | | | | |
| Jarrett Herrin | | | | | | | | | | | | | |
| Michelle Izquierdo | | | | | | | | | | | | | |
| **Total** | 209 | 261 | 235 | 141 | 120 | 105 | 91 | 96 | 70 | 74 | 90 | 1,492 | $4,810,743 |

---

[42] Mortgage Bankers Association: https://www.mba.org/news-and-research/research-and-economics/single-family-research/mortgage-bankers-performance-reports-quarterly-and-annual

[43] Pre-Tax Loan Production Income= Loan Production Revenue (1) - Fully-loaded Loan Production Expense (2)

[44] (1) Loan Production Revenue: Includes origination fees, net secondary marketing income, net warehousing income, and other origination-related revenue

[45] (2) Fully-loaded loan production expense:  Includes personnel expenses, occupancy and equipment and miscellaneous expenses for sales, fulfillment and post-closing activity.  Also includes corporate allocations.

[46] The average profit per loan was $3,738 for Q4 2020, $3,361 for Q1 2021, $2,023 for Q2 2021, and $2,594 for Q3 2021. I apply the Q4 2020 average to October, November, and December 2020, the Q1 2021 average to January, February and March 2021, the Q2 2021 average to April, May, and June 2021, and the Q3 2021 average to July and August 2021.

## G. Total Amount in Controversy to Date

26.     Table S6 below summarizes the total estimated damages to date.

**Table S6**
**Summary of Damages Amounts**

| | |
|---|---|
| Estimated Damages Due to Home Point Payment of Lane's Salary In Early September 2020 | $2,773 |
| Estimated Damages Due to Retention Bonuses Paid by Home Point | $2,570,214 |
| Estimated Damages Due to Salary Increases Paid by Home Point | $282,157 |
| Estimated Damages Due to Recruiting Costs for Replacement Associates | $165,417 |
| Estimated Damages Due to Signing Bonuses Paid to Replace Solicited Associates | $256,635 |
| Estimated Damages Due to Training Costs Associated with Replacement Associates | $57,538 |
| Estimated Disgorgement Due to GHMC's Avoidance of Recruiting Costs for Solicited Associates from Home Point | $239,037 |
| Estimated Disgorgement of GHMC Profits on Loans Closed by Solicited Former Home Point Associates Over the October 2020 through August 2021 Period | $4,810,743 |

**Total:     $8,384,513**

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief. This declaration was executed in Los Angeles, California on June 15, 2023.

_____
Robert W. Crandall

**Attachment A**



1925 Century Park East
15th Floor
Los Angeles, CA 90067
Office.310.275.9137
Fax.310.275.9086
RCrandall@resecon.com

# ROBERT W. CRANDALL, PARTNER

Robert W. Crandall is a Partner in the litigation consulting practice of Resolution Economics LLC. He has a M.B.A. from Loyola Marymount University and a B.A. in History from the University of Southern California. Prior to the formation of Resolution Economics, Mr. Crandall was with the Dispute Consulting Group at Deloitte & Touche, the Economics & Litigation Services Group at Altschuler, Melvoin & Glasser, and the Dispute Analysis & Corporate Recovery Group at Price Waterhouse.

Mr. Crandall provides consulting services and expert witness testimony related to a variety of practice areas. He has provided expert testimony in deposition, trial, arbitration, and other forums. He specializes in estimating damages, evaluating business issues and business operations, designing and conducting observation studies and surveys related to work activities, assessing economic and statistical approaches to litigation issues, and performing forensic programming and analysis of large complex databases. Mr. Crandall has significant experience in analyzing complex data for the purpose of assisting counsel in evaluating class certification and liability. He is frequently asked to present findings related to class certification, merits, and economic exposure for alternative dispute resolution forums such as mediation, settlement conferences, and arbitration.

## Professional Experience

Mr. Crandall has considerable experience in providing economic and/or statistical analyses related to employment litigation matters. Also, he performs general damages analysis, forensic accounting, business valuations, and statistical analysis in a broad range of matters where the underlying issues are: breach of contract, antitrust, intellectual property, environmental claims, and insurance coverage. In addition, Mr. Crandall has considerable expertise in financial modeling, creating large databases from paper records and diverse data sources, designing, implementing, and analyzing surveys, and conducting statistical analysis related to complex data intensive litigation assignments. Finally, Mr. Crandall is experienced in analyzing job duties and content and business operations.

## Employment Discrimination Liability Analysis

Mr. Crandall has performed numerous statistical analyses of liability related to class action, multi-plaintiff, and single plaintiff claims of employment discrimination. He is experienced at analyzing claims alleging discrimination in hiring, promotion, placement, termination, discipline, and pay equity. Assignments representative of Mr. Crandall's experience in employment discrimination include the following:

- Provided consulting services to defense counsel in a class action matter alleging racial discrimination in the officer disciplinary process at a very large police department. Services included statistical analysis of data to test plaintiffs' allegations and work related to rebutting analysis proffered by plaintiffs' expert.



- Provided consulting services to defense counsel in a class action matter, brought by the EEOC, alleging discrimination in recruiting, hiring and placement at a hotel. Created an applicant database, and performed SAS programming and statistical analysis related all three issues. Analyzed opposing expert analysis and assisted counsel in developing cross-examination.

- Provided consulting services to defense counsel in a class-action matter brought by the EEOC alleging age discrimination in terminations at a major law firm. Services included building analytical databases from multiple sources of information, performing statistical analysis related to the discrimination claim, estimating economic exposure for mediation/ settlement discussions.

- Provided consulting services to defense counsel in multi-plaintiff action alleging age discrimination at a major clothing retailer. Services included researching external labor market characteristics for individuals with the plaintiff's occupation. Created financial models to calculate damages under a variety of offset scenarios.

- Provided consulting services to defense counsel in multi-plaintiff action alleging racial discrimination in work assignments at a government agency. Services included performing statistical analysis to determine if minority workers received a disproportionate share of unfavorable work assignments.

- Provided consulting services to defense counsel in a multi-plaintiff action alleging gender discrimination in promotions at a large city police department. Services included performing statistical analysis of promotions and placements into coveted positions.

- Provided consulting services to defense counsel in multi-plaintiff action alleging age discrimination following a reduction of force at a hospital. Services included performing statistical analysis of liability and critiquing the analyses proffered by plaintiffs' expert.

- Provided consulting services to defense counsel in a large national class action employment dispute alleging gender discrimination at a warehouse style home and garden center retailer. Performed SAS programming and statistical analyses related to hiring, initial placement, and initial pay of applicants. Performed statistical analyses of female availability in the external labor market. Provided deposition support to counsel including drafting questions for the deposition of the opposing expert witness.

- Provided consulting services to defense counsel in a class action employment matter brought by the EEOC. Constructed a damage model that placed minority applicants in jobs awarded to White employees through analysis of the difference between actual and expected hires based on various flexible assumptions. Developed a random placement model testing both minority and non-minority placements. After placing the minority applicants at an appropriate rate during the damages period, the model calculated the damages of the applicants based on the time of their placement and other labor market factors.

- Provided consulting services to defense counsel in a single plaintiff action alleging age discrimination by a large international food company. Performed SAS programming and statistical analysis of terminations. Analyzed the work product of opposing expert. Assisted in drafting questions for use at deposition.



- Provided consulting services to defense counsel in a class action matter alleging age discrimination at a major drug store chain. Performed statistical analysis related to terminations of store managers and assistant managers, reviewed and critiqued analysis of opposing experts.

- Provided consulting services to defense counsel in a single plaintiff matter alleging age discrimination in terminations resulting from a reduction in force. Services included performing statistical analysis of termination claims.

- Provided consulting services to defense counsel in a multi-plaintiff matter alleging national origin discrimination at a waste management company. Performed statistical analyses to test plaintiffs' claims. Developed external labor market benchmarks.

- Provided consulting services to outside counsel in connection to performing statistical analysis of proposed workforce reductions at a publishing company. Tested various reductions in force scenarios for statistical significance. Assisted counsel in creating a RIF plan that avoided adverse impact on protected classes.

- Provided consulting services to outside counsel in connection to performing statistical analysis of proposed workforce reductions at a medical supply manufacturing company. Tested various reductions in force scenarios for statistical significance. Assisted counsel in creating a RIF plan that avoided adverse impact on protected classes.

- Provided consulting services to defense counsel in a wrongful termination matter alleging racial discrimination at a major defense contractor. Examined workforce composition in response to allegations of systematic discrimination based on race. Analyzed external labor market availability to determine minority representation in the industry by job classification. Created a visual representation of results to be used as exhibits in trial. Calculated loss of earnings related to the termination. Drafted cross-examination questions for the examination of plaintiff's expert.

## Class Action Wage and Hour Claims

Mr. Crandall has been involved in more than 500 class action wage and hour matters. He is highly experienced in analyzing liability, damages, and class-member commonality related to wage and hour claims. He is experienced in designing, implementing, and analyzing surveys and time-in-motion studies and performing forensic data analysis related to job content, exempt / non-exempt status, independent contractor / employee status, hours worked, uncompensated time, meal and rest breaks, improper pay calculations, and other issues. Finally, Mr. Crandall has significant experience in assisting counsel at mediation where he presents findings related to class certification and merits issues, evaluates economic exposure under a variety of legal theories, and assists in structuring the settlement terms. In this role, Mr. Crandall has worked for a party or as a neutral expert. Assignments representative of Mr. Crandall's wage and hour experience include:

- Provided consulting services to defense counsel in a national class-action wage and hour matter alleging that several thousand loan originators at a large banking institution were misclassified under FLSA. Conducted statistical analyses of hours worked records, compensation data, plaintiffs' declarations, and other data to determine if select groups of plaintiffs would be representative of class. Assisted counsel in developing an approach for trial, estimating economic damages, and critiquing plaintiff's trial plan and damages analyses.



- Provided consulting services and expert services to defense counsel in a class action wage and hour matter alleging several hundred insurance sales originators at a call center were misclassified as exempt workers. Services included analyzing phone system data containing over 5.5 million records and computer login / logout data containing over 250,000 records to estimate overtime hours worked each workweek and the number of missed meal and rest periods. Analyzed compensation data and estimated economic damages for the class.

- Provided consulting services to defense counsel in a wage and hour matter alleging that several hundred loan originators were misclassified as exempt workers. Services included analyzing phone system data containing over 5.3 million records and over 1 million door swipe records to estimate overtime hours worked and the number of missed meals and rest periods each workweek. Analyzed compensation data and estimated damages and penalties for the class for mediation. Also, developed an economic model that estimated exposure based on the probability and economic consequences associated with winning or losing a variety of legal rulings.

- Provided consulting services to defense counsel in a wage and hour matter alleging that several thousand General Managers and Assistant Managers at a large office supply retailer were misclassified as exempt employees. Services included designing and conducting a survey to examine whether class members were appropriately classified, analyzing the company's labor model and human resources data, and conducting statistical analysis related to a variety of class certification issues.

- Provided consulting services and expert witness testimony to defense counsel in a matter alleging hourly workers at a large chain of convenience stores were denied meal and rest periods, that all workers lost vacation pay, and that the employer placed employees on unpaid leave prior to termination to avoid waiting time penalties. Services included data and statistical analysis of over 25 million time clock records in order to examine a variety of issues related to shift duration and break opportunities, analysis of vacation data to determine the number employees impacted by the policy, and analysis of termination records to demonstrate that there was no systematic practice of placing employees on LOA status prior to termination.

- Provided consulting services to defense counsel in a wage and hours matter alleging store managers and assistant store managers at a chain of retail discount stores were misclassified. Services included creating and implementing a survey to examine whether class members were classified appropriately and conducting statistical analysis related to commonality of class-members and other class certification issues. Also, analyzed and critiqued a survey conducted by plaintiffs, assisted counsel in opposing expert depositions, and estimated economic damages for mediation.

- Provided consulting services to defense counsel in a wage and hours matter alleging store managers at a chain of convenience stores were misclassified. Services included creating and implementing a survey to examine whether class members were classified appropriately, analyzing labor models, conducting statistical analysis related to commonality of class-members, assisting counsel in estimating damages for mediation.

- Provided consulting services to defense counsel in a class-action wage and hour matter alleging uncompensated meal periods and breaks, unpaid overtime wages, and minimum wage violations at a field maintenance company. Services included creating a database of hours worked from paper and electronic records, and then providing damages estimates based on a variety of assumptions and legal theories.



- Provided consulting services to defense counsel in a multi-plaintiff wage and hour matter alleging that the defendant employer failed to compensate security guards for uniform changing time and other claims of off-the-clock work. Services included designing and conducting an observation study to measure time associated with various activities and estimating damages for mediation.

- Provided consulting services to defense counsel in a wage and hours matter alleging store managers and assistant store managers at a chain of clothing retail stores were misclassified. Services included creating and implementing a survey to examine whether class members were classified appropriately and conducting statistical analysis related to commonality of class-members and other class certification issues.

- Provided consulting services to defense counsel in a class action matter alleging a variety of wage and hour violations for hourly workers at chain of warehouse stores. Services included analyzing over 5.5 million time clock records and payroll data to evaluate allegations of improper time adjustments, missed meal and rest periods, uncompensated split shifts, reporting time violations, overtime and regular rate issues, and off-the-clock work. Also, estimated damages for mediation.

- Provided consulting services to defense counsel in a class action matter alleging a variety of wage and hour violations related to time spent donning and doffing at a food factory. Services included designing a statistical sampling approach, conducting a time and motion study to measure donning and doffing time, and estimating economic damages related to various claims.

- Provided consulting services to defense counsel in a class action wage and hour matter alleging meal and rest period violations for hourly workers at chain of disabled adult services centers. Services included designing and conducting an observation study to estimate breaks taken and break opportunities. Also, assisted counsel in examining class certification issues and the representativeness of the name plaintiffs' claims.

- Provided consulting services to defense counsel in a national class action wage and hour matter alleging off-the-clock work at a storage company. Services included analyzing company hours data to test plaintiffs' legal theory, reviewing, analyzing, and critiquing a survey conducted by plaintiffs, conducting statistical analyses related to class certification, designing a conducting a survey related to management and timekeeping practices, and estimating economic damages for mediation.

- Provided consulting services to defense counsel in a class action wage and hour matter alleging that several hundred managers were misclassified as exempt workers by a large restaurant chain. Analyzed data and assisted counsel in developing approaches to class certification.

- Provided consulting services to defense counsel in a wage and hour class action matter alleging that the defendant grocery store chain misclassified several hundred non-exempt assistant managers as exempt workers. Services included creating database of hours worked, designing a flexible financial model, and computing damages under a variety of counsel specified scenarios for the purposes of mediation.



- Provided consulting services to defense counsel in several wage and hour matters alleging that police officers should be compensated for donning and doffing and other tasks. Services included analyzing survey data and time clock data to determine class certification issues for other off-the-clock tasks and constructed measures of donning and doffing time.

- Provided consulting services to defense counsel in a class action matter alleging failure to pay overtime wages to independent sales and service representatives for a large national tool franchiser. Services included designing and implementing an hours survey to determine whether the additional hours worked claimed by some plaintiffs was representative of the additional hours worked by the class as a whole. Determined that the problem were isolated to certain geographic areas rather than nationwide.

- Provided consulting services to defense counsel in a matter alleging that a class of several hundred independent contractors were misclassified employees. Services included designing a sampling scheme, building and analyzing a database of business expenses, analyzing the business model, and performing business valuations related to a number of businesses.

- Provided consulting services and expert witness testimony to defense counsel in a NLRB matter alleging that independent contractors package delivery drivers were misclassified employees. Services included analyzing the business model, productivity data, and other business records, and performing business valuations related to several businesses.

- Provided consulting services to defense counsel in a class action matter alleging that independent contractors and their employees/ workers were misclassified employees of the defendant and a large national hardware chain. Services included analysis of the business model to evaluate whether the business model meets the criteria for a business.

- Provided consulting services to defense counsel in a multi-district class action matter alleging that independent contractors in the package delivery business were misclassified employees. Services included analyzing the business model, conducting a variety of surveys, and responding to the class certification report of plaintiffs' expert.

- Provided consulting services to defense counsel in a matter alleging uncompensated time for donning and doffing at a chain of quick oil lube establishments. Services included designing and conducting a time and motion study to estimate total time spent donning and doffing and designing a survey to determine uniform practices to assess class certification and de minimis issues.

- Provided consulting services to defense counsel in a class action matter alleging that product marketing testers performed off-the-clock work and were denied meals and rest periods. Services included designing and conducting an online survey to evaluate commonality issues.



# Employment Damages Analysis

Mr. Crandall has assisted counsel in estimating employment related economic damages in more than 100 cases. He has expertise in evaluating but-for earnings, job search efforts, mitigation opportunities, and losses related to stock options and other forms of equity. Assignments representative of Mr. Crandall's experience estimating economic damages include the following:

- Provided consulting services to defense counsel in numerous matters alleging to wrongful termination of police officers, failure to promote police officers, and failure to hire police officers from a variety of police agencies. Services included analyzing labor market opportunities for police officers and creating economic models to estimate economic damages under a variety of career paths and/or retirement scenarios and critiquing the analyses of opposing experts.

- Provided consulting services to defense counsel in numerous matters alleging wrongful termination, or failure to promote government employees at a variety of city level agencies. Services included creating economic models to estimate damages under a variety of career paths and retirement scenarios.

- Provided consulting services to defense counsel in numerous matters alleging wrongful termination in the grocery industry. Services included creating models to estimate economic damages, analyzing mitigation opportunities, and critiquing the work of opposing experts.

- Provided consulting services to defense counsel in numerous matters alleging wrongful termination in the retail industry. Services included creating models to estimate economic damages, analyzing mitigation opportunities, and critiquing the work of opposing experts.

- Provided consulting services to defense counsel where the underlying issue was a class action failure to hire complaint brought by the EEOC. Services included creating financial models for estimating damages for the ten named plaintiffs, as well as, estimating potential damages for the class.

- Provided consulting services to defense counsel in a breach of contract matter where the underlying issue was related to an alleged failure to deliver stock options to an executive in the high-tech industry. Analyzed options value under a variety of trading strategies.

- Provided consulting services to plaintiff counsel in a National Labor Relations Act right to work case. Services included calculating the economic losses suffered by twenty-five plaintiffs due to alleged illegal acts by their union.

- Provided consulting services to defense counsel in a multi-plaintiff action alleging wrongful terminations by an aerospace and defense contractor. Evaluated plaintiff's expert report, and developed cross-examination questions for deposition and trial. Also, provided a rebuttal analysis of economic damages.

- Provided consulting services to plaintiff's counsel in a matter alleging wrongful termination and breach of contract for a high-ranking executive at a health care company. Evaluated labor market earnings potential, calculated economic damages, reviewed defendant's expert analyses, and drafted a report of findings and a rebuttal report.



- Provided consulting services to plaintiff's counsel in a matter alleging wrongful termination and breach of contract for a highly compensated sales employee in the high-tech industry. Evaluated labor market earnings potential, calculated economic damages, created exhibits for use at mediation, and created trial exhibits.

- Provided consulting services to defense counsel in a wrongful termination matter that alleged discrimination based on national origin brought by a former project manager at a large engineering corporation. Analyzed mitigation factors and calculated loss of earnings.

## Insurance Coverage/Environment/Statistics

Assignments representative of Mr. Crandall's experience in related to insurance converge, environmental claims, and other statistical matters include:

- Provided consulting services to defense counsel in connection with a Department of Justice investigation regarding allegations of racial profiling by a large city police department. Analyzed departmental data related to over 130,000 traffic stops, pedestrian stops, and other types of police contacts that occurred in four selected weeks in 1997 and four selected weeks in 1999. Cross-referenced traffic stops data with other departmental information sources including human resources data, precinct level paper records, and the officer discipline system to test various hypotheses.

- Provided consulting services to defense counsel in a 17200 action alleging that the defendant insurer was using inappropriate condition adjustments when settling vehicle total loss claims. Services included analyzing theoretical issues related to used car pricing, conducting regression analysis to estimate coefficients for various condition adjustments, and determining the fairness of the settlements amounts for the name plaintiffs vehicles.

- Provided consulting services to coverage counsel in a CERCLA cost recovery action. Created a database of costs relating to the clean-up of several sites once used by an aerospace and defense contractor. Performed analysis to apportion clean up costs between covered and not covered.

- Provided consulting services supporting coverage counsel in a binding arbitration where the underlying issue was coverage for thousands of asbestos claims. Performed SAS programming, statistical analysis, created summary exhibits, and drafted a report of findings.

- Provided consulting services to coverage counsel in a class action matter alleging overcharging in workman's compensation insurance. Analyzed the difference in aggregate premium paid and the economic impact of reclassifying certain medical and legal costs.

- Provided consulting services to coverage counsel for an underlying class action case alleging damages from exposure to asbestos. Analyzed through SAS programming defense and settlement costs for over 100,000 claims. Constructed a model to apportion costs between various insurers and covered and not covered claims.



- Provided consulting services to defense counsel in a class action ADA matter brought against a government transit agency. Created databases from hard copy paper records, analyzed internal agency data, and merged all data to develop a comprehensive database of access failures. Assisted in the design of a statistical sampling scheme for future monitoring of access to the disabled.

## Forensic Accounting/Business Valuations/Commercial Damages

Assignments representative of Mr. Crandall's experience related to general damages analysis, forensic accounting, finance, and antitrust include:

- Provided consulting services and expert witness testimony to defense counsel in a breach of contract matter. Services included analyzing financial records, estimating damages, and performing a valuation analysis of the plaintiff's business.

- Provided consulting services to defense counsel in a breach of contract matter where the underlying issue was fraudulent inducement of employment. Services included analyzing financial records to determine the value of shareholder equity at various points in time, creating financial models related to economic losses, analysis of financial performance of an unrelated third party to assess but-for opportunity.

- Provided consulting services to plaintiffs' counsel in class-action matter where the underlying issue was fraudulent overcharges of California consumers. Services included estimating the range of potential damages under a variety of scenarios. Filed declaration.

- Provided consulting services to plaintiff's counsel in lender liability arbitration involving a complex financial transaction. Created a financial model that demonstrated the feasibility of the transaction under various interest rate and market return scenarios.

- Provided consulting services to defense counsel in a class action matter alleging unfair business practices related to gift certificate redemptions at a major national retailer. Services included creating survey to determine redemption patterns and analysis of company data.

- Provided consulting services to plaintiff's counsel in a breach of contract matter related to the testing of an innovative dental implant product. Analyzed plaintiff's sales, products, marketing, and sales of plaintiff's competitors, analyzed the products, marketing, and sales of potential market entrants, and developed damages analyses based on a market share approach.

- Provided consulting services to defense counsel in a case alleging usury and fraud. Analyzed accounting records and other data, determined the appropriate interest charges, and quantified overcharge.

- Provided consulting services to plaintiffs and cross-defense counsel in a tort matter alleging interference with recruiting for high-tech salespeople. Analyzed labor markets and internal recruiting data, and developed damages theory and analyses related to the expected economic return on investments in human capital. Drafted declaration and provided deposition and strategy support.



- Provided consulting services to plaintiff's counsel in a breach of contract matter related to financing sub-prime equipment leases. Reviewed financial records of plaintiff's business, industry data, and cohort data, and developed a financial model projecting lost profits under a variety of default scenarios.

- Provided consulting services to defense counsel in an antitrust matter alleging anti-competitive behavior in large-scale model industry. Performed forensic accounting involving the reconstruction of sales and purchases of a multi-million dollar closely held-entity. Managed process of converting numerous paper records into computerized format and developed database to analyze sales, purchases, and gross profit margins through SAS programming. Performed accounting to determine if the plaintiff was committing fraudulent practices. Provided deposition support including drafting questions for counsel in the depositions of several fact and expert witnesses.

- Provided consulting services to plaintiff's counsel in a breach of contract matter involving a medical device. Performed SAS programming to create a database of sales and customers. Researched the market for the product in question and developed a damages model based on a market share approach.

- Provided consulting services to defense counsel in a medical malpractice action where the underlying damages issue was valuing an income stream from a closely held cash business. Performed accounting of plaintiff's financial records to determine existence and extent of fraud. Created financial models to calculate damages under a variety of scenarios.

## Intellectual Property

Assignments representative of Mr. Crandall's experience related to intellectual property, trademark, and trade dress disputes include:

- Provided consulting services to plaintiff's counsel in a patent infringement action against a bedding manufacturer. Created database of sales of the patented product by the defendant and plaintiff. Analyzed price erosion caused by the sales of the competing product to the plaintiff's customers and the consequential damages resulting from the diminution of margins.

- Consulting to plaintiff's counsel in a trademark infringement action. Converted paper records to computerized format and created a database of sales attributed to the trademarked product. Analyzed data to calculate profits and consequential damages.

- Provided consulting services to defense counsel in a patent infringement action involving a high-end coffee cup manufacturer. Analyzed sales data and assisted counsel in determining an appropriate amount for settlement.

- Provided consulting services to defense counsel in a trademark infringement/breach of contract matter. Services included valuing the future income generated through use of the trademark and developing financial models and analyses of damages related to a breach of contract cross-complaint related to potential products that exploited the trademark.



- Provided consulting services to claimant's counsel in a matter alleging patent infringement, trademark infringement, and breach of contract claim involving a food additive. Services included evaluating the market potential for the product and estimating economic damages.

## Education

**Loyola Marymount University**
Masters of Business Administration

**University of Southern California**
Bachelor of Arts, History

## Employment History

**Resolution Economics LLC**
      1998–Present: Partner, Project Manager, Senior Consultant

**Deloitte & Touche, LLP**
      1998:         Senior Consultant, Dispute Consulting Services (Los Angeles)

**Altschuler, Melvoin and Glasser LLP**
      1996-1998:    Staff and Senior Consultant and Marketing Manager, Economics and Litigation Services (Los Angeles)

**Price Waterhouse LLP**
      1993-1996:    Marketing Manager, Dispute Analysis and Corporate Recovery Group (Los Angeles)

## Publications

"Surveys Can Help Court Decide Issues of Commonality", *Los Angeles Daily Journal,* January 28, 2004, Robert W. Crandall and Karyn Model

"Pros and Cons of Anonymous Surveys", December 2011, Richard Goldberg and Robert W. Crandall

"Wage and Hour Litigation", chapter in <u>Litigation Services Handbook</u>, ed. by Roman Weil, et al., 2012

## Memberships

Los Angeles County Bar Association – Labor and Employment Section

Society for Human Resources Management

**Robert W. Crandall, M.B.A.**
**Attachment to Resume**

## TESTIMONY AND AFFIDAVITS PRESENTED (2018-2023)

In the matter of Valerie Alberts, et al. v. Aurora Behavioral Health Care et al., Case No: BC419340, related to data analysis of labor code violation claims and class certification issues, Declaration Filed December 5, 2012. Deposition testimony March 19, 2013. Rebuttal report filed February 28, 2018. Deposition testimony April 19, 2018.

In the matter of Nate Booker, et. al., v. Tanintco, Inc., et al., Case No: BC 349267, And related cases: BC351252, BC354230, related to statistical analysis of data, rebuttal of plaintiffs' expert report, and response to plaintiffs' trial plan. Report filed June 9, 2015. Deposition testimony July 14, 2015. Report filed October 20, 2017. Report filed July 27, 2018. Report filed September 10, 2019. Deposition testimony September 13, 2019. Trial testimony February 7, 2020, February 10, 2020, and February 11, 2020.

In the matter of Archivaldo Marquez, et al. v. Weber Distribution, Case No. BC 512269, related to rebuttal of plaintiffs' trial plan and proposed survey. Report filed March 11, 2016. Rebuttal report filed May 16, 2016. Deposition testimony March 20, 2018.

In the matter of Christopher Levanoff, et al. v. SoCal Wings LLC., et al., Case No: 30-2011-00511808-CU-OE-CXC, related to statistical analysis of data, rebuttal of opposing expert, evaluation of trial plan, rebuttal of opposing expert's survey. Reports filed on April 26, 2016, June 3, 2016, July 7, 2016, September 23, 2016, January 24, 2017, September 6, 2017, September 19, 2017 and January 18, 2018. Deposition testimony October 5, 2016. Trial testimony June 26, 2018, June 27, 2018. Trial testimony June 26, 2018 and June 27, 2018.

In the matter of Troy Slack, et al. v. Swift Transportation CO. of Arizona, LLC., Case No: 3:11-cv-05843-BHS. Related to statistical analysis of data, analysis of economic damages, and rebuttal to plaintiffs' expert report. Report filed March 10, 2017. Trial testimony July 18, 2017.

In the matter of Naomi Slaton, et. al. v. Dole Packaged Foods, et al., Case No: CVM016111. Related to evaluation of trial plan and statistical analysis of data. Report filed March 22, 2017. Supplemental report filed July 10, 2017. Rebuttal report filed March 28, 2018.

In the matter of Donna Busik, et. al. v. Maplebear Inc., et al., JAMS reference #1100081511, related to statistical analysis of data and business model to evaluate independent contractor status.

In the matter of Party City Wage and Hour Cases, JCCP Case No. 4781. Related to statistical analysis of data in connection with class certification issues. Report filed May 31, 2017. Deposition testimony July 26, 2017. Report Filed March 19, 2019.

**ATTACHMENT A**

In the matter of <u>William Helmick, et. al. v. Air Methods Corp., et. al.</u>, Case No: RG133665373, PMK deposition regarding a wage and hour audit.  Deposition testimony June 5, 2017.   Expert report related to class certification issues filed on September 29, 2017. Damages report filed July 30, 2018. Deposition testimony August 2, 2018. Deposition testimony July 7, 2019.  Trial testimony July 22, 2019.

In the matter of <u>Eric Chavez et al. v. Converse, Inc., et al.</u>, Case No: 5-cv-03746-NC.  Related to statistical analysis of data.  Report filed June 23, 2017.  Rebuttal report filed September 20, 2017. Report filed March 20, 2020.

In the matter of <u>Jorge Estrada, et al. v. Royal Carpet Mills, Inc.</u>, Case No: 30-2013-00692890-CU-OE-CXC, related to statistical analysis of data and trial plan issues.  Report filed July 19, 2017.  Trial Testimony April 29, 2019.

In the matter of <u>Westfall, et. al,  v. Ball Metal Beverage Container Corporation</u>, Case No:  2:16-cv-02632-KJM-GGH, related to statistical analysis of data.  Report filed August 28, 2017.  Supplemental report filed January 28, 2019.

In the matter of <u>Gray et al. v. Hansel Ford, Inc.</u>, Case No:  SCV258850, related to statistical analysis of data.  Report filed August 30, 2017. Additional report file in response to Plaintiffs' Motion for Summary Adjudication on January 31, 2020.

In the matter of <u>Mary Andrews, et. al. v. TRG Customer Solutions, Inc., et. al.</u>, Case No: 1:14-cv-00135, related to statistical analysis of data for class certification and merits.  Report filed September 11, 2017.  Deposition testimony February 13, 2018. Rebuttal Report filed March 16, 2018.

In the matter of <u>Robyn James, et. al. v. American Corporate Security, et. al.</u>, Case No: BC525388, related to response to plaintiffs' PAGA trial plan.  Report filed October 2, 2017.  Supplemental report filed May 29, 2018.

In the matter of <u>Balapuwaduge Mendis, et. al. v. Schneider National Carriers, Inc. et al.</u>, Case No: 2:15-cv-00144 JCC, statistical analysis of data, evaluation of merits and damages issues.  Report filed October 30, 2017.  Rebuttal report filed December 15, 2017. Deposition testimony February 8, 2018. Report filed March 23, 2018.

In the matter of <u>Eric Bahra v. County of San Bernardino</u>.  Case No. 5:16-cv-01756-JGB-SP, related to analysis of economic damages.  Report filed November 20, 2017.  Trial testimony July 14, 2021.

In the matter of <u>Irean Amaro, et. al. v. Anaheim Arena Management LLC</u>, Case No: 30-2017-00917542, related to the fairness of class action settlement.  Report filed January 11, 2018. Supplemental Report filed April 20, 2018.

In the matter of <u>Robert Shaw, et al. v. AMN Services LLC</u>, Case No: 3:16-cv-02816 JCS, related to statistical analysis of data related to class certification issues.  Report filed January 15, 2018. Deposition April 26, 2018.

**ATTACHMENT A**

In the matter of <u>Miguel Rojas-Cifuentes et. al. v. ACX Pacific Northwest Inc. et. al.</u>, Case No: 2:14-cv-00697-JAM-CKD, related to statistical analysis of data for class certification issues, rebuttal of opposing expert.  Report filed January 19, 2018.

In the matter of <u>Juan Barajas, et. al. v. WHM LLC, et. al.</u>, Case No: BC491045, related to analysis of reporting time pay.  Report filed January 31, 2018.

In the matter of <u>Emily Howell, et. al. v. Advantage RN LLC, et. al.</u>, Case No: 3:17-cv-00883-JLS-BLM, related to statistical analysis of data.  Report filed February 2, 2018.  Supplemental report filed May 23, 2019.

In the matter of <u>Diana Vasquez, et. al. v. Warren Distributing Inc., et. al.</u>, Case No: BC549552, related to statistical analysis of data for class certification issues.  Report filed February 2, 2018.  Deposition March 20, 2018.  Rebuttal report Filed May 1, 2018.

In the matter of <u>Maria Juarez, et. al. v. Columbia Riverside Inc., et al</u>. Case No: RIC1509204, related to statistical analysis of data for class certification issues and rebuttal of opposing expert.  Report filed February 5, 2018. Deposition testimony March 7, 2018.

In the matter of <u>Jose Nevarez v. Foster Farms LLC,</u> Case No: 13CECG02624, related to statistical analysis of data in support of Defendant's Motion for Summary Adjudication.  Report filed February 28, 2018.  Related to statistical analysis of data and trial plan issues for class certification. Report filed July 11, 2019.

In the matter of <u>Landon Fulmer, et. al., v. Golden State Drilling, Inc.</u>, Case No:  S-1500-CV-279707, Related to analysis of data for liability and damages purposes and rebuttal of opposing expert.  Deposition testimony April 30, 2018.

In the matter of <u>Felipe Alverez, et. al. v. YRC Inc., et al.</u>, Case No:  CV 12-0134-TJH-F, related to statistical analysis of data for class certification purposes.  Report filed May 7, 2018.

In the matter of <u>Jaime Maradriaga, et al. v. PIH Health, et al.</u>, Case No: BC597115, related to statistical analysis of data in connection with class certification issues.  Report filed May 23, 2018.  Deposition testimony August 21, 2018.  Rebuttal report September 20, 2018.

In the matter of <u>Sephora Wage and Hour Cases</u>, Judicial Council Coordination Proceeding No.: 4911, related to statistical analysis of data for class certification purposes.  Report filed May 29, 2018.  Deposition June 14, 2018. Report related to merits issues and responding to survey filed August 5, 2020.

In the matter of <u>Daniel Rodriguez, et. al., v. TC Mel Trucking, Big E Transportation, et al.</u>, Case No: 219-2017-CV-00327, related to analysis of trucking company business model.  Report filed July 5, 2018.  Report filed March 15, 2019.  Deposition testimony April 5, 2019.

**ATTACHMENT A**

In the matter of <u>CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC</u>, Case No: 1:17-cv-00025-CJW, related to analysis of claims and rebuttal of damages. Report Filed July 20, 2018. Rebuttal Report filed September 28, 2018. Trial testimony July 19, 2019.

In the matter of <u>Ricardo Gomez, et al.  v. USF Reddaway Inc., et al.</u>, Case No: 2.16-cv-05572-JAK (FFM), related to statistical analysis of data for class certification purposes. Report filed July 30, 2018.

In the matter of <u>John May v. Inter-Con Security Systems, Inc.</u>, Case No. BC645310, related to analysis of economic damages and mitigation opportunities.  Deposition testimony August 3, 2018.

In the matter of <u>Norma Gonzalez, et al. v. Waterway Plastics</u>, Case No. 56-2014-00460995-CU-OE-VTA, related to statistical analysis of data for class certification.  Report filed August 11, 2018. Supplemental report filed June 14, 2019.

In the matter of <u>Juan Towle, et al. v. Cummins Pacific, et al.</u>, Case No: 3:18-cv-00083-LAB-JLB, related to statistical analysis of data for class certification and rebuttal of opposing expert.  Report filed August 31, 2018.  Deposition testimony September 5, 2018.

In the matter of <u>Robert Chase and Preston Epps v. Haliburton Energy Services</u>, Arbitration No: 1210034965, related to economic damages.  Deposition testimony September 24, 2018.  Arbitration testimony October 11-12.

In the matter of the <u>State of Washington Employment Security Department v. Zimride Inc., dba Lyft</u>, Case No: 021729 related to analysis of independent contractor status.  Report filed October 11, 2018.

In the matter of <u>Devon Isbell v. Party City Corporation</u>, Case No: 3:17-cv-00709-MMD-VPC, related to analysis of economic damages.  Report filed October 19, 2018.  Deposition testimony November 6, 2018.
In the matter of <u>Ronald Pineda v. Abbot Laboratories Inc., et al</u>. Case No: CV18-3395 SVW (RAOx). Related to analysis of economic damages.  Report filed November 1, 2018.  Rebuttal report filed November 16, 2018. Deposition testimony November 27, 2018.  Supplemental report filed July 27, 2021.  Supplemental rebuttal report filed August 4, 2021.

In the matter of <u>CRST Expedited Inc. v. JB Hunt Transport Inc</u>., Case No: 1:17-cv-00026-LRR, related to analysis of claims and rebuttal of damages.  Report filed November 2, 2018.

In the matter of <u>Matthew Ogura, et. al. v. Thrifty Payless Inc., et. al</u>, Case No: BC605968.  Related to statistical analysis of data for class certification. Report filed November 16, 2018.  Deposition testimony March 18, 2019.  Supplemental Report filed July 16, 2019.

In the matter of <u>Johnny Moody, et. al. v. Infotree Service Inc., et. al</u>. Case No: BC673011. Related to statistical analysis of data.  Report filed November 16, 2018.

In the matter of <u>Mark Prado, et. al. v. Wal-Mart Stores Inc., et al</u>. Case No: 2:17-cv-05630-AB KK, related to analysis of claims and rebuttal of trial plan.  Report filed November 30, 2018.

**ATTACHMENT A**

In the matter of <u>Rodrigo Reqeudan v. Centerplate of Delaware Inc.</u>, Case No: 17-cv-03828-LHK, related to statistical analysis of data for class certification. Report filed December 3, 2018

In the matter of <u>Marriage of Najarian</u>, Case No: BD634136, related to reasonable compensation of executives of closely held corporation.  Report filed December 12, 2018.

In the matter of <u>Richard Hose, et al. v. Washington Inventory Service,</u> et al., Case No: 3:14-cv-02869-WQH-AGS, related to rebuttal of opposing experts. Report filed December 17, 2018

In the matter of <u>Perez De Leon v. Dunn-Edwards Corporation.</u> Case No: 17-CV-306134, related to analysis of economic damages. Deposition testimony January 8, 2019.  Arbitration testimony February 25, 2019. Report filed April 20, 2020.

In the matter of <u>Timothy Quick v. The County of San Bernardino</u>, Case No: 5:18-cv-00105-JVS (SPx), related to analysis of economic damages.  Report filed January 30, 2019.

In the matter of <u>Rexann Jasso v. Walmart Stores Inc.</u>, Case No: 2:18-cv-02344-ODW-JC, related to analysis of economic damages.  Report filed February 4, 2019.

In the matter of <u>Patricia Rodriguez v. Jack in the Box.</u>, Case No: RG17847828, related to statistical analysis of data.  Deposition testimony March 4, 2019.  Trial testimony May 15-16, 2019.

In the matter of <u>Carol Lear, et al. v. Hitachi Automotive Systems</u>, Case No: 5:17-CV-00186-JMH, related to analysis of timekeeping and payroll data with regard to exemption issues, including rebuttal to plaintiffs' expert report.  Report filed March 11, 2019.  Supplemental report filed June 24, 2021. Rebuttal report filed July 23, 2021.  Deposition testimony August 24, 2021.

In the matter of <u>Stephanie Heredia, et al. v. Eddie Bauer LLC</u>, Case No: 5:16-cv-06236-BLF, related to statistical analysis of data.  Report filed March 29, 2019.  Report filed April 30, 2019.  Deposition Testimony May 3, 2019.

In the matter of <u>William Edwards, et al. v. Leaders in Community Alternatives, Inc.</u>, Case No: 4:18-cv-4609, related to statistical analysis of data.  Report filed April 8, 2019.

In the matter of <u>Carolyn Medina v. SCPMG</u>, Case No: BC613714, related to analysis of economic damages.  Report filed April 15, 2019.  Deposition Testimony April 18, 2019.  Deposition testimony October 7, 2019.

In the matter of <u>William Richards v. County of San Bernardino</u>, Case No: 17-cv-00497-SJO-SP, related to analysis of economic damages.  Report filed May 7, 2019.

In the matter of <u>Pike v. County of San Bernardino</u>, Case No: 5:17-cv-01680, related to statistical analysis of data and rebuttal of opposing expert.  Report filed May 13, 2019.

**ATTACHMENT A**

In the matter of <u>Scot Lee Allison vs. Halliburton Energy Services, Inc.</u>, Arbitration No: 12100035811, related to economic damages. Deposition testimony May 17, 2019. Deposition testimony October 30, 2019. Arbitration testimony November 11, 2019.

In the matter of <u>Shaon Robinson, et al vs. The Chef's Warehouse, Inc.</u>, Case No: 3:15-cv-05421-RS, related to statistical analysis of data and rebuttal of opposing expert. Report filed May 30, 2019.

In the matter of <u>La Tasha Coates, et al vs. United Parcel Services, Inc.</u>, Case No: 2:18-cv-03012-PSG-AFM, related to statistical analysis of data and rebuttal of opposing expert. Report filed June 3, 2019.

In the matter of <u>Cindy Castillo, et. al. v. Bank of America, et. al.</u>, Case No: 8:17-cv-00580-DOC (KESx), related to statistical analysis of data for class certification. Report filed June 17, 2019.

In the matter of <u>Azizi Baranauskas, et al., v. Healthcare Manager Services LLC,</u> et. al, Case No: 37-2017-00013171-CU-OE-NC, related to statistical analysis of data for class certification purposes. Report filed July 5, 2019. Deposition Testimony July 10, 2019.

In the matter of <u>Manuel Vigueras, et. al. v. Red Robin International Inc., et. al</u>, Case No: 8:17-cv-1422, related to statistical analysis of data, rebuttal of trial plan. Report filed July 8, 2019. Supplemental report filed January 21, 2020. Rebuttal report filed February 5, 2020. Deposition testimony February 18, 2020.

In the matter of <u>Barbara Ruotolo, Edward Williams, and Chris Kalhoon v. Lyft, Inc.</u>, Case No: AAA 01-18-0003-9788, 01-18-0003-9782, 01-18-0003-9777, related to statistical analysis of data, discussion of business model and control issues. Report filed August 14, 2019. Deposition testimony August 20, 2019.

In the matter of <u>Alejandra Del Aguila v. Herbalife International of America Inc.</u>, Case No: BC689113, related to analysis of economic damages. Report filed September 3, 2019.

In the matter of <u>Amber Pardue, et al. v. CBC Restaurant Corp., et al.</u>, Case No: 2:19-cv-03920-R (SKx), related to statistical analysis of data in connection with class certification and rebuttal of opposing expert. Report filed September 9, 2019.

In the matter of <u>Esmat Yadkouri v. Wal-Mart</u>, Case No. BC620135, related to analysis of economic damages. Deposition testimony September 20, 2019.

In the matter of <u>Gene Sugimoto v. Intercon Security</u>, Case No: 3:19 –CV-0025 DMS-BLM, related to analysis of economic damages. Report filed September 26, 2019.

In the matter of <u>Patricia Harvey, et. al. v. Bed Bath & Beyond et al.</u>, Case No: RG17885153, related to analysis of seating claims in connection with evaluation of the settlement fairness. Report filed September 30, 2019.

**ATTACHMENT A**

In the matter of Irma Frausto et. al. v. Bank of America, National Association, Case No: 3:18-cv-01983-LB (Frausto)/3:18-cv-01202-LB (Suarez), related to class certification. Report filed October 11, 2019.  Rebuttal report filed November 15, 2019.

In the matter of John Utne, et. al., v. The Home Depot USA, Inc., Case No: 3:16-CV-01854-RS, related to video study of claims.  Report filed October 16, 2019. Supplemental Declaration filed December 20, 2019. Rebuttal report filed April 30, 2020.  Sur-rebuttal report filed December 17, 2021.  Deposition testimony February 4, 2022. Deposition testimony August 23, 2022.

In the matter of Ashley Broussard v. The Geo Group, et. al., Case No. CIVDS1722295, related to analysis of economic damages.  Deposition testimony October 31, 2019.

In the matter of Melody Cunningham, et. al, v. Lyft Inc., et al., Case No: 1:19-CV-11974-IT, related to statistical analysis of data. Reports filed November 6, 2019 and April 3, 2020.

In the matter of Roberto Tellez, et. al. v. Harvest Container Co., et al, Case No:  VCU264528, related to statistical analysis of data for class certification. Report filed December 16, 2019.

In the matter of Andrew Gordon, et. al, v. TBC Retail Group, Inc., et.al, Case No: 2:14-cv-03365-DCN, related to statistical analysis of data.  Report filed November 20, 2019.  Deposition testimony January 17, 2020.

In the matter of Robert Cole and Kristie King v. Sallyport Global Holdings, Inc., Case No: 2018-2951, related to analysis of economic damages.  Report filed January 2, 2020.

In the matter of Arliss Villalta, et. al. v. Leonardo's Restaurant Inc., et. al., Case No: BC542133, related to discussion of trial plan.  Report filed January 20, 2020.  Deposition testimony February 24, 2020.

In the matter of the People of the State of California v. Maplebear Inc., dba Instacart, Case No:37-2019-00048731-CU-MC-CTL, related to statistical analysis of data.  Report filed February 2, 2020.

In the matter of Mesfin Haile v. LA Auto Distributors, Case No: 18-3162-MDM, related to analysis of economic damages and rebuttal of opposing expert.  Deposition testimony March 10, 2020.

In the matter of John Rogers, et al. v. Lyft, Case No: CGC-20-583685, related to statistical analysis of data.  Report filed March 25, 2020.  Report filed April 16, 2020.

In the matter of Christopher Lyons, et al., v. Air Methods Corp., et al, Case No: 3:20-cv-01700-PJH (DMR), related to potential amounts in controversy. Report filed April 22, 2020.

In the matter of re: Westamerica Wage and Hours Issues, Case No JCCP004921, related to trial plan issues. Report filed April 30, 2020.   Report filed November 13, 2020.  Deposition December 1, 2020.

**ATTACHMENT A**

In the matter of <u>Scott Stout, et. al. v. GEO Group, et. al.</u>, Case No: 37-2019-00000650-CU-CR-CTL, related to statistical analysis of data and class certification issues. Report filed June 18, 2020.

In the matter of <u>Christine Andersen, et. al. v. RSCR California Inc., et. al.</u>, Case No: 5:18-cv-02474-JAK-KK, related to statistical analysis of data, trial plan, and survey issues. Report filed June 30, 2020. Deposition testimony August 27, 2020. Supplemental Report October 1, 2020.

In the matter of <u>Nick Nichols v. City of Burbank</u>, Case No EC06467, related to analysis of economic damages. Deposition testimony July 15, 2020

In the matter of <u>Audrey Heredia, et. al. v. Sunrise Senior Living, et. al.</u>, Case No: 8:18-cv-01974-JLS-JDE. Related to rebuttal of opposing expert. Report filed September 1, 2020. Deposition Testimony October 22, 2020. Supplemental report June 23, 2021. Supplemental declaration August 16, 2021.

In the matter of <u>Omar Ahmad v. Lyft</u>, Case No: AAA Action No. 01-20-0001-7550, related to data analysis, independent contractor status, and damages. Report filed September 4, 2020.

In the matter of <u>Emilia Santos, et al. v. United Parcel Service Inc</u>,, Case No: 3:18-cv-01377-EMC, related to statistical analysis of data, rebuttal, and trial plan issues. Report filed September 18, 2020. Deposition September 25, 2020.

In the matter of <u>HFR R&B Holdings, LLC v. Mapletree SR Management Pte. Ltd</u>, JAMS Reference No: 1220061992, analysis of wage and hour issues in connection with a purchase price dispute. Report filed September 21, 2020. Arbitration testimony November 20, 2020.

In the matter of Lisa <u>Boczko v. Lyft, Inc.</u>, Case No: AAA Action No. 01-20-0000-7324, related to data analysis, independent contractor status, and damages. Report filed September 18, 2020.

In the matter of <u>Oscar Granados v. The GEO Group.</u>, Case No: 8:20-cv-00478-DOC-DFM, related to calculating loss of earnings capacity in a personal injury matter. Report filed October 9, 2020.

In the matter of <u>Charles Hoffman v. Lyft, Inc.</u>, Case No: AAA Action No. 01-20-0001-6875, related to data analysis, independent contractor status, and damages. Report filed October 15, 2020.

In the matter of <u>Larry Roach, et al. v. Wal-Mart Stores, Inc.</u>, Case No: 5:18-CV-02536 AB-KK, related to rebuttal of opposing expert. Report filed October 30, 2020.

In the matter of <u>Roberto Ruiz, et al., v. Unity Courier Services, et. al.</u>, Case No: BC724435, related to statistical analysis of data in support of motion to strike. Report filed November 11, 2020. Deposition testimony February 25, 2021.

In the matter of <u>Daniel Barnett v. Lyft, Inc.</u>, Case No: AAA Action No: 01-20-0001-7323, related to data analysis, independent contractor status, and damages. Report filed December 9, 2020.

**ATTACHMENT A**

In the matter of <u>Deena Asamurai, et. al. v. First Technology Federal Credit Union</u>, Case No: S-CV-0044446, related to statistical issues associated with trial plan.  Report filed December 14, 2020.

In the matter of <u>Dean A. Robbins, et al, v. Phillips 66 Company, et al.</u>, Case No: 3:18-cv-00292-RS (consolidated Case No. 19-cv-01558-RS), related to statistical analysis of data and statistical issues associated with trial plan.  Report filed December 21, 2020.  Deposition testimony January 15, 2021.

In the matter of <u>Michael Lavigne, et. al. v. Herbalife Ltd.</u>, Case No: 2:18-cv-07480-JAK (MRWx), related to statistical analysis of the relationship between earnings and event attendance of Herbalife distributors. Report filed January 11, 2021. Deposition testimony February 2, 2021.

In the matter of <u>Michelle Hinds, et, al. v. FedEx Ground Package Systems,</u> Case No: 4:18-cv-01431-JSW (AGT), related to trial plan issues, rebuttal of opposing expert. Report filed February 5, 2021. PAGA declaration filed February 25, 2022.  Deposition testimony April 8, 2022.

In the matter of <u>Mary Jane Gonzales, et. al., v. Healthcare Services Group, Inc</u>, et al. Case No: CGC-18-570988, related to statistical analysis of data and trial plan issues.  Report filed February 11, 2021.  Supplemental report filed May 30, 2021.

In the matter of <u>Louis Ibarra, et al. v. Artisan Screen Printing, et. al.</u>, Case No: BC644708, related to statistical analysis of data in connection with class certification issues.  Report filed February 19, 2021. Deposition testimony March 27, 2021.

In the matter of <u>Victor Polina, et. al. v. Skechers USA Inc</u>., et al., Case No: 19STCV20234, related to video observation study and statistical analysis of data in connection with suitable seating claims. Report filed March 2, 2021.  Deposition testimony March 5, 2021.

In the matter of <u>Eric Ayala, et. al., v. UPS Supply Chain Solutions, et al.</u>, Case No: 5:20-cv-00117 PSG-AFM, related to statistical analysis of data, video observation, rebuttal of opposing expert, and critique of trial plan.  Report filed March 15, 2021. Deposition testimony April 7, 2021.

In the matter of <u>John Elmy, et. al. v. Western Express, et. al.</u>, Case No: 3:17-CV-01199, related to statistical analysis of data related to class certification issues.  Report filed March 17, 2021.

In the matter of <u>Kevin Anderson et. al. v. Equinox Holdings Inc., et. al</u>., Case No: 37-2018-00014364-CU-OE-CTL, related to statistical analysis of data, discussion of trial plan issues, rebuttal of opposing experts, and rebuttal of survey conducted by opposing counsel.  Report filed April 2, 2021.

In the mater of <u>Michelle Frey v. Creative Artists Agency</u>, Case No: 1210037212, related to analysis of economic damages.  Declaration filed April 20, 2021. Arbitration testimony May 13, 2021.

In the matter of <u>Herman Overpeck, et. al. v. FedEx Corporation, et. al.</u>, Case No:  4:18-cv-07553-PJH (DMR), related to statistical analysis of data and rebuttal of opposing expert.  Report filed June 1, 2021.  Deposition testimony August 10, 2021.

**ATTACHMENT A**

In the matter of <u>Hernan Hernandez v. Restoration Hardware, et. al.</u>, Case No: CIVDS1723322, related to statistical of data and rebuttal of opposing expert.  Report filed June 4, 2021.  Deposition testimony June 18, 2021.  Supplemental report filed September 2, 2021.

In the matter of <u>Ronald Held, et. al. v. Hitachi Automotive Systems Americas</u>, et. al., Case No: 18-CI-00294, related to statistical analysis of data.  Report filed June 28, 2021. Rebuttal report filed July 23, 2021.  Deposition testimony August 24, 2021.

In the matter of <u>Randy Salinas, et. al. v. The Cornwell Quality Tools Company, et al.</u>,  Case No: 5:19-cv-02275-FLA-SP, related to statistical analysis of data and discussion of business model issues.  Report filed July 2, 2021.   Deposition testimony July 20, 2021.

In the matter of <u>Christine Crump, et al. v. Hyatt Corporation, et. al.</u>, Case No: 4:20-cv-00295-HSG, related to statistical analysis of data, critique of opposing experts, and trial plan.  Report filed July 15, 2021.

In the matter of <u>Marvin Nash, et. al. v. Horizon Freight System Inc., et. al.</u>, Case No: 3:19-cv-01833-VC, related to rebuttal of opposing experts survey and data study.  Report filed July 23, 2021. Rebuttal report filed September 10, 2021.

In the matter of <u>Earnest Cuadra, et. al. v. FedEx Ground Package System, et. al.</u>, Case No: 2:20-cv-10719-JFW (SKx), related to rebuttal of opposing expert's survey.  Report filed July 26, 2021. Deposition testimony July 27, 2021. Supplemental report filed August 16, 2021.

In the matter of <u>Natalie Haaverson, et al. vs. Tavistock Freebirds LLC et al.</u>, Case No: RG19030716, related to analysis of restaurant operations.  Report filed August 16, 2021.  Supplemental report filed September 20, 2021.

In the matter of <u>Claudia Alvarado, et. al. v. Wal-Mart Associates Inc., et. al</u>, Case No: 2:20-cv-01926-AB-KK, related to analysis of class certification issues and critique of opposing expert. Report filed August 16, 2021. Deposition testimony September 23, 2021.

In the matter of <u>Kathleen Williams and Michael Hill v. City of Long Beach, et al</u>, Case No: 2:18-cv-01069-AB-JC, related to discussion of data and racial profiling claims.  Report filed August 20, 2021.  Rebuttal report filed September 17, 2021.  Deposition testimony October 8, 2021.

In the matter of <u>Yolanda Bennett v. AT&T Services Inc</u>., Case No: 4:20-cv-03581-JST, related to analysis of economic damages.  Report filed August 31, 2021.  Rebuttal report filed September 30, 2021.

In the matter of <u>Sherman Garnett v. County of San Bernardino, et al.</u>, Case No: CIVDS1938394, related to analysis of economic damages.  Deposition testimony September 3, 2021.

**ATTACHMENT A**

In the matter of <u>Elsie Romero, et. al. v. Select Employment Services, et al.</u>, Case No: 2:19-cv-06369-AB-AGR, related to statistical analysis of data and trial plan issues. Report filed September 10, 2021.

In the matter of <u>Valerie Sampson, et. al. v. Knight Transportation</u>, et. al., Case No: 2:17-cv-00028 JCC, related to statistical analysis of data and labor market benchmarking. Report filed October 12, 2021. Rebuttal report filed October 29, 2021. Supplemental declaration December 22, 2021.

In the matter of <u>Brian Dittman, et. al. v. Medical Solutions Inc.</u>, Case No: 2:17-cv- 01851-MCE-CKD, related to statistical analysis of data and labor market benchmarking. Report filed October 14, 2021.

In the matter of <u>Marlea Dell Anno v. City of San Diego</u>, Case No: 37-2017-00000118-CU-OE-CTL, related to analysis of economic damages. Report filed October 15, 2021. Deposition testimony October 20, 2021. Trial testimony March 15, 2022.

In the matter of <u>Donna Preston v. Lyft</u>, AAA Action No. 01-20-0005-0881, related to data analysis, independent contractor status, and damages. Report filed October 19, 2020.

In the matter of <u>Joseph Kennedy v. Lyft</u>, AAA Action No. 01-20-0005-0613, related to data analysis, independent contractor status, and damages. Report filed October 19, 2020.

In the matter of <u>Daniel McCoy v. Lyft</u>, AAA Action No. 01-20-0005-0878, related to data analysis, independent contractor status, and damages. Report filed October 19, 2020.

In the matter of <u>Camille Green, et. al. v. Cornerstone Services Inc., et al.</u>, Case No: 1:20-cv-00706-MWM, related to statistical analysis of data. Report filed October 22, 2021.

In the matter of <u>Stephen Kohr v. ULINE Inc., et. al.</u>, Case No: CIVIDS1912069, related to statistical analysis of data. Report filed October 25, 2021. Deposition testimony November 4, 2021.

In the matter <u>Julian Vargas, et. a. v. Quest Diagnostics Clinical Laboratories Inc</u>., et. al., Case No: 2:19-cv-08108-DMG, related to statistical issues and trial management plan. Report filed November 1, 2021. Deposition testimony November 15, 2021.

In the matter of <u>Anthony Mostajo, et. al. v. Nationwide Mutual Insurance, et. al.</u>, Case No: 2:17-CV-00350-JAM-AC, related to statistical analysis of data and rebuttal of survey. Report filed November 5, 2021.

In the matter of <u>Giuliana Mendiola v. Regents of the University of California</u>, et. al., Case No: 5:20-cv-00832-ODW-KK, related to analysis of economic damages. Report filed December 24, 2021.

In the matter of <u>George Stickles, et. al. v. Atria Senior Living, et al.</u>, Case No: 3:20-cv-09220-WHA, related to statistical analysis of data and rebuttal of opposing expert. Report filed December 31, 2021.

In the matter of <u>Karen Hartstein, et. al. v. Hyatt Corporation, et. al.</u>, Case No: 2:20-cv-04874-DSF-JPR, related to rebuttal of opposing experts.  Report filed January 7, 2022.

In the matter of <u>Frank Fodera, et. al. v. Equinox Holdings Inc., et al.</u>, Case No: 3:19-cv-05072-WHO, related to statistical analysis of data and rebuttal of opposing experts.  Report filed February 4, 2022. Rebuttal report filed February 23, 2022. Supplemental report filed August 3, 2022.

In the matter of <u>Sharey Thomas, et. al. v. Maximus Inc.</u>, Case No: 3:21-cv-00498-DJN, related to statistical analysis of data.  Report filed February 10, 2022. Supplemental report filed March 1, 2022.

In the matter of <u>Harjus Birk v. The Regents of the University of California</u>, Case No: 37-2020-00007663-CUWT-CTL, related to analysis of economic damages.  Report filed March 4, 2022.

In the matter of <u>Brian Koos v. The Regents of the University of California</u>, Case No: 18STCV00470, related to analysis of economic damages.  Report filed March 7, 2022.

In the matter of <u>Verna Clarke, et. al. v. AMN Services Inc.</u>, Case No:. 2:16-cv-4132 DSF (KSx), related to statistical analysis of data.  Report filed March 8, 2022.

In the matter of <u>Farzin Morena v. Tesla Inc.</u> Jams Arbitration No: 1240023994, related to economic damages.  Report filed March 11, 2022.  Supplemental report filed April 24, 2022. Deposition testimony April 26, 2022.

In the matter of <u>Hekmatollah Yosifi v. The Regents of the University of California</u>, Case No: BC724191, related to economic damages.  Deposition testimony March 14, 2022.

In the matter of <u>Alfredo Martinez and Justin Page v. Southern California Edison</u>, et. al., Case No: BC670461, related to analysis of economic damages.  Deposition testimony March 17, 2022. Trial testimony May 24, 2022.

In the matter of <u>George Chacon, et. al. v. Express Fashion Operations LLC, et al.</u>., Case No: 8:19-CV-00564 JLS (DFMx), related to statistical analysis of data.  Report filed March 24, 2022. Deposition testimony April 18, 2022 and April 28, 2022.

In the matter of <u>Maurice Frank, et. al. v. Golden Gate Bell, et. al.</u>, Case No: RG18913275, related to statistical analysis of data.  Report filed March 25, 2022.

In the matter of <u>Dawn Winship v. PruCo Securities</u>, FINRA Case No: 19-00083, related to analysis of economic damages and rebuttal of opposing expert.  Report filed March 24, 2022.  Arbitration testimony March 30, 2022.

In the matter of <u>Racklin v. Zeta Global Corp</u>, United States District Court for the Eastern District of Virginia – Alexandria Division, Civil Action No: 1:21-cv-01035-AJT-JFA related to analysis of economic damages.  Co-authored with Richard Goldberg. Report filed on April 13, 2022.

**ATTACHMENT A**

In the matter of <u>Todd Hearn v. Pacific Gas & Electric Company</u>, Case No: 20CV000391, related to analysis of economic damages and rebuttal of opposing expert. Deposition testimony April 21, 2022. Trial testimony October 3, 2022.

In the matter of <u>Vanna Troung v. American Red Cross, et. al.</u>, Case No: 2:21-cv-05789 GW(GJSx), related to analysis of economic damages. Report filed May 2, 2022. Rebuttal Report May 23, 2022.

In the matter of <u>Cecilia Rodriguez, et. Al. v. Wal-Mart Associates, Inc.</u>, Case No: 2:20-cv-07045, related to rebuttal of opposing expert's proposed survey. Report filed May 10, 2022.

In the matter of <u>Carla Sanchez, et. al. v. Sam's West Inc., et. al.</u>, Case No: 2:21-CV-05122-SVW-JC, related to rebuttal of opposing expert's proposed survey. Report filed May 11, 2022. Deposition testimony May 27, 2022.

In the matter of <u>Andres Lopez v. Giorgio Armani Corporation</u>, Case No: BC71329, related to statistical analysis of data and rebuttal of plaintiff's trial plan. Report filed May 20, 2022. Deposition testimony November 10, 2022.

In the matter of <u>Amanda Bowers, et. al. v. Prolink Staffing Services</u>, et al., Case No: 21STCV22188, related to statistical analysis of data. Report filed June 1, 2022. Supplemental report filed March 29, 2023.

In the matter of <u>Jennifer Hua v. Western Asset Management Company</u>, et. al., Case No: 19STCV31305, related to analysis of economic damages and rebuttal of opposing expert. Deposition testimony August 25, 2022.

In the matter of <u>Roberts v. TransAm</u>, et al., Case No: 2:21-cv-02073-JWB-GEB, related to analysis of minimum wage and allegations of fraud. Declaration filed July 22, 2022. Declaration filed September 6, 2022. Deposition testimony October 27, 2022.

In the matter of <u>Jennifer Brum, et. al. v. MarketSource Inc., et. al.</u>, Case No: 2:17–CV–00241–KJM–JDP, related to statistical analysis of data, rebuttal of opposing experts, and discussion of trial plan. Report filed August 9, 2022. Deposition testimony September 7, 2022.

In the matter of <u>Gregory Andrews v. US Bank</u>, Case No: 8:22-cv-00117-DOC-DF, related to analysis of economic damages. Report filed September 7, 2022. Rebuttal report filed October 7, 2022.

In the matter of <u>Nicholas Tomaszewski v. City of Palmdale, et. al.</u>, Case No: MC026483, related to analysis of economic damages and rebuttal of opposing expert. Deposition testimony September 12, 2022.

In the matter of <u>Michael Gonzalez, et. al. v. Charter Communications</u>, et al., Case No: 2:20-cv-08299-SB-AS, related to statistical analysis of data. Report filed September 20, 2022. Rebuttal report filed October 10, 2022.

**ATTACHMENT A**

In the matter of <u>Anthony Jones v. City of Alhambra, et. al</u>., Case No: 19STCV11721, related to analysis of economic damages and rebuttal of opposing expert. Report filed September 20, 2022. Deposition testimony September 22, 2022.

In the matter of <u>Bonnie Gawf v. City of Monterrey,</u> Case No: 20CV003232, related to analysis of economic damages and rebuttal of opposing expert. Report filed September 20, 2022. Deposition testimony September 23, 2022.

In the matter of <u>Kyle Walker v. Howmedica Osteonics Corp., et al</u>., Case No: 22-cv-002640-MMA-JLB, related to analysis of economic damages. Report filed October 14, 2022. Rebuttal report filed November 4, 2022. Deposition testimony December 8, 2022.

In the matter of <u>Julio Garcia, et. al. v. Walmart, et al</u>., Case No: 18-cv-00500-L-MDD, related to statistical analysis of data and rebuttal of opposing expert. Report filed October 21, 2022. Rebuttal report filed December 9, 2022. Deposition testimony January 5, 2023.

In the matter of <u>Austin Works, et. al. v. Flowers Foods Inc., et al</u>. Case No: 3:21-cv-03567, related to analysis of data and independent contractor issues. Report filed October 17, 2022. Deposition testimony November 29, 2022.

In the matte of <u>Desmond Augustine, et. al.  v. United Parcel Service, et. al.</u>, Case No: BC636468, related to statistical analysis of data and rebuttal of opposing experts. Report filed October 24, 2022.

In the matter of <u>Carla Janzen v. Regents of the University of California, et. al.</u>, Case No: 19STCV24840, related to analysis of economic damages and rebuttal of opposing expert. Trial testimony October 28, 2022.

In the matter of <u>Martin J. Walsh, Secretary of Labor, et al. v. Nursing Home Care Management Inc., et. al.</u>, Case No: 21-2583-CFK. Related to analysis of potential unpaid wages and rebuttal of opposing expert. Report filed November 18, 2022.

In the matters of <u>Stephanie Walker v. Lyft</u>, <u>Steven Ortega v. Lyft</u>, <u>Michael Foster v. Lyft</u>, <u>Gabriel Lopez v. Lyft</u>, <u>Michael Ayres v. Lyft</u>, and <u>Antonio Alves v. Lyft</u>,  AAA Action Nos. 01-22-0001-7556, 01-22-0001-7557, 01-22-0001-7521, 01-22-0001-7463, 01-22-0001-7402, and 01-22-0001-7417,  respectively, related to data analysis, independent contractor status, and damages. Reports filed December 2, 2022.

In the matter of <u>Lucio Lemus, et. al. v. Owens Brockway Container Glass Company</u>, Case No: 2:21-CV-00146 FLA (AFMx), related to statistical analysis of data and rebuttal of opposing expert. Report filed December 9, 2022. Deposition testimony January 9, 2022.

In the matter of <u>Armando Haro, et. al. v. Walmart Inc</u>., Case No: 1:21-cv-00147, related to analysis of video data. Report filed December 14, 2022. Deposition testimony January 4, 2023.

In the matter of <u>Nicholas Lara, et al. v. Z Golf Food & Beverage Services, et al.,</u> Case No: RIC1905177, related to statistical analysis of data and rebuttal of opposing expert. Report filed December 16, 2022. Deposition testimony January 6, 2023.

In the matter of <u>Juan Carlos Corral, et al. v. Staples the Office Superstore LLC,</u> Case No: 2:22-cv-01254-MCS-(PVCx), related to statistical analysis of data and rebuttal of opposing expert. Report filed January 27, 2023.

In the matter of <u>Kathy Arrison, et al. v. Walmart Inc., et. al.</u>, Case No: CV-21-00481-PHXSMB, related to the scientific collection of data and statistical analysis of data. Report filed February 3, 2023. Deposition testimony March 16, 2023.

In the matter of <u>Joseph Ash, et al. v. Flowers Foods Inc, et al.</u>, Case No: 1:21-CV-03566, related to analysis of independent contractor issues. Report filed February 16, 2023.

In the matter of <u>David Padilla, et al. v. Walt Disney Parks and Resorts, et al.,</u> Case No: 2019-01077209-CU-OECXC, related to statistical analysis of data, scientific collection of data, and rebuttal of opposing expert. Report filed February 17, 2023. Deposition testimony March 24, 2023.

In the matter of <u>Edward Castillo v. Burrtec Industries, et al,</u>. Case No: 19STCV31323, related to analysis of economic damages. Report filed March 14, 2023. Deposition testimony March 17, 2023.

In the matter of <u>Antoine Richard, et al. v. Flowers Foods Inc, et al.,</u> Case No: 6:15-CV-02557, related to analysis of independent contractor issues. Report filed March 15, 2023.

In the matter of <u>Raymond Knight, et. al, v. Flowers Foods Inc., et. al.,</u> Case No: NO. 21cv3568, related to analysis of independent contractor issues. Report filed March 16, 2023.

In the matter of <u>Home Point Financial Corporation v. Donald Mark Lane, Candace Robertson Christopher Wilkins, and Guaranty Home Mortgage Corporation</u>, Case No: 6:20-cv-01819-CEM-EJK, related to analysis of economic damages. Report filed March 31, 2023. Rebuttal report filed May 15, 2023.

In the matter of <u>Claudia Carr, et. al. v. Walmart Inc., et. al.,</u> Case No: 5:21-cv-01429-AB-KK, related to statistical analysis of data and rebuttal of opposing expert. Report filed April 7, 2023.

In the matter of <u>Requel Martin v. Jacobs Engineering, et. al</u>, Case No: 2:22-cv-06240-MRW, related to analysis of economic damages. Report filed April 19, 2023.

In the matter of <u>Jerome King, et. al, v. Flowers Foods Inc., et. al.,</u> Case No: 3:21-cv-00579, related to analysis of independent contractor issues. Report filed May 1, 2023.

In the matter of <u>Suzanne Alfonso, et. al. v. FedEx Ground Package System, Inc.,</u> Case No: 3:21-CV-1644 (SVN), related to scientific data collection and statistical analysis of data. Report filed May 15, 2023.

**ATTACHMENT A**

In the matter of <u>Dora Patricia Amaya et. al. v. Menzies Aviation (USA), Inc.</u>, Case No: 2:22-cv-05915-MCS-MARx, related to statistical analysis of data and rebuttal of opposing expert.  Report filed June 12, 2023.

**ATTACHMENT A**

**Attachment B**

## List of Materials Relied Upon

- Verified Complaint for Injunctive Relief and Damages and Demand for Jury Trial

- Verified First Amended Complaint for Injunctive Relief and Damages and Demand for Jury Trial

- Deposition Transcript of Chip Adkins

- Deposition Transcript of Teresa Reber

- Deposition Transcript of Donald Mark Lane

- Deposition Transcript of Candace Robertson

- Deposition Transcript of Christopher Wilkins

- Declaration of Donald Mark Lane

- Order Granting in Part and Denying in Part Motion for Preliminary Injunction

- Plaintiff's Initial Disclosures

- Defendants' Initial Disclosures

- Transcript of Motion for Expedited Discovery Hearing Before the Honorable Embry J. Kidd United States Magistrate Judge

- Transcript of Motion for Preliminary Injunction Evidentiary Hearing Before the Honorable Carlos E. Mendoza United States District Judge

- Plaintiff's Objections and Responses to Defendant Donald Mark Lane's First Set of Interrogatories

- Plaintiff's Objections and Responses to Defendant Christopher Wilkin's First Set of Interrogatories

- Plaintiff's Objections and Responses to Defendant Candace Robertson's First Set of Interrogatories

- Plaintiff's Supplemental Responses to Defendant Candace Robertson's First Set of Interrogatories

- Plaintiff's Objections and Responses to Candace Robertson's First Request for Production of Documents

- Plaintiff Home Point Financial Corporation's Supplemental Rule 26(a)(1) Disclosures

- Defendant Guaranty Home Mortgage Corporation's Response to Plaintiff's Second Set of Requests for Production

- Plaintiff's Objections and Responses to Defendant Candace Robertson's Second Set of Interrogatories

Supplemental Expert Report of Robert Crandall

- GHMC Productions
  - GHMC 000001 - GHMC 003297

- Home Point Productions
  - HPLANE 0000001 - HPLANE 00005595

- Lane Productions
  - LANE 000001 - LANE 000991

- Robertson Productions
  - ROBERTSON 000001 - ROBERTSON 000396

- Wilkins Productions
  - WILKINS 000001 - WILKINS 000283

- https://www.mba.org/

- Quarterly MBA Loan Performance Report:
  - https://www.mba.org/news-and-research/research-and-economics/single-family-research/mortgage-bankers-performance-reports-quarterly-and-annual