1

2

3

4

5

6

7

8

9 **IN THE UNITED STATES DISTRICT COURT**

10 **FOR THE MIDDLE DISTRICT OF FLORIDA**

11 **ORLANDO DIVISION**

12

13 HOME POINT FINANCIAL CORPORATION,    **Case No. 6:20-cv-01819-CEM-EJK**

14         Plaintiff,

15 vs.                                 **REBUTTAL EXPERT REPORT OF**
                                        **ROBERT W. CRANDALL, MBA**
16 DONALD MARK LANE, CANDACE
   ROBERTSON, CHRISTOPHER WILKINS,
17 and GUARANTY HOME MORTGAGE
   CORPORATION,
18
          Defendants.
19

20

21

22

23

24

25

26

27

28

**Table of Contents**

I.     ASSIGNMENT...................................................................................................... 2

II.    QUALIFICATIONS............................................................................................... 2

III.   DISCUSSION OF AVAILABLE DATA ................................................................ 3

IV.    INTRODUCTION AND REBUTTAL....................................................................... 4

V.     Detailed Response to Dr. Fishkind.................................................................. 9

A.     Dr. Fishkind's industry turnover argument is irrelevant regarding retention
       bonuses, salary increases, recruiting, and training costs. ...................................... 10

B.     Dr. Fishkind ignores the fact that Defendants' raid had the same benefits as
       acquiring a new company............................................................................... 14

C.     Dr. Fishkind falsely claims that disgorgement of profits cannot be easily
       calculated. ...................................................................................................... 16

D.     Total Amount in Controversy to Date .................................................................. 20

Rebuttal Expert Report of Robert Crandall

## I.    ASSIGNMENT

1.    As noted in my previous declarations, I have been retained by counsel on behalf of Plaintiff Home Point Financial Corporation ("Home Point"). My March 31, 2023 expert report presented analyses of the court filings, discovery requests and responses, documents produced by the parties, and deposition and hearing transcripts for the purposes of evaluating economic damages incurred by Home Point in connection with Guaranty Home Mortgage Corporation's ("GHMC"), Candance Robertson's, and Donald Lane's ("Defendants") hiring raid of Home Point's Maitland, Florida office associates.   My present assignment is to respond to The rebuttal report submitted by Defendants' expert Dr. Fishkind. In connection with this assignment, I will address: 1) whether Dr. Fishkind's discussion of historical industry earnings changes or industry turnover statistics are reasonably related to the damages directly associated with the solicitation of specific Home Point associates in September of 2020; 2) whether Dr. Fishkind's rebuttal opinion that the damages estimates provided in my previous report are "grossly inflated and not reliable" is supported by any facts, testimony, or analytical findings; 3) whether Dr. Fishkind identified any specific errors in support of his finding that the damages identified in my previous report are "grossly inflated and not reliable"; 4) whether Dr. Fishkind's own methodology and analysis, which resulted in a significantly lower estimate of damages, is consistent with the facts and analytical reasoning; and finally, 5) an estimate of GHMC's profits for disgorgement purposes based on additional information produced by GHMC in discovery since my initial report was submitted.

## II.    QUALIFICATIONS

2.    I am a Partner at Resolution Economics LLC, a firm whose activities include conducting labor economics studies, performing economic and statistical analyses, and providing complex data analysis in connection with both litigation and non-litigation issues. I have been retained in hundreds of matters in which I have been asked to analyze and opine on potential economic damages. In connection with this work, I often am asked to measure work related activities, how work is organized within the employer's operations and evaluate employee productivity. In the mortgage industry, I have served as an expert in several matters involving loan originators,

1  underwriters, processors, and/or funders where the project goals were to evaluate the nature of the

2  work employees performed and measure employees' hours worked and productivity. I have also

3  been retained in an expert or consulting capacity in more than 500 class or collective action matters

4  alleging wage and hour violations under the Fair Labor Standards Act ("FLSA") and various state

5  laws and numerous matters alleging discrimination in hiring. I hold an M.B.A. from Loyola

6  Marymount University, and a B.A. degree in History from the University of Southern California. I

7  have been qualified as an expert witness in both Federal and State Courts. My resume and a list of

8  the cases in which I have testified as an expert at trial or by deposition during the last 4 years is

9  attached to this report as **Attachment A**. My hourly rate is $800 per hour, which is the rate I

10  customarily charge for both consulting work and expert testimony.

11

12  **III.    DISCUSSION OF AVAILABLE DATA**

13  3.    In addition to the data and documents relied upon in my previous report, I have been

14  provided with all additional documents produced in this action by all parties including Defendants'

15  expert Dr. Hank Fishkind's report and other additional information produced by Home Point and

16  the Defendants. Since my initial report served on March 31, 2023, GHMC has produced additional

17  limited information in response to Home Point's Second Requests For Production To GHMC

18  (served on February 24, 2023),[1] including documents relating to historical hire and termination

19  information, as well as the number of loans closed by its employees, including the solicited

20  associates at issue in this litigation, which I used for disgorgement calculation purposes. A list of

21  materials relied upon is included at the end of this report as **Attachment B**. Since my initial report

22  served on March 31, Home Point has also produced documents and communications regarding the

23  retention bonus it claims as damages.[2] Those documents only further corroborate that Home Point

24  paid the retention bonus it claims as damages as a direct result of Defendants' mass raid in

25  September 2020.

26

27

28
[1] GHMC 003257 – 3296.
[2] HPLANE00005192 – 5514.

## IV.   INTRODUCTION AND REBUTTAL

4.      My previous report noted that the basis of the dispute between Home Point and Defendants is the September 2020 raid of Home Point's Maitland, Florida associates that was conducted by Ms. Robertson and Mr. Lane in concert with GHMC.   In connection with my evaluation of Home Point's damages, my prior report cited a variety of evidence including: the deposition testimony of Ms. Robertson, Mr. Lane, and Home Point corporate representative Teresa Reber, and the hearing testimony of several Home Point associates solicited by Defendants. I have also reviewed underlying evidence including communications between Mr. Lane and current and former Home Point associates that he solicited while he was still employed by Home Point.   Indeed, Dr. Fishkind appears to agree that Home Point paid Mr. Lane while he was working on behalf of GHMC because Dr. Fishkind that the $2,773 in damages associated with Mr. Lane's conduct before he resigned from Home Point was a "reasonable estimate for economic damages arising from this factor."[3]

5.      The combination of deposition and hearing testimony and the documents and communications reviewed provide insight into Defendants' plans to raid Home Point's Maitland associates in September 2020.  Taken at face value, the testimony, documents, and communications indicate that Ms. Robertson and Mr. Lane worked together to solicit Home Point associates in violation of their employment agreements and were planning an even larger subsequent "next wave" of raids.  The available evidence also shows that Defendants were successful in inducing 16 Home Point Associates to take positions with GHMC, although six Associates subsequently returned to Home Point shortly after the raid, leaving a total of 10 associates "lost" due to the raid.[4] There is evidence such as offer letters, lists of associates, depositions and hearing testimony, and produced communications[5] that demonstrate that each of the Home Point associates who are included in the damages analysis were at risk of being recruited by Defendants beyond the initial raid.  Dr. Fishkind does not rebut these basic facts and supporting evidence.

---

[3] Dr. Hank Fishkind Report, Table 1, p. 4, 9.
[4] E.g., GHMC 000015
[5] E.g., LANE 000820

6.     Finally, Dr. Fishkind does not address any of the Home Point compensation data that were provided and analyzed in my prior report.  For example, he does not dispute that Home Point increased associates' base compensation to prevent them from joining GHMC.  Additionally, he does not dispute that Home Point paid out millions in retention bonuses to defend its Maitland workforce from Defendants' raid. In short, Dr. Fishkind does not dispute any of the data or underlying evidence that is extensively cited and analyzed in my previous report. Nonetheless, with much hand waving and little to no analytical support, Dr. Fishkind labels the analyses presented in my previous report as "grossly inflated and not reliable." In doing so, Dr. Fishkind's report is to muddy the waters. He states:

> "Mr. Crandall's damage estimate is grossly inflated for two reasons. First, he failed to account for the rapid escalation in industry wages of 19% that occurred in the 12 months prior to the alleged wrongful recruiting by Defendants in September 2020. Second, Mr. Crandall did not adjust for the high level of employee turnover, averaging over 20% per year, in his damage calculations."[6]

7.     Essentially, Dr. Fishkind's argument is that Home Point would have paid the Maitland associates' increased compensation regardless of Defendants' mass raid, and/or that the Associates who left *en masse* due to Defendants' solicitations would have left regardless.   Dr. Fishkind lacks supporting analysis, facts, or evidence primarily because the supporting analysis, facts, and evidence would contradict his rebuttal theory. Indeed, Dr. Fishkind fails to explain why either of these "reasons" has any impact on the damages.  He cannot do so because these "reasons" he advances are nonsensical given the facts, evidence, and claims at issue.

8.     Consider Dr. Fishkind's first "reason": "he failed to account for the rapid escalation in industry wages of 19% that occurred in the 12 months prior to the alleged wrongful recruiting by Defendants in September 2020."[7]  There are several problems with this theory. First, it fails to consider that there is no direct connection between the salary increase that occurred here and the

---

[6] Dr. Hank Fishkind Report, p.5 paragraph 16.
[7] Dr. Hank Fishkind Report, p.5 paragraph 16.

general pay changes across the industry as a whole preceding the mass raid.  This dispute is about the specific solicitation actions of the Defendants that led to the dispute, not baseline industry pay. Factually, the pay increases Home Point was forced to extend against the offers that GHMC crafted using Ms. Robertson's and Mr. Lane's knowledge of associates' pay were not conducted in response to a general industry trend – they were done immediately as a response to Defendants' mass raid.  Indeed, there is no evidence – and Mr. Fishkind does not identify any – even suggesting that Home Point would have paid these salary increases but for Defendants' conduct, that it had planned to pay these increases, or that the timing of these pay increases was anything but a response to Defendants' mass raid. In addition, Home Point's damages claim is narrowly tailored to only those associates who received increases as a direct response to the raid. In other words, Home Point does not claim damages for compensation increases resulting from the general need to maintain competitive industry compensation.

9.     Second, Dr. Fishkind fails to consider that mortgage industry compensation rises and falls due to commissions/bonus structures that are tied to loan volume.  For example, during periods of high loan volume, underwriters close more loans and earn more commissions, while the opposite is true during periods of lower loan volume.  Indeed, Home Point's "points" program provides a good example of production-based bonuses in the industry that would result in significantly higher pay for associates even if their base salaries are kept constant. Thus, Dr. Fishkind's increased industry pay in the prior 12 months discussion falls into the category of a "so what" because Home Point associates could have already been earning more compared to the prior year and/or industry as a result of the increased loan volume in the time period preceding the raid.

10.     Third, Dr. Fishkind's theory assumes without evidence that Home Point associates were paid below market and somehow the retention bonus would be needed to bring them up to market pay.  However, he presents no analysis regarding Home Point's associates' compensation as compared to market pay.  If Home Point associates were already receiving market pay, then there is no basis to assume that retention bonuses are needed to meet market pay.

11.     Fourth, Dr. Fishkind claims that retention bonuses are "common" to the industry. However, if it was "the industry" driving Home Point's pay practices instead of the raid, then one would expect that the same factors that impacted Home Point would also have impacted GHMC. Dr. Fishkind provides no analysis of compensation increases or retention bonuses that were paid by GHMC to its employees to address the same "industry factors" he attributes to direct competitor Home Point.  Finally, the evidence shows that the retention bonuses clamed as damages by Home Point here were paid out specifically to defend against the Defendants' raid.[8]  Thus, industry factors before and after the raid are not relevant to the question of damages sustained due to the Defendants' actions.

12.     Fifth, Dr. Fishkind's methodology is based on the theory that Home Point failed to increase associate compensation to match the growth in average earnings in the industry. However, if he studied the changes in pay for those who worked at least 6 months in both 2019 and 2020, he would have learned that associate pay increased substantially more than 19% <u>before</u> considering the retention bonuses were paid. More specifically, a comparison of Home Point's associates annualized 2019 total compensation to their annualized 2020 total compensation after excluding retention bonuses, shows that in 2020 Home Point's associates total compensation increased by an average of approximately 54.2% as compared to 2019.[9],[10]  Exhibit R1 below shows the annualized percent pay increase from 2019 to 2020 for each employee who received a retention bonus in 2020. As shown on this exhibit, 92.3% (48 out of 52) of the employees had more than 19% increase in their annualized pay from 2019 to 2020.  In other words, there is no basis for Dr. Fishkind's opinion that the retention bonuses paid were to increase associates' pay to market.

---

[8] E.g., HPLANE00005205, 5265, 5471, 5477.
[9] HPLANE 00005516
[10] This analysis is limited to 52 employees that were active in 2019, received a retention bonus in 2020, held the same job titles across years and throughout the year, and were at least active for more than half the year in 2019 and 2020. In other words, I excluded 29 associates with potential promotions who did not have the same job title within the same year or across years. Additionally, I excluded 18 associates who had less than half a year tenure in 2019 or 2020.

Rebuttal Expert Report of Robert Crandall

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**- EXHIBIT R1 -**
**Percentage Change in Total Compensation from 2019 to 2020 Excluding Retention Bonuses**
**- Limited to Maitland Associates that Received a Retention Bonus in 2020 -**

13.   Sixth, Dr. Fishkind's theory that pay should be increased in 2020 by 19% over 2019 does not account for associates hired in 2020, who presumably were paid 2020 market pay.  Nonetheless, Dr. Fishkind assumes that associates who were hired in 2020 needed an increase of 19% to be paid "market" wages in the same year they were hired.

14.   Dr. Fishkind's second "reason" for attempting to characterize my report as "grossly inflated and not reliable" is that industry turnover means that the Associates in question would have left anyway.  However, he has no evidence that the solicited Associates were planning on leaving before being solicited by Defendants. Indeed, several solicited associates testified that they had no plans

of leaving before they were solicited and were not actively looking for a new job at the time.[11] Furthermore, the solicited associates had an average tenure of 4.13 years at Home Point.[12] Saying that the Associates in question would have left at some point in the future does nothing to address the question of Associates who left Home Point because of Defendants' actions. Again, this case is not about "the industry" over time. It is about specific people who were solicited all at once by Defendants, what actions Home Point had to take to reasonably respond, and the incremental costs Home Point incurred that it would not have sustained absent Defendants' mass raid. Indeed, timing is important because Ms. Robertson and Mr. Lane would have no restrictions on soliciting associates once their non-solicitation agreements expired. To say that Defendants did not actually cause the damages claimed here because Home Point would have lost its employees eventually is like saying that a negligent driver who ran over and killed a pedestrian did not cause damages because everyone dies eventually. Again, the non-disgorgement damages here are tied to specific acts during a specific event that resulted in specific payments to specific people and other costs associated with responding to the event within a specific time period.

## V.  Detailed Response to Dr. Fishkind

15.  Dr. Fishkind's approach appears to be focused on muddying the waters by talking about the mortgage industry in general over longer periods of time. Yet, the analysis he is supposedly rebutting is about specific highly skilled workers, who can be identified by name, who were specifically targeted as "A listers" by Defendants in violation of their agreements at a specific time, September 2020, which happened to coincide with a peak period for the industry. The damages discussed in my previous report are directly tied to Defendants' actions and Home Point's reasonable responses to the raid of its associates.

---

[11] Motion for Preliminary Injunction Evidentiary Hearing, p.9; Motion for Preliminary Injunction Evidentiary Hearing, p.23
[12] HPLANE00004537.

**A.  Dr. Fishkind's industry turnover argument is irrelevant regarding retention bonuses, salary increases, recruiting, and training costs.**

16.     Dr. Fishkind claims that my retention bonus estimated damages failed to adjust for the industry turnover rate and claims that:

> "The Report failed to adjust the damage estimates to reflect the impact of rising business volume on earnings during this period, which shot up 19% in the 12 months prior to the disputed actions of the Defendants. Furthermore, the Report failed to consider the impact of high employee turnover in the mortgage banking industry and in their own firm. As noted previously, labor turnover is very high in the industry with a 20% turnover rate even in the best of times. These factors point to the need for any firm, including the Plaintiff, to provide retention bonuses to its employees when volumes are very high, as they were in September 2020."[13]

He further asserts that,

> "Stratmor notes that retention or signing bonuses are common in the industry. Loan officers view themselves as "free agents." Loan officer turnover data supports this, with average annual turnover typically in the 30-40% range and average tenure in the three- to four-year range. While the employees in this case were underwriters, processors and funders and not loan officers, the industry trend is supported by the turnover experienced by Home Point shown through the documents produced in this lawsuit and as explained in more detail below."[14]

More specifically, Dr. Fishkind claims that:

> "The Plaintiff also experienced high employee turnover rates at its Maitland office. As Figure 4 shows, 11% of employees stayed for 1 year or less; 24% had tenure of 2 years or less; and 22% were employed for 3 years or less. Thus, 56% of all employees left Home Point's Maitland office within 3 years of being hired. Astonishingly, only 13 of the 203 Maitland employees who received retention bonuses in 2020 are still working at the Maitland office today, this is just 6% who are still employed who received retention bonuses in September/October of 2020."[15]

The "turnover would happen anyway" argument is irrelevant to the turnover that was caused directly by the Defendants' actions.  Further, to argue that a given associate may leave at some point in the future seems silly when the question at hand is whether the turnover caused by Ms.

---

[13] Dr. Hank Fishkind Report, p.12 paragraph 30.
[14] Dr. Hank Fishkind Report, p.12 paragraph 31
[15] Dr. Hank Fishkind Report, p.12 paragraph 33

Robertson and Mr. Lane violating their non-solicit agreements in concert with GHMC.  To illustrate the absurdity of this argument, consider the following scenario. Suppose an associate who was solicited by Ms. Robertson and Mr. Lane in September 2020 would have remained with Home Point until 2022 but-for the solicitation.  The fact that the associate would have eventually left two years later in 2022 does not mean that Home Point does not have damages in 2020. As mentioned above, the average tenure for the solicited associates was 4.13 years.[16] Thus, assuming these Associates would have left in September 2020 regardless of Defendants' actions is inconsistent with the facts in this case and is irrelevant to the damages Home Point actually incurred.

17.    In addition, Dr. Fishkind's arguments regarding turnover seemingly fail to grasp that turnover varies in the industry based on the business cycle, and that relevant to this claim is the market condition in September 2020. Consequently, statements remarking, for example, on how "turnover rates soar" in 2007 are completely irrelevant to the analysis.[17]  When isolated to 2020, even Dr. Fishkind notes, "turnover was at a survey low of 21% in 2020 at a time when origination volume was high. During periods of high volume like in 2020 loan officers are less likely to change companies, because their earnings are high, but there remains a significant turnover rate even in these periods"[18] (emphasis added).  Clearly, and according to Dr. Fishkind himself, turnover was "at a survey low" during the period in question.[19] Further, his source of industry turnover has less relevance to Home Point because Home Point's practice of paying above average earnings would be expected to result in fewer associates moving to other firms due to economic reasons.

18.    Dr. Fishkind produces a chart of employee tenure at Maitland, Figure 4, but he conflates tenure with turnover.[20] Tenure is how long an employee has worked for a given company, whereas turnover is the percentage of employees who leave employment.  An employee who accepts a

---

[16] HPLANE00004537.
[17] Dr. Hank Fishkind Report, p.7 paragraph 24.
[18] Dr. Hank Fishkind Report, p.7 paragraph 24.
[19] Dr. Hank Fishkind Report, p.7 paragraph 24.
[20] Dr. Hank Fishkind Report, p.10.

position in 2019 would have 1 year of tenure in 2020 but may stay another decade.  Despite making statements regarding industry trends, Dr. Fishkind does not heed his own claim as he ignores industry trends in employment when discussing Home Point's Maitland turnover and tenure rates. Figure 4 of Dr. Fishkind's report shows the employee tenure for Home Point's Maitland associates that received the retention bonuses claimed as damages in September and October of 2020, and he points out that, "56% of all employees left Home Point's Maitland office within 3 years of being hired."[21] However, Dr. Fishkind ignores the fact that the mortgage industry has experienced a downturn since Home Point's retention bonuses were paid in late 2020. In fact, Maitland associates hired before 2020 had an average tenure of **4.65 years** while associates hired in 2020 had an average tenure of 1.65 years. This is likely due to the end of the industry spike in 2021 that was driven by interest rate increases resulting in many associates being laid off. Dr. Fishkind's report ignores the fact that most of Home Point's associates have longer tenure as shown on his Figure 4: 65% of Home Point's employees had a tenure of 2 years or more, 43% of the employees had a tenure of 3 years or more, and 30% of the employees had a tenure of 4 years or more. The problem with Dr. Fishkind's analyses and claims in his report is that they fail to acknowledge that many of the terminations happened because of the broader industry trends. Dr. Fishkind's "astonishing" statement[22] regarding Home Point turnover is misplaced because such turnover should be expected by someone who has studied or is familiar with the industry.  Dr. Fishkind's Figures 1 and 2 show that loan volume has dropped significantly with the rise in interest rates and that, correspondingly, total industry employment has dropped.  Moreover, the argument about who remains in 2023 is irrelevant to who was solicited in 2020, who was paid retention bonuses in 2020, and who had their salary increased as a result of the Defendants' actions in 2020.

19.     Dr. Fishkind does not dispute that Home Point paid retention bonuses and increased salaries to defend its Maitland workforce from Defendants' raid but decides that it is appropriate to adjust these retention bonuses and salaries because of industry turnover rate and industry increased

---

[21] Dr. Hank Fishkind Report, p.8
[22] Dr. Hank Fishkind Report, p.10 paragraph 33.

earnings. Another problem with his approach is that Dr. Fishkind assumes Home Point's associates were being paid 19% less than the industry but shows no evidence to support his argument.[23] Additionally, his approach only studies base pay without studying the total compensation received by Home Point's associates, which could be significantly higher than the overall industry patterns that he claims to have studied.  For example, Dr. Fishkind fails to consider that Home Point's "points" program provides a good example of production-based bonuses in the industry that would result in significantly higher pay for associates even if base salaries are kept constant. As mentioned above, comparison of Home Point's 2019 to 2020 annualized pay records show that on average, Home Point's employees received 54.2% pay increase in 2020 without including the retention bonuses. Thus, his retention bonus analysis is irrelevant and inaccurate.

20.     Finally, Dr. Fishkind claims that my estimated damages of $204,811 for recruiting costs and $359,073 in signing bonuses is inflated and not reliable because it fails to consider the high turnover rates in the industry and Home Point's Maitland office.[24,25] More specifically, Dr. Fishkind claims that, "as shown above, the office experienced high rates of labor turnover consistent with industry trends. In any year, 20% or more of the employees could be expected to leave. In the case of the Maitland office this would be 46 employees whose employment ended within a year of the payment of the retention."[26] Essentially, he argues without showing any support, that Home Point would have incurred recruiting costs because of the "high" turnover rates in the industry. Again, that some associates left Home Point after receiving a retention bonus does not mean that Home Point did not have to recruit and train associates and pay signing bonuses during the peak of the industry in September 2020 to replace the solicited associates who left as a result of Defendants' actions.

---

[23] Dr. Hank Fishkind Report, p.14-15
[24] Dr. Hank Fishkind Report, p.11 paragraph 38.
[25] Dr. Hank Fishkind Report. p.12 paragraph 40-41.
[26] Dr. Hank Fishkind Report. p.11 paragraph 38

Rebuttal Expert Report of Robert Crandall

**B.  Dr. Fishkind ignores the fact that Defendants' raid had the same benefits as acquiring a new company.**

21.     Dr. Fishkind claims that my estimated damages associated with GHMC's avoided recruiting costs totaling $239,073 is speculative because there is no evidence that GHMC routinely uses recruiters.[27] However, Dr. Fishkind fails to present affirmative evidence regarding how often or whether GHMC uses recruiters in support of his "no evidence" statement.  First, Chip Adkins testified on behalf of GHMC in 2020 that GHMC uses a nationwide recruiter agreement for hiring.[28] Also, there is a difference between affirmatively stating GHMC did not ever use recruiters versus stating there is "no evidence" without citation to contrary facts.  Indeed, Dr. Fishkind makes no representation that he conducted any sort of inquiry or diligence on this point, and he could say there is "no evidence" even if GHMC used recruiters for every hire but failed to produce documents regarding payments to recruiters. And, that "GHMC reports that it rarely does so," has nothing to do with whether it used recruiters in September 2020. In addition, Dr. Fishkind presents no evidence that GHMC has been able to accomplish a mass hire of employees without using recruiters or outright purchasing an existing company.  Comparing practices accompanying a mass hire, such as the one at issue here, to the practices used for the hiring of individual associates is in no way an apples-to-apples comparison. Further, if GHMC hired recruiters to solicit Home Point's associates, then GHMC would have paid the recruiter fee for each associate who left Home Point for GHMC. If that occurred, Ms. Robertson and Mr. Lane would not have been needed to solicit Home Point's associates in violation of their respective employment agreements.

22.     Additionally, Dr. Fishkind states, "Furthermore, it is common in the industry for multiple employees to leave and join another company. It is also common practice for firms to hire multiple employees from a competitor. In fact, Home Point has done this very thing."[29]  However, Dr. Fishkind provides no supporting evidence for his statement.  For example, he presents no statistics

---

[27] Dr. Hank Fishkind Report, p.12 paragraph 45.
[28] 30(b)(6) Deposition of Chip Adkins, p. 185-86.
[29] Dr. Hank Fishkind Report, p.10 paragraph 32.

regarding group hires in the industry, at Home Point, or even group hires at GHMC.  Thus, what is the basis for Dr, Fishkind's claim that it is "commonplace" for groups of employees to leave and join another firm *en masse*?  Also, there is a difference between hiring 2 or 3 employees from a competitor by participating in the labor market versus soliciting and/or hiring a large group of employees in violation of a non-solicitation agreement. Dr. Fishkind also does not address how groups of employees are recruited to come simultaneously, or the potential role of recruiters in soliciting multiple employees at once.

23.     Dr. Fishkind also fails to recognize how some of the "group hires" happened at Maitland. Home Point underscore{purchased} other mortgage companies to effect group hires, whereas GHMC's raid was designed to create the benefits of acquiring the equivalent of a company with numerous specialized employees without the costs associated with a purchase transaction. As shown in Exhibit R2 below, GHMC had only three employees working in Orlando prior to the raid. However, after the raid, GHMC had 17 employees working in Orlando. This acquisition-like raid gave GHMC the ability to enter the Orlando market without paying a premium to purchase or acquire a smaller company. Furthermore, they were able to expand their team by hiring closers and other underwriter support after the raid to support the greatly expanded office.

Rebuttal Expert Report of Robert Crandall

**- EXHIBIT R2[30] -**
**- List of Employees Working in GHMC's Orlando Department -**

| First Name | Last Name | Job Title | Home Department | Hire Date |
|---|---|---|---|---|
| Dawn M | Smith | UW - Underwriter | 005105 - Underwriting - Orlando | 06/01/2020 |
| Lucy Rae | Demeduk | UWSUPS - Underwriter Support Specialist | 005105 - Underwriting - Orlando | 06/01/2020 |
| Martha Kay | Gorham | SRUW - Senior Underwriter | 005105 - Underwriting - Orlando | 07/27/2020 |
| Donald | Lane | RUD - SVP, Regional Underwriting Director | 005105 - Underwriting - Orlando | 09/30/2020 |
| Claudio | Betts | UW - Underwriter | 005105 - Underwriting - Orlando | 09/30/2020 |
| Chandy | Burke | UW - Underwriter | 005105 - Underwriting - Orlando | 09/30/2020 |
| Daniel | Cook | UW - Underwriter | 005105 - Underwriting - Orlando | 09/30/2020 |
| Jarrett | Herrin | UW - Underwriter | 005105 - Underwriting - Orlando | 09/30/2020 |
| Michelle L. | Izquierdo | UW - Underwriter | 005105 - Underwriting - Orlando | 09/30/2020 |
| Dora Diana | Lopez | UW - Underwriter | 005105 - Underwriting - Orlando | 09/30/2020 |
| Charlene | Murray | UW - Underwriter | 005105 - Underwriting - Orlando | 09/30/2020 |
| Carla | Rigdon | UW - Underwriter | 005105 - Underwriting - Orlando | 09/30/2020 |
| Maraliz | Rodriguez | UW - Underwriter | 005105 - Underwriting - Orlando | 09/30/2020 |
| Ann M | Webb | UW - Underwriter | 005105 - Underwriting - Orlando | 09/30/2020 |
| Patricia | Clark | UWSUPS - Underwriter Support Specialist | 005105 - Underwriting - Orlando | 09/30/2020 |
| Maureen | Deal | UWSUPS - Underwriter Support Specialist | 005105 - Underwriting - Orlando | 09/30/2020 |
| Christopher | Wilkins | UWSUPS - Underwriter Support Specialist | 005105 - Underwriting - Orlando | 09/30/2020 |
| Charles | Carey | CLOSER - Closer | 005205 - Closing/Funding - Orlando | 10/26/2020 |
| Nicholas | Felice | CLOSER - Closer | 005205 - Closing/Funding - Orlando | 10/26/2020 |
| Desiree | Kirkland | CLOSER - Closer | 005205 - Closing/Funding - Orlando | 11/02/2020 |
| Trenchia | Mckinnie | UWSUPS - Underwriter Support Specialist | 005105 - Underwriting - Orlando | 11/16/2020 |
| Melissa | Ngah | UWSUPS - Underwriter Support Specialist | 005105 - Underwriting - Orlando | 01/04/2021 |
| Lon | Woodard | UWSUPS - Underwriter Support Specialist | 005105 - Underwriting - Orlando | 01/11/2021 |
| Gerald | Davis | UWSUPS - Underwriter Support Specialist | 005105 - Underwriting - Orlando | 01/19/2021 |
| Kehana L. | Wills | UW - Underwriter | 005105 - Underwriting - Orlando | 02/08/2021 |
| Brett M. | Tabor | UW - Underwriter | 005105 - Underwriting - Orlando | 03/29/2021 |
| Darvin | Ezell | UWSUPS - Underwriter Support Specialist | 005105 - Underwriting - Orlando | 04/19/2021 |
| David W. | McCoy | UW - Underwriter | 005105 - Underwriting - Orlando | 05/03/2021 |
| Ramona | Coleman | UW - Underwriter | 005105 - Underwriting - Orlando | 05/17/2021 |

**C. Dr. Fishkind falsely claims that disgorgement of profits cannot be easily calculated.**

24. Another important element of damages is disgorgement of profits, which has nothing to do with industry compensation trends or turnover. However, Dr. Fishkind claims that, "it is not at all clear that a reliable estimate for the incremental profits generated by a small number of specialized staff can be developed. The Report offers no guidance."[31] He further states that, "the Report could

---

[30] GHMC 003263
[31] Dr. Hank Fishkind Report, p.12, 19 paragraph 47, 71.

Rebuttal Expert Report of Robert Crandall

have attempted to use data from the Plaintiff to estimate profits associated with the small contingent of recruited staff. It is telling that the Report made no such attempt. This is consistent with likely inability to make such an estimate to a reasonable degree of economic certainty."[32] These statements are misleading. My previous report did not calculate damages associated with disgorgement of profits because GHMC failed to produce any documents related to their profitability per loan or number of loans closed by its underwriters, including the solicited associates at the time my first report was due and served. GHMC has since produced the latter category of information. However, just because GHMC failed to produce documents and data related to this issue does not mean it does not exist. It is my understanding that GHMC claims it does not maintain information on per loan profitability. This is unusual for a mortgage finance company that I understand pays incentive pay on each loan to the employees who are originating, processing, underwriting, and funding the loans and collecting fees on a loan-by-loan basis.

25.     Furthermore, profit per loan is a common metric used in the industry. It only requires knowing overall profit, expenses, and the number of total loans closed for a period of time. As shown in Exhibit R3 below, Home Point, like most other firms in the industry, can easily track such a metric. Exhibit R3 shows Home Point's average profit per loan on a monthly basis over the period spanning July 2020 through March 2021. As shown on this exhibit, Home Point reported an average profit of **$8,708 in September 2020** (when the mass raid occurred); $8,031 in October 2020; $7,444 in November 2020; and $6,115 in December 2020.

### - EXHIBIT R3[33] -
### - Home Point's Average Profit Per Loan -
### - July 2020 through March 2021 -

| | Jul-2020 | Aug-2020 | Sep-2020 | Oct-2020 | Nov-2020 | Dec-2020 | Jan-2021 | Feb-2021 | Mar-2021 |
|---|---|---|---|---|---|---|---|---|---|
| TPO Net Income - $ | 81,711,175 | 89,343,252 | 95,351,695 | 96,671,706 | 95,017,724 | 89,802,728 | 77,157,923 | 79,288,740 | 87,395,646 |
| TPO Funded units | 10,638 | 10,655 | 10,950 | 12,037 | 12,765 | 14,685 | 15,440 | 15,856 | 21,035 |
| TPO Profit per loan | $ 7,681 | $ 8,385 | $ 8,708 | $ 8,031 | $ 7,444 | $ 6,115 | $ 4,997 | $ 5,001 | $ 4,155 |

| Average Profit per TPO loan for period (Jul '20-Mar '21) | $ 6,724 |
|---|---|

---

[32] Dr. Hank Fishkind Report, p.12 paragraph 48.
[33] See HPLANE00005515

Rebuttal Expert Report of Robert Crandall

26.     Indeed, the Mortgage Bankers Association ("MBA") website, which Dr. Fishkind relied upon to produce his Figure 3, reports on profits per loan as an industry benchmark.[34] According to the MBA Annual Mortgage Bankers Performance Report, the industry saw an average profit of $4,202 per loan in 2020 and an average profit of $3,738 per loan in Q4 of 2020.[35] Thus, if we assume that GHMC achieved the industry average profit per loan, then GHMC's profits associated with the loans worked on by solicited former Home Point associates can be reliably estimated. Exhibit R4 below shows the pre-tax profitability per loan for the period two years prior to the raid and two years after the raid. [36,37,38,39] As shown on this Exhibit, profit per loan was at an industry high during the approximate time when the solicitation occurred. Furthermore, Home Point's data corroborates the general industry trend shown in Exhibit R4 below and indicates that, for Home Point specifically, profit per loan was at a peak in September 2020.

## - EXHIBIT R4 -
### Pre-Tax Net Porduction Income Per Loan Generated After Expenses



[34] https://www.mba.org/
[35] Mortgage Bankers Association: https://www.mba.org/news-and-research/research-and-economics/single-family-research/mortgage-bankers-performance-reports-quarterly-and-annual
[36] Mortgage Bankers Association: https://www.mba.org/news-and-research/research-and-economics/single-family-research/mortgage-bankers-performance-reports-quarterly-and-annual
[37] Pre-Tax Loan Production Income= Loan Production Revenue (1) - Fully-loaded Loan Production Expense (2)
[38] (1) Loan Production Revenue: Includes origination fees, net secondary marketing income, net warehousing income, and other origination-related revenue
[39] (2) Fully-loaded loan production expense:  Includes personnel expenses, occupancy and equipment and miscellaneous expenses for sales, fulfillment and post-closing activity.  Also includes corporate allocations.

Rebuttal Expert Report of Robert Crandall

27.     While GHMC did not produce information related to its profit per loan, it did produce documents showing the number of loans closed by GHMC employees from July 2020 through December 2020.[40] These documents also contain information regarding the number of loans worked on by the Home Point associates who accepted employment with GHMC after and because of the mass raid. As discussed in my previous report, Defendants' raid in September 2020 expanded GHMC's capacity during a time period when the demand for loans and profits per loan were at historic highs.

28.     To estimate GHMC's profits associated with the loans closed by Home Point's solicited and hired associates, I applied the $3,738 Q4 2020 average profit per loan based on MBA's market average to the number of loans closed by the solicited and hired Home Point associates who worked for GHMC over the period spanning October through December 2020. This estimate is conservative because as shown above, $3,738 average profit per loan is well under half of the average profit per loan Home Point made in Q4 2020. It is possible that GHMC's profits per loan were also much higher than $3,738 in Q4 2020. For example, the data GHMC produced shows that former Home Point associates who were solicited by Defendants closed 244 loans in their first month after the raid. Using the conservative $3,738 average profit per loan equates to a total of $912,072 in profits in the first month (October 2020) alone. Furthermore, the data shows that these associates closed a total of 830 loans for GHMC between October and December of 2020. While GHMC's production cuts-off in December 2020, it is likely that the solicited Home Point associates closed more loans in 2021. Thus, the present analysis which ends in December 2020 likely understates the profits generated by the work of solicited Home Point associates. As shown on Exhibit R5, this methodology results in an estimate of total profit of **$3,102,540** gained by GHMC as a result of its mass raid**, for the time period from October to December 2020**.  If more information is produced by GHMC regarding loans closed by these same employees after December 2020, I will update the analysis.

---

[40] GHMC 003257; 3264.

Rebuttal Expert Report of Robert Crandall

**- EXHIBIT R5 -**
**Total Additional Profits Generated by Solicited Home Point Associates**
**- October 2020 through December 2020 -**

| Solicited Former Home Point Associates | Total Number of Loans Closed in October 2020 | Total Number of Loans Closed in November 2020 | Total Number of Loans Closed in December 2020 | Total Number of Loans in 2020 | Total Q4 2020 Profit |
|---|---|---|---|---|---|
| Ann Webb | 19 | 9 | | 28 | $104,664 |
| Brian Dwyer | 22 | 32 | 36 | 90 | $336,420 |
| Carla Rigdon | 33 | 32 | 36 | 101 | $377,538 |
| Chandy Burke | 21 | 39 | 54 | 114 | $426,132 |
| Charlene Murray | 34 | 24 | | 58 | $216,804 |
| Chris Wilkins | 20 | 48 | 30 | 98 | $366,324 |
| Claudio Betts | 29 | 20 | 44 | 93 | $347,634 |
| Daniel Cook | 20 | 30 | 13 | 63 | $235,494 |
| Jarrett Herrin | 22 | 33 | 46 | 101 | $377,538 |
| Michelle Izquierdo | 24 | 29 | 31 | 84 | $313,992 |
| **Total** | **244** | **296** | **290** | **830** | **$3,102,540** |

## D. Total Amount in Controversy to Date

29.     Exhibit R6 below summarizes the total estimated damages from my report on March 31, 2023 and includes estimated damages associated with disgorgement of profits.[41]

**- EXHIBIT R6 -**
**Summary of Damages Amounts**

| | |
|---|---|
| Estimated Damages Due to Home Point Payment of Lane's Salary In Early September 2020 | $2,773 |
| Estimated Damages Due to Retention Bonuses Paid by Home Point | $2,647,214 |
| Estimated Damages Due to Salary Increases Paid by Home Point | $298,301 |
| Estimated Damages Due to Recruiting Costs for Replacement Associates | $204,811 |
| Estimated Damages Due to Signing Bonuses Paid to Replace Solicited Associates | $359,073 |
| Estimated Damages Due to Training Costs Associated with Replacement Associates | $49,002 |
| Estimated Disgorgement Due to GHMC's Avoidance of Recruiting Costs for Solicited Associates from Home Point | $239,073 |
| Estimated Disgorgement of GHMC Profits on Loans Closed by Solicited Former Home Point Associates Over the September 2020 through December 2020 Period | $3,102,540 |
| **Total:** | **$6,902,787** |

---

[41] Disgorgement of profits could potentially be much higher. However, GHMC has only produced the information related to number of loans worked on by solicited employees through December of 2020.

1    I declare under the penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct to the best of my knowledge, information and belief. This declaration

3    was executed in Los Angeles, California on May 15, 2023.

4

5

6    _____

7    Robert W. Crandall

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Attachment A



1925 Century Park East
15th Floor
Los Angeles, CA 90067
Office.310.275.9137
Fax.310.275.9086
RCrandall@resecon.com

# ROBERT W. CRANDALL, PARTNER

Robert W. Crandall is a Partner in the litigation consulting practice of Resolution Economics LLC.  He has a M.B.A. from Loyola Marymount University and a B.A. in History from the University of Southern California. Prior to the formation of Resolution Economics, Mr. Crandall was with the Dispute Consulting Group at Deloitte & Touche, the Economics & Litigation Services Group at Altschuler, Melvoin & Glasser, and the Dispute Analysis & Corporate Recovery Group at Price Waterhouse.

Mr. Crandall provides consulting services and expert witness testimony related to a variety of practice areas. He has provided expert testimony in deposition, trial, arbitration, and other forums. He specializes in estimating damages, evaluating business issues and business operations, designing and conducting observation studies and surveys related to work activities, assessing economic and statistical approaches to litigation issues, and performing forensic programming and analysis of large complex databases.  Mr. Crandall has significant experience in analyzing complex data for the purpose of assisting counsel in evaluating class certification and liability.  He is frequently asked to present findings related to class certification, merits, and economic exposure for alternative dispute resolution forums such as mediation, settlement conferences, and arbitration.

## Professional Experience

Mr. Crandall has considerable experience in providing economic and/or statistical analyses related to employment litigation matters. Also, he performs general damages analysis, forensic accounting, business valuations, and statistical analysis in a broad range of matters where the underlying issues are: breach of contract, antitrust, intellectual property, environmental claims, and insurance coverage.  In addition, Mr. Crandall has considerable expertise in financial modeling, creating large databases from paper records and diverse data sources, designing, implementing, and analyzing surveys, and conducting statistical analysis related to complex data intensive litigation assignments.  Finally, Mr. Crandall is experienced in analyzing job duties and content and business operations.

## Employment Discrimination Liability Analysis

Mr. Crandall has performed numerous statistical analyses of liability related to class action, multi-plaintiff, and single plaintiff claims of employment discrimination.  He is experienced at analyzing claims alleging discrimination in hiring, promotion, placement, termination, discipline, and pay equity.   Assignments representative of Mr. Crandall's experience in employment discrimination include the following:

- Provided consulting services to defense counsel in a class action matter alleging racial discrimination in the officer disciplinary process at a very large police department.  Services included statistical analysis of data to test plaintiffs' allegations and work related to rebutting analysis proffered by plaintiffs' expert.



- Provided consulting services to defense counsel in a class action matter, brought by the EEOC, alleging discrimination in recruiting, hiring and placement at a hotel.  Created an applicant database, and performed SAS programming and statistical analysis related all three issues.  Analyzed opposing expert analysis and assisted counsel in developing cross-examination.

- Provided consulting services to defense counsel in a class-action matter brought by the EEOC alleging age discrimination in terminations at a major law firm.  Services included building analytical databases from multiple sources of information, performing statistical analysis related to the discrimination claim, estimating economic exposure for mediation/ settlement discussions.

- Provided consulting services to defense counsel in multi-plaintiff action alleging age discrimination at a major clothing retailer.  Services included researching external labor market characteristics for individuals with the plaintiff's occupation. Created financial models to calculate damages under a variety of offset scenarios.

- Provided consulting services to defense counsel in multi-plaintiff action alleging racial discrimination in work assignments at a government agency.  Services included performing statistical analysis to determine if minority workers received a disproportionate share of unfavorable work assignments.

- Provided consulting services to defense counsel in a multi-plaintiff action alleging gender discrimination in promotions at a large city police department. Services included performing statistical analysis of promotions and placements into coveted positions.

- Provided consulting services to defense counsel in multi-plaintiff action alleging age discrimination following a reduction of force at a hospital. Services included performing statistical analysis of liability and critiquing the analyses proffered by plaintiffs' expert.

- Provided consulting services to defense counsel in a large national class action employment dispute alleging gender discrimination at a warehouse style home and garden center retailer. Performed SAS programming and statistical analyses related to hiring, initial placement, and initial pay of applicants. Performed statistical analyses of female availability in the external labor market. Provided deposition support to counsel including drafting questions for the deposition of the opposing expert witness.

- Provided consulting services to defense counsel in a class action employment matter brought by the EEOC. Constructed a damage model that placed minority applicants in jobs awarded to White employees through analysis of the difference between actual and expected hires based on various flexible assumptions. Developed a random placement model testing both minority and non-minority placements. After placing the minority applicants at an appropriate rate during the damages period, the model calculated the damages of the applicants based on the time of their placement and other labor market factors.

- Provided consulting services to defense counsel in a single plaintiff action alleging age discrimination by a large international food company. Performed SAS programming and statistical analysis of terminations. Analyzed the work product of opposing expert. Assisted in drafting questions for use at deposition.



- Provided consulting services to defense counsel in a class action matter alleging age discrimination at a major drug store chain.  Performed statistical analysis related to terminations of store managers and assistant managers, reviewed and critiqued analysis of opposing experts.

- Provided consulting services to defense counsel in a single plaintiff matter alleging age discrimination in terminations resulting from a reduction in force.  Services included performing statistical analysis of termination claims.

- Provided consulting services to defense counsel in a multi-plaintiff matter alleging national origin discrimination at a waste management company. Performed statistical analyses to test plaintiffs' claims. Developed external labor market benchmarks.

- Provided consulting services to outside counsel in connection to performing statistical analysis of proposed workforce reductions at a publishing company.  Tested various reductions in force scenarios for statistical significance.  Assisted counsel in creating a RIF plan that avoided adverse impact on protected classes.

- Provided consulting services to outside counsel in connection to performing statistical analysis of proposed workforce reductions at a medical supply manufacturing company.  Tested various reductions in force scenarios for statistical significance.  Assisted counsel in creating a RIF plan that avoided adverse impact on protected classes.

- Provided consulting services to defense counsel in a wrongful termination matter alleging racial discrimination at a major defense contractor. Examined workforce composition in response to allegations of systematic discrimination based on race.  Analyzed external labor market availability to determine minority representation in the industry by job classification. Created a visual representation of results to be used as exhibits in trial.  Calculated loss of earnings related to the termination. Drafted cross-examination questions for the examination of plaintiff's expert.

## Class Action Wage and Hour Claims

Mr. Crandall has been involved in more than 500 class action wage and hour matters.  He is highly experienced in analyzing liability, damages, and class-member commonality related to wage and hour claims.  He is experienced in designing, implementing, and analyzing surveys and time-in-motion studies and performing forensic data analysis related to job content, exempt / non-exempt status, independent contractor / employee status, hours worked, uncompensated time, meal and rest breaks, improper pay calculations, and other issues. Finally, Mr. Crandall has significant experience in assisting counsel at mediation where he presents findings related to class certification and merits issues, evaluates economic exposure under a variety of legal theories, and assists in structuring the settlement terms. In this role, Mr. Crandall has worked for a party or as a neutral expert. Assignments representative of Mr. Crandall's wage and hour experience include:

- Provided consulting services to defense counsel in a national class-action wage and hour matter alleging that several thousand loan originators at a large banking institution were misclassified under FLSA. Conducted statistical analyses of hours worked records, compensation data, plaintiffs' declarations, and other data to determine if select groups of plaintiffs would be representative of class.  Assisted counsel in developing an approach for trial, estimating economic damages, and critiquing plaintiff's trial plan and damages analyses.



- Provided consulting services and expert services to defense counsel in a class action wage and hour matter alleging several hundred insurance sales originators at a call center were misclassified as exempt workers. Services included analyzing phone system data containing over 5.5 million records and computer login / logout data containing over 250,000 records to estimate overtime hours worked each workweek and the number of missed meal and rest periods. Analyzed compensation data and estimated economic damages for the class.

- Provided consulting services to defense counsel in a wage and hour matter alleging that several hundred loan originators were misclassified as exempt workers. Services included analyzing phone system data containing over 5.3 million records and over 1 million door swipe records to estimate overtime hours worked and the number of missed meals and rest periods each workweek. Analyzed compensation data and estimated damages and penalties for the class for mediation. Also, developed an economic model that estimated exposure based on the probability and economic consequences associated with winning or losing a variety of legal rulings.

- Provided consulting services to defense counsel in a wage and hour matter alleging that several thousand General Managers and Assistant Managers at a large office supply retailer were misclassified as exempt employees. Services included designing and conducting a survey to examine whether class members were appropriately classified, analyzing the company's labor model and human resources data, and conducting statistical analysis related to a variety of class certification issues.

- Provided consulting services and expert witness testimony to defense counsel in a matter alleging hourly workers at a large chain of convenience stores were denied meal and rest periods, that all workers lost vacation pay, and that the employer placed employees on unpaid leave prior to termination to avoid waiting time penalties. Services included data and statistical analysis of over 25 million time clock records in order to examine a variety of issues related to shift duration and break opportunities, analysis of vacation data to determine the number employees impacted by the policy, and analysis of termination records to demonstrate that there was no systematic practice of placing employees on LOA status prior to termination.

- Provided consulting services to defense counsel in a wage and hours matter alleging store managers and assistant store managers at a chain of retail discount stores were misclassified. Services included creating and implementing a survey to examine whether class members were classified appropriately and conducting statistical analysis related to commonality of class-members and other class certification issues. Also, analyzed and critiqued a survey conducted by plaintiffs, assisted counsel in opposing expert depositions, and estimated economic damages for mediation.

- Provided consulting services to defense counsel in a wage and hours matter alleging store managers at a chain of convenience stores were misclassified. Services included creating and implementing a survey to examine whether class members were classified appropriately, analyzing labor models, conducting statistical analysis related to commonality of class-members, assisting counsel in estimating damages for mediation.

- Provided consulting services to defense counsel in a class-action wage and hour matter alleging uncompensated meal periods and breaks, unpaid overtime wages, and minimum wage violations at a field maintenance company. Services included creating a database of hours worked from paper and electronic records, and then providing damages estimates based on a variety of assumptions and legal theories.



- Provided consulting services to defense counsel in a multi-plaintiff wage and hour matter alleging that the defendant employer failed to compensate security guards for uniform changing time and other claims of off-the-clock work.  Services included designing and conducting an observation study to measure time associated with various activities and estimating damages for mediation.

- Provided consulting services to defense counsel in a wage and hours matter alleging store managers and assistant store managers at a chain of clothing retail stores were misclassified.  Services included creating and implementing a survey to examine whether class members were classified appropriately and conducting statistical analysis related to commonality of class-members and other class certification issues.

- Provided consulting services to defense counsel in a class action matter alleging a variety of wage and hour violations for hourly workers at chain of warehouse stores.  Services included analyzing over 5.5 million time clock records and payroll data to evaluate allegations of improper time adjustments, missed meal and rest periods, uncompensated split shifts, reporting time violations, overtime and regular rate issues, and off-the-clock work.  Also, estimated damages for mediation.

- Provided consulting services to defense counsel in a class action matter alleging a variety of wage and hour violations related to time spent donning and doffing at a food factory.  Services included designing a statistical sampling approach, conducting a time and motion study to measure donning and doffing time, and estimating economic damages related to various claims.

- Provided consulting services to defense counsel in a class action wage and hour matter alleging meal and rest period violations for hourly workers at chain of disabled adult services centers.  Services included designing and conducting an observation study to estimate breaks taken and break opportunities.  Also, assisted counsel in examining class certification issues and the representativeness of the name plaintiffs' claims.

- Provided consulting services to defense counsel in a national class action wage and hour matter alleging off-the-clock work at a storage company.  Services included analyzing company hours data to test plaintiffs' legal theory, reviewing, analyzing, and critiquing a survey conducted by plaintiffs, conducting statistical analyses related to class certification, designing a conducting a survey related to management and timekeeping practices, and estimating economic damages for mediation.

- Provided consulting services to defense counsel in a class action wage and hour matter alleging that several hundred managers were misclassified as exempt workers by a large restaurant chain.  Analyzed data and assisted counsel in developing approaches to class certification.

- Provided consulting services to defense counsel in a wage and hour class action matter alleging that the defendant grocery store chain misclassified several hundred non-exempt assistant managers as exempt workers.  Services included creating database of hours worked, designing a flexible financial model, and computing damages under a variety of counsel specified scenarios for the purposes of mediation.



- Provided consulting services to defense counsel in several wage and hour matters alleging that police officers should be compensated for donning and doffing and other tasks. Services included analyzing survey data and time clock data to determine class certification issues for other off-the-clock tasks and constructed measures of donning and doffing time.

- Provided consulting services to defense counsel in a class action matter alleging failure to pay overtime wages to independent sales and service representatives for a large national tool franchiser. Services included designing and implementing an hours survey to determine whether the additional hours worked claimed by some plaintiffs was representative of the additional hours worked by the class as a whole. Determined that the problem were isolated to certain geographic areas rather than nationwide.

- Provided consulting services to defense counsel in a matter alleging that a class of several hundred independent contractors were misclassified employees. Services included designing a sampling scheme, building and analyzing a database of business expenses, analyzing the business model, and performing business valuations related to a number of businesses.

- Provided consulting services and expert witness testimony to defense counsel in a NLRB matter alleging that independent contractors package delivery drivers were misclassified employees. Services included analyzing the business model, productivity data, and other business records, and performing business valuations related to several businesses.

- Provided consulting services to defense counsel in a class action matter alleging that independent contractors and their employees/ workers were misclassified employees of the defendant and a large national hardware chain. Services included analysis of the business model to evaluate whether the business model meets the criteria for a business.

- Provided consulting services to defense counsel in a multi-district class action matter alleging that independent contractors in the package delivery business were misclassified employees. Services included analyzing the business model, conducting a variety of surveys, and responding to the class certification report of plaintiffs' expert.

- Provided consulting services to defense counsel in a matter alleging uncompensated time for donning and doffing at a chain of quick oil lube establishments. Services included designing and conducting a time and motion study to estimate total time spent donning and doffing and designing a survey to determine uniform practices to assess class certification and de minimis issues.

- Provided consulting services to defense counsel in a class action matter alleging that product marketing testers performed off-the-clock work and were denied meals and rest periods. Services included designing and conducting an online survey to evaluate commonality issues.



## Employment Damages Analysis

Mr. Crandall has assisted counsel in estimating employment related economic damages in more than 100 cases. He has expertise in evaluating but-for earnings, job search efforts, mitigation opportunities, and losses related to stock options and other forms of equity. Assignments representative of Mr. Crandall's experience estimating economic damages include the following:

- Provided consulting services to defense counsel in numerous matters alleging to wrongful termination of police officers, failure to promote police officers, and failure to hire police officers from a variety of police agencies. Services included analyzing labor market opportunities for police officers and creating economic models to estimate economic damages under a variety of career paths and/or retirement scenarios and critiquing the analyses of opposing experts.

- Provided consulting services to defense counsel in numerous matters alleging wrongful termination, or failure to promote government employees at a variety of city level agencies.  Services included creating economic models to estimate damages under a variety of career paths and retirement scenarios.

- Provided consulting services to defense counsel in numerous matters alleging wrongful termination in the grocery industry.   Services included creating models to estimate economic damages, analyzing mitigation opportunities, and critiquing the work of opposing experts.

- Provided consulting services to defense counsel in numerous matters alleging wrongful termination in the retail industry.   Services included creating models to estimate economic damages, analyzing mitigation opportunities, and critiquing the work of opposing experts.

- Provided consulting services to defense counsel where the underlying issue was a class action failure to hire complaint brought by the EEOC.  Services included creating financial models for estimating damages for the ten named plaintiffs, as well as, estimating potential damages for the class.

- Provided consulting services to defense counsel in a breach of contract matter where the underlying issue was related to an alleged failure to deliver stock options to an executive in the high-tech industry.  Analyzed options value under a variety of trading strategies.

- Provided consulting services to plaintiff counsel in a National Labor Relations Act right to work case. Services included calculating the economic losses suffered by twenty-five plaintiffs due to alleged illegal acts by their union.

- Provided consulting services to defense counsel in a multi-plaintiff action alleging wrongful terminations by an aerospace and defense contractor.  Evaluated plaintiff's expert report, and developed cross-examination questions for deposition and trial. Also, provided a rebuttal analysis of economic damages.

- Provided consulting services to plaintiff's counsel in a matter alleging wrongful termination and breach of contract for a high-ranking executive at a health care company.  Evaluated labor market earnings potential, calculated economic damages, reviewed defendant's expert analyses, and drafted a report of findings and a rebuttal report.



- Provided consulting services to plaintiff's counsel in a matter alleging wrongful termination and breach of contract for a highly compensated sales employee in the high-tech industry. Evaluated labor market earnings potential, calculated economic damages, created exhibits for use at mediation, and created trial exhibits.

- Provided consulting services to defense counsel in a wrongful termination matter that alleged discrimination based on national origin brought by a former project manager at a large engineering corporation. Analyzed mitigation factors and calculated loss of earnings.

## Insurance Coverage/Environment/Statistics

Assignments representative of Mr. Crandall's experience in related to insurance converge, environmental claims, and other statistical matters include:

- Provided consulting services to defense counsel in connection with a Department of Justice investigation regarding allegations of racial profiling by a large city police department. Analyzed departmental data related to over 130,000 traffic stops, pedestrian stops, and other types of police contacts that occurred in four selected weeks in 1997 and four selected weeks in 1999. Cross-referenced traffic stops data with other departmental information sources including human resources data, precinct level paper records, and the officer discipline system to test various hypotheses.

- Provided consulting services to defense counsel in a 17200 action alleging that the defendant insurer was using inappropriate condition adjustments when settling vehicle total loss claims. Services included analyzing theoretical issues related to used car pricing, conducting regression analysis to estimate coefficients for various condition adjustments, and determining the fairness of the settlements amounts for the name plaintiffs vehicles.

- Provided consulting services to coverage counsel in a CERCLA cost recovery action. Created a database of costs relating to the clean-up of several sites once used by an aerospace and defense contractor. Performed analysis to apportion clean up costs between covered and not covered.

- Provided consulting services supporting coverage counsel in a binding arbitration where the underlying issue was coverage for thousands of asbestos claims. Performed SAS programming, statistical analysis, created summary exhibits, and drafted a report of findings.

- Provided consulting services to coverage counsel in a class action matter alleging overcharging in workman's compensation insurance. Analyzed the difference in aggregate premium paid and the economic impact of reclassifying certain medical and legal costs.

- Provided consulting services to coverage counsel for an underlying class action case alleging damages from exposure to asbestos. Analyzed through SAS programming defense and settlement costs for over 100,000 claims. Constructed a model to apportion costs between various insurers and covered and not covered claims.



- Provided consulting services to defense counsel in a class action ADA matter brought against a government transit agency. Created databases from hard copy paper records, analyzed internal agency data, and merged all data to develop a comprehensive database of access failures.  Assisted in the design of a statistical sampling scheme for future monitoring of access to the disabled.

## Forensic Accounting/Business Valuations/Commercial Damages

Assignments representative of Mr. Crandall's experience related to general damages analysis, forensic accounting, finance, and antitrust include:

- Provided consulting services and expert witness testimony to defense counsel in a breach of contract matter. Services included analyzing financial records, estimating damages, and performing a valuation analysis of the plaintiff's business.

- Provided consulting services to defense counsel in a breach of contract matter where the underlying issue was fraudulent inducement of employment.  Services included analyzing financial records to determine the value of shareholder equity at various points in time, creating financial models related to economic losses, analysis of financial performance of an unrelated third party to assess but-for opportunity.

- Provided consulting services to plaintiffs' counsel in class-action matter where the underlying issue was fraudulent overcharges of California consumers. Services included estimating the range of potential damages under a variety of scenarios.  Filed declaration.

- Provided consulting services to plaintiff's counsel in lender liability arbitration involving a complex financial transaction.  Created a financial model that demonstrated the feasibility of the transaction under various interest rate and market return scenarios.

- Provided consulting services to defense counsel in a class action matter alleging unfair business practices related to gift certificate redemptions at a major national retailer.  Services included creating survey to determine redemption patterns and analysis of company data.

- Provided consulting services to plaintiff's counsel in a breach of contract matter related to the testing of an innovative dental implant product.  Analyzed plaintiff's sales, products, marketing, and sales of plaintiff's competitors, analyzed the products, marketing, and sales of potential market entrants, and developed damages analyses based on a market share approach.

- Provided consulting services to defense counsel in a case alleging usury and fraud.  Analyzed accounting records and other data, determined the appropriate interest charges, and quantified overcharge.

- Provided consulting services to plaintiffs and cross-defense counsel in a tort matter alleging interference with recruiting for high-tech salespeople.  Analyzed labor markets and internal recruiting data, and developed damages theory and analyses related to the expected economic return on investments in human capital.  Drafted declaration and provided deposition and strategy support.



- Provided consulting services to plaintiff's counsel in a breach of contract matter related to financing sub-prime equipment leases. Reviewed financial records of plaintiff's business, industry data, and cohort data, and developed a financial model projecting lost profits under a variety of default scenarios.

- Provided consulting services to defense counsel in an antitrust matter alleging anti-competitive behavior in large-scale model industry. Performed forensic accounting involving the reconstruction of sales and purchases of a multi-million dollar closely held-entity. Managed process of converting numerous paper records into computerized format and developed database to analyze sales, purchases, and gross profit margins through SAS programming. Performed accounting to determine if the plaintiff was committing fraudulent practices. Provided deposition support including drafting questions for counsel in the depositions of several fact and expert witnesses.

- Provided consulting services to plaintiff's counsel in a breach of contract matter involving a medical device. Performed SAS programming to create a database of sales and customers. Researched the market for the product in question and developed a damages model based on a market share approach.

- Provided consulting services to defense counsel in a medical malpractice action where the underlying damages issue was valuing an income stream from a closely held cash business. Performed accounting of plaintiff's financial records to determine existence and extent of fraud. Created financial models to calculate damages under a variety of scenarios.

## Intellectual Property

Assignments representative of Mr. Crandall's experience related to intellectual property, trademark, and trade dress disputes include:

- Provided consulting services to plaintiff's counsel in a patent infringement action against a bedding manufacturer. Created database of sales of the patented product by the defendant and plaintiff. Analyzed price erosion caused by the sales of the competing product to the plaintiff's customers and the consequential damages resulting from the diminution of margins.

- Consulting to plaintiff's counsel in a trademark infringement action. Converted paper records to computerized format and created a database of sales attributed to the trademarked product. Analyzed data to calculate profits and consequential damages.

- Provided consulting services to defense counsel in a patent infringement action involving a high-end coffee cup manufacturer. Analyzed sales data and assisted counsel in determining an appropriate amount for settlement.

- Provided consulting services to defense counsel in a trademark infringement/breach of contract matter. Services included valuing the future income generated through use of the trademark and developing financial models and analyses of damages related to a breach of contract cross-complaint related to potential products that exploited the trademark.



- Provided consulting services to claimant's counsel in a matter alleging patent infringement, trademark infringement, and breach of contract claim involving a food additive.  Services included evaluating the market potential for the product and estimating economic damages.

## Education

**Loyola Marymount University**
Masters of Business Administration

**University of Southern California**
Bachelor of Arts, History

## Employment History

**Resolution Economics LLC**
          1998–Present: Partner, Project Manager, Senior Consultant

**Deloitte & Touche, LLP**
          1998:          Senior Consultant, Dispute Consulting Services (Los Angeles)

**Altschuler, Melvoin and Glasser LLP**
          1996-1998:    Staff and Senior Consultant and Marketing Manager, Economics and Litigation Services (Los Angeles)

**Price Waterhouse LLP**
          1993-1996:    Marketing Manager, Dispute Analysis and Corporate Recovery Group (Los Angeles)

## Publications

"Surveys Can Help Court Decide Issues of Commonality", *Los Angeles Daily Journal,* January 28, 2004, Robert W. Crandall and Karyn Model

"Pros and Cons of Anonymous Surveys", December 2011, Richard Goldberg and Robert W. Crandall

"Wage and Hour Litigation", chapter in <u>Litigation Services Handbook</u>, ed. by Roman Weil, et al., 2012

## Memberships

Los Angeles County Bar Association – Labor and Employment Section

Society for Human Resources Management

resolution economics LLC

**Robert W. Crandall, M.B.A.**
**Attachment to Resume**

## TESTIMONY AND AFFIDAVITS PRESENTED (2018-2023)

In the matter of Valerie Alberts, et al. v. Aurora Behavioral Health Care et al., Case No: BC419340, related to data analysis of labor code violation claims and class certification issues, Declaration Filed December 5, 2012. Deposition testimony March 19, 2013.  Rebuttal report filed February 28, 2018. Deposition testimony April 19, 2018.

In the matter of Nate Booker, et. al., v. Tanintco, Inc., et al., Case No: BC 349267, And related cases: BC351252, BC354230, related to statistical analysis of data, rebuttal of plaintiffs' expert report, and response to plaintiffs' trial plan.  Report filed June 9, 2015.  Deposition testimony July 14, 2015. Report filed October 20, 2017.  Report filed July 27, 2018. Report filed September 10, 2019. Deposition testimony September 13, 2019.   Trial testimony February 7, 2020, February 10, 2020, and February 11, 2020.

In the matter of Archivaldo Marquez, et al. v. Weber Distribution, Case No. BC 512269, related to rebuttal of plaintiffs' trial plan and proposed survey.  Report filed March 11, 2016. Rebuttal report filed May 16, 2016.  Deposition testimony March 20, 2018.

In the matter of Christopher Levanoff, et al. v. SoCal Wings LLC., et al., Case No: 30-2011-00511808-CU-OE-CXC, related to statistical analysis of data, rebuttal of opposing expert, evaluation of trial plan, rebuttal of opposing expert's survey.  Reports filed on April 26, 2016, June 3, 2016, July 7, 2016, September 23, 2016, January 24, 2017, September 6, 2017, September 19, 2017 and January 18, 2018.  Deposition testimony October 5, 2016.  Trial testimony June 26, 2018, June 27, 2018. Trial testimony June 26, 2018 and June 27, 2018.

In the matter of Troy Slack, et al. v. Swift Transportation CO. of Arizona, LLC., Case No: 3:11-cv-05843-BHS. Related to statistical analysis of data, analysis of economic damages, and rebuttal to plaintiffs' expert report.  Report filed March 10, 2017.   Trial testimony July 18, 2017.

In the matter of Naomi Slaton, et. al. v. Dole Packaged Foods, et al., Case No: CVM016111.  Related to evaluation of trial plan and statistical analysis of data.  Report filed March 22, 2017. Supplemental report filed July 10, 2017. Rebuttal report filed March 28, 2018.

In the matter of Donna Busik, et. al. v. Maplebear Inc., et al., JAMS reference #1100081511, related to statistical analysis of data and business model to evaluate independent contractor status.

In the matter of Party City Wage and Hour Cases, JCCP Case No. 4781. Related to statistical analysis of data in connection with class certification issues.  Report filed May 31, 2017.  Deposition testimony July 26, 2017.  Report Filed March 19, 2019.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>William Helmick, et. al. v. Air Methods Corp., et. al.</u>, Case No: RG133665373, PMK deposition regarding a wage and hour audit.  Deposition testimony June 5, 2017.   Expert report related to class certification issues filed on September 29, 2017. Damages report filed July 30, 2018. Deposition testimony August 2, 2018. Deposition testimony July 7, 2019.  Trial testimony July 22, 2019.

In the matter of <u>Eric Chavez et al. v. Converse, Inc., et al.</u>, Case No: 5-cv-03746-NC.  Related to statistical analysis of data.  Report filed June 23, 2017.  Rebuttal report filed September 20, 2017. Report filed March 20, 2020.

In the matter of <u>Jorge Estrada, et al. v. Royal Carpet Mills, Inc.</u>, Case No: 30-2013-00692890-CU-OE-CXC, related to statistical analysis of data and trial plan issues.  Report filed July 19, 2017.  Trial Testimony April 29, 2019.

In the matter of <u>Westfall, et. al,  v. Ball Metal Beverage Container Corporation</u>, Case No:  2:16-cv-02632-KJM-GGH, related to statistical analysis of data.  Report filed August 28, 2017.  Supplemental report filed January 28, 2019.

In the matter of <u>Gray et al. v. Hansel Ford, Inc.</u>, Case No:  SCV258850, related to statistical analysis of data.  Report filed August 30, 2017. Additional report file in response to Plaintiffs' Motion for Summary Adjudication on January 31, 2020.

In the matter of <u>Mary Andrews, et. al. v. TRG Customer Solutions, Inc., et. al.</u>, Case No: 1:14-cv-00135, related to statistical analysis of data for class certification and merits.  Report filed September 11, 2017.  Deposition testimony February 13, 2018. Rebuttal Report filed March 16, 2018.

In the matter of <u>Robyn James, et. al. v. American Corporate Security, et. al.</u>, Case No: BC525388, related to response to plaintiffs' PAGA trial plan.  Report filed October 2, 2017.  Supplemental report filed May 29, 2018.

In the matter of <u>Balapuwaduge Mendis, et. al. v. Schneider National Carriers, Inc. et al.</u>, Case No: 2:15-cv-00144 JCC, statistical analysis of data, evaluation of merits and damages issues.  Report filed October 30, 2017.  Rebuttal report filed December 15, 2017. Deposition testimony February 8, 2018. Report filed March 23, 2018.

In the matter of <u>Eric Bahra v. County of San Bernardino</u>.  Case No. 5:16-cv-01756-JGB-SP, related to analysis of economic damages.  Report filed November 20, 2017.  Trial testimony July 14, 2021.

In the matter of <u>Irean Amaro, et. al. v. Anaheim Arena Management LLC</u>, Case No: 30-2017-00917542, related to the fairness of class action settlement.  Report filed January 11, 2018. Supplemental Report filed April 20, 2018.

In the matter of <u>Robert Shaw, et. al. v. AMN Services LLC</u>, Case No: 3:16-cv-02816 JCS, related to statistical analysis of data related to class certification issues.  Report filed January 15, 2018. Deposition April 26, 2018.

**ATTACHMENT A**

resolution economics LLC                                         **Robert W. Crandall, M.B.A.**

In the matter of <u>Miguel Rojas-Cifuentes et. al. v. ACX Pacific Northwest Inc. et. al.</u>, Case No: 2:14-cv-00697-JAM-CKD, related to statistical analysis of data for class certification issues, rebuttal of opposing expert.  Report filed January 19, 2018.

In the matter of <u>Juan Barajas, et. al. v. WHM LLC, et. al.</u>, Case No: BC491045, related to analysis of reporting time pay.  Report filed January 31, 2018.

In the matter of <u>Emily Howell, et. al. v. Advantage RN LLC, et. al.</u>, Case No: 3:17-cv-00883-JLS-BLM, related to statistical analysis of data.  Report filed February 2, 2018.  Supplemental report filed May 23, 2019.

In the matter of <u>Diana Vasquez, et. al. v. Warren Distributing Inc., et. al.</u>, Case No: BC549552, related to statistical analysis of data for class certification issues.  Report filed February 2, 2018. Deposition March 20, 2018.  Rebuttal report Filed May 1, 2018.

In the matter of <u>Maria Juarez, et. al. v. Columbia Riverside Inc., et al</u>. Case No: RIC1509204, related to statistical analysis of data for class certification issues and rebuttal of opposing expert.  Report filed February 5, 2018. Deposition testimony March 7, 2018.

In the matter of <u>Jose Nevarez v. Foster Farms LLC,</u> Case No: 13CECG02624, related to statistical analysis of data in support of Defendant's Motion for Summary Adjudication.  Report filed February 28, 2018.  Related to statistical analysis of data and trial plan issues for class certification. Report filed July 11, 2019.

In the matter of <u>Landon Fulmer, et. al., v. Golden State Drilling, Inc.</u>, Case No:  S-1500-CV-279707, Related to analysis of data for liability and damages purposes and rebuttal of opposing expert. Deposition testimony April 30, 2018.

In the matter of <u>Felipe Alverez, et. al. v. YRC Inc., et al.</u>, Case No:  CV 12-0134-TJH-F, related to statistical analysis of data for class certification purposes.  Report filed May 7, 2018.

In the matter of <u>Jaime Maradriaga, et al. v. PIH Health, et al.</u>, Case No: BC597115, related to statistical analysis of data in connection with class certification issues.  Report filed May 23, 2018. Deposition testimony August 21, 2018.  Rebuttal report September 20, 2018.

In the matter of <u>Sephora Wage and Hour Cases</u>, Judicial Council Coordination Proceeding No.: 4911, related to statistical analysis of data for class certification purposes.  Report filed May 29, 2018.  Deposition June 14, 2018. Report related to merits issues and responding to survey filed August 5, 2020.

In the matter of <u>Daniel Rodriguez, et. al., v. TC Mel Trucking, Big E Transportation, et al.</u>, Case No: 219-2017-CV-00327, related to analysis of trucking company business model.  Report filed July 5, 2018.  Report filed March 15, 2019.  Deposition testimony April 5, 2019.

**ATTACHMENT A**

resolution economics LLC                                          **Robert W. Crandall, M.B.A.**

In the matter of <u>CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC</u>, Case No: 1:17-cv-00025-CJW, related to analysis of claims and rebuttal of damages. Report Filed July 20, 2018. Rebuttal Report filed September 28, 2018. Trial testimony July 19, 2019.

In the matter of <u>Ricardo Gomez, et al.  v. USF Reddaway Inc., et al.</u>, Case No: 2.16-cv-05572-JAK (FFM), related to statistical analysis of data for class certification purposes. Report filed July 30, 2018.

In the matter of <u>John May v. Inter-Con Security Systems, Inc.</u>, Case No. BC645310, related to analysis of economic damages and mitigation opportunities.  Deposition testimony August 3, 2018.

In the matter of <u>Norma Gonzalez, et al. v. Waterway Plastics</u>, Case No. 56-2014-00460995-CU-OE-VTA, related to statistical analysis of data for class certification.  Report filed August 11, 2018. Supplemental report filed June 14, 2019.

In the matter of <u>Juan Towle, et al. v. Cummins Pacific, et al.</u>, Case No: 3:18-cv-00083-LAB-JLB, related to statistical analysis of data for class certification and rebuttal of opposing expert.  Report filed August 31, 2018.  Deposition testimony September 5, 2018.

In the matter of <u>Robert Chase and Preston Epps v. Haliburton Energy Services</u>, Arbitration No: 1210034965, related to economic damages.  Deposition testimony September 24, 2018.  Arbitration testimony October 11-12.

In the matter of the <u>State of Washington Employment Security Department v. Zimride Inc., dba Lyft</u>, Case No: 021729 related to analysis of independent contractor status.  Report filed October 11, 2018.

In the matter of <u>Devon Isbell v. Party City Corporation</u>, Case No: 3:17-cv-00709-MMD-VPC, related to analysis of economic damages.  Report filed October 19, 2018.  Deposition testimony November 6, 2018.
In the matter of <u>Ronald Pineda v. Abbot Laboratories Inc., et al</u>. Case No: CV18-3395 SVW (RAOx). Related to analysis of economic damages.  Report filed November 1, 2018.  Rebuttal report filed November 16, 2018. Deposition testimony November 27, 2018.  Supplemental report filed July 27, 2021.  Supplemental rebuttal report filed August 4, 2021.

In the matter of <u>CRST Expedited Inc. v. JB Hunt Transport Inc</u>., Case No: 1:17-cv-00026-LRR, related to analysis of claims and rebuttal of damages.  Report filed November 2, 2018.

In the matter of <u>Matthew Ogura, et. al. v. Thrifty Payless Inc., et. al</u>, Case No: BC605968.  Related to statistical analysis of data for class certification. Report filed November 16, 2018.  Deposition testimony March 18, 2019.  Supplemental Report filed July 16, 2019.

In the matter of <u>Johnny Moody, et. al. v. Infotree Service Inc., et. al.</u> Case No: BC673011. Related to statistical analysis of data.  Report filed November 16, 2018.

In the matter of <u>Mark Prado, et. al. v. Wal-Mart Stores Inc., et al</u>. Case No: 2:17-cv-05630-AB KK, related to analysis of claims and rebuttal of trial plan.  Report filed November 30, 2018.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Rodrigo Reqeudan v. Centerplate of Delaware Inc.</u>, Case No: 17-cv-03828-LHK, related to statistical analysis of data for class certification. Report filed December 3, 2018

In the matter of <u>Marriage of Najarian</u>, Case No: BD634136, related to reasonable compensation of executives of closely held corporation.  Report filed December 12, 2018.

In the matter of <u>Richard Hose, et al. v. Washington Inventory Service,</u> et al., Case No: 3:14-cv-02869-WQH-AGS, related to rebuttal of opposing experts. Report filed December 17, 2018

In the matter of <u>Perez De Leon v. Dunn-Edwards Corporation.</u> Case No: 17-CV-306134, related to analysis of economic damages. Deposition testimony January 8, 2019.  Arbitration testimony February 25, 2019. Report filed April 20, 2020.

In the matter of <u>Timothy Quick v. The County of San Bernardino</u>, Case No: 5:18-cv-00105-JVS (SPx), related to analysis of economic damages.  Report filed January 30, 2019.

In the matter of <u>Rexann Jasso v. Walmart Stores Inc.</u>, Case No: 2:18-cv-02344-ODW-JC, related to analysis of economic damages.  Report filed February 4, 2019.

In the matter of <u>Patricia Rodriguez v. Jack in the Box.</u>, Case No: RG17847828, related to statistical analysis of data.  Deposition testimony March 4, 2019.  Trial testimony May 15-16, 2019.

In the matter of <u>Carol Lear, et al. v. Hitachi Automotive Systems</u>, Case No: 5:17-CV-00186-JMH, related to analysis of timekeeping and payroll data with regard to exemption issues, including rebuttal to plaintiffs' expert report.  Report filed March 11, 2019.  Supplemental report filed June 24, 2021. Rebuttal report filed July 23, 2021.  Deposition testimony August 24, 2021.

In the matter of <u>Stephanie Heredia, et al. v. Eddie Bauer LLC</u>, Case No: 5:16-cv-06236-BLF, related to statistical analysis of data.  Report filed March 29, 2019.  Report filed April 30, 2019.  Deposition Testimony May 3, 2019.

In the matter of <u>William Edwards, et al. v. Leaders in Community Alternatives, Inc.</u>, Case No: 4:18-cv-4609, related to statistical analysis of data.  Report filed April 8, 2019.

In the matter of <u>Carolyn Medina v. SCPMG</u>, Case No: BC613714, related to analysis of economic damages.  Report filed April 15, 2019.  Deposition Testimony April 18, 2019.  Deposition testimony October 7, 2019.

In the matter of <u>William Richards v. County of San Bernardino</u>, Case No: 17-cv-00497-SJO-SP, related to analysis of economic damages.  Report filed May 7, 2019.

In the matter of <u>Pike v. County of San Bernardino</u>, Case No: 5:17-cv-01680, related to statistical analysis of data and rebuttal of opposing expert.  Report filed May 13, 2019.

**ATTACHMENT A**

resolution economics LLC                                        **Robert W. Crandall, M.B.A.**

In the matter of <u>Scot Lee Allison vs. Halliburton Energy Services, Inc.</u>, Arbitration No: 12100035811, related to economic damages.  Deposition testimony May 17, 2019.  Deposition testimony October 30, 2019.  Arbitration testimony November 11, 2019.

In the matter of <u>Shaon Robinson, et al vs. The Chef's Warehouse, Inc.</u>, Case No: 3:15-cv-05421-RS, related to statistical analysis of data and rebuttal of opposing expert.  Report filed May 30, 2019.

In the matter of <u>La Tasha Coates, et al vs. United Parcel Services, Inc.</u>, Case No: 2:18-cv-03012-PSG-AFM, related to statistical analysis of data and rebuttal of opposing expert.  Report filed June 3, 2019.

In the matter of <u>Cindy Castillo, et. al. v. Bank of America, et. al.</u>, Case No: 8:17-cv-00580-DOC (KESx), related to statistical analysis of data for class certification. Report filed June 17, 2019.

In the matter of <u>Azizi Baranauskas, et al., v. Healthcare Manager Services LLC</u>, et. al, Case No:  37-2017-00013171-CU-OE-NC, related to statistical analysis of data for class certification purposes. Report filed July 5, 2019.  Deposition Testimony July 10, 2019.

In the matter of <u>Manuel Vigueras, et. al. v. Red Robin International Inc., et. al</u>, Case No: 8:17-cv-1422, related to statistical analysis of data, rebuttal of trial plan.  Report filed July 8, 2019. Supplemental report filed January 21, 2020.  Rebuttal report filed February 5, 2020.  Deposition testimony February 18, 2020.

In the matter of <u>Barbara Ruotolo, Edward Williams, and Chris Kalhoon v. Lyft, Inc.</u>, Case No: AAA 01-18-0003-9788, 01-18-0003-9782, 01-18-0003-9777, related to statistical analysis of data, discussion of business model and control issues. Report filed August 14, 2019.  Deposition testimony August 20, 2019.

In the matter of <u>Alejandra Del Aguila v. Herbalife International of America Inc</u>., Case No: BC689113, related to analysis of economic damages.  Report filed September 3, 2019.

In the matter of <u>Amber Pardue, et al. v. CBC Restaurant Corp., et al.</u>, Case No: 2:19-cv-03920-R (SKx), related to statistical analysis of data in connection with class certification and rebuttal of opposing expert. Report filed September 9, 2019.

In the matter of <u>Esmat Yadkouri v. Wal-Mart</u>, Case No. BC620135, related to analysis of economic damages.  Deposition testimony September 20, 2019.

In the matter of <u>Gene Sugimoto v. Intercon Security</u>, Case No: 3:19 –CV-0025 DMS-BLM, related to analysis of economic damages. Report filed September 26, 2019.

In the matter of <u>Patricia Harvey, et. al. v. Bed Bath & Beyond et al.</u>, Case No: RG17885153, related to analysis of seating claims in connection with evaluation of the settlement fairness. Report filed September 30, 2019.

**ATTACHMENT A**

**resolution economics** LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Irma Frausto et. al. v. Bank of America, National Association</u>, Case No: 3:18-cv-01983-LB (Frausto)/3:18-cv-01202-LB (Suarez), related to class certification. Report filed October 11, 2019.  Rebuttal report filed November 15, 2019.

In the matter of <u>John Utne, et. al., v. The Home Depot USA, Inc</u>., Case No: 3:16-CV-01854-RS, related to video study of claims.  Report filed October 16, 2019. Supplemental Declaration filed December 20, 2019. Rebuttal report filed April 30, 2020.  Sur-rebuttal report filed December 17, 2021.  Deposition testimony February 4, 2022. Deposition testimony August 23, 2022.

In the matter of <u>Ashley Broussard v. The Geo Group, et. al.</u>, Case No. CIVDS1722295, related to analysis of economic damages.  Deposition testimony October 31, 2019.

In the matter of <u>Melody Cunningham, et. al, v. Lyft Inc., et al</u>., Case No: 1:19-CV-11974-IT, related to statistical analysis of data. Reports filed November 6, 2019 and April 3, 2020.

In the matter of <u>Roberto Tellez, et. al. v. Harvest Container Co., et al</u>, Case No:  VCU264528, related to statistical analysis of data for class certification. Report filed December 16, 2019.

In the matter of <u>Andrew Gordon, et. al, v. TBC Retail Group, Inc</u>., et.al, Case No: 2:14-cv-03365-DCN, related to statistical analysis of data.  Report filed November 20, 2019.  Deposition testimony January 17, 2020.

In the matter of <u>Robert Cole and Kristie King v. Sallyport Global Holdings, Inc</u>., Case No: 2018-2951, related to analysis of economic damages.  Report filed January 2, 2020.

In the matter of <u>Arliss Villalta, et. al. v. Leonardo's Restaurant Inc., et. al</u>., Case No: BC542133, related to discussion of trial plan.  Report filed January 20, 2020.  Deposition testimony February 24, 2020.

In the matter of the <u>People of the State of California v. Maplebear Inc., dba Instacart</u>, Case No:37-2019-00048731-CU-MC-CTL, related to statistical analysis of data.  Report filed February 2, 2020.

In the matter of <u>Mesfin Haile v. LA Auto Distributors</u>, Case No: 18-3162-MDM, related to analysis of economic damages and rebuttal of opposing expert.  Deposition testimony March 10, 2020.

In the matter of <u>John Rogers, et al. v. Lyft</u>, Case No: CGC-20-583685, related to statistical analysis of data.  Report filed March 25, 2020.  Report filed April 16, 2020.

In the matter of <u>Christopher Lyons, et al., v. Air Methods Corp., et al</u>, Case No: 3:20-cv-01700-PJH (DMR), related to potential amounts in controversy. Report filed April 22, 2020.

In the matter of re<u>: Westamerica Wage and Hours Issues</u>, Case No JCCP004921, related to trial plan issues. Report filed April 30, 2020.   Report filed November 13, 2020.  Deposition December 1, 2020.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Scott Stout, et. al. v. GEO Group, et. al.</u>, Case No:  37-2019-00000650-CU-CR-CTL, related to statistical analysis of data and class certification issues.  Report filed June 18, 2020.

In the matter of <u>Christine Andersen, et. al. v. RSCR California Inc., et. al.</u>,  Case No: 5:18-cv-02474-JAK-KK, related to statistical analysis of data, trial plan, and survey issues.  Report filed June 30, 2020.  Deposition testimony August 27, 2020.  Supplemental Report October 1, 2020.

In the matter of <u>Nick Nichols v. City of Burbank</u>, Case No EC06467, related to analysis of economic damages. Deposition testimony July 15, 2020

In the matter of <u>Audrey Heredia, et. al. v. Sunrise Senior Living, et. al.</u>,  Case No: 8:18-cv-01974-JLS-JDE.  Related to rebuttal of opposing expert.  Report filed September 1, 2020.  Deposition Testimony October 22, 2020.  Supplemental report June 23, 2021.  Supplemental declaration August 16, 2021.

In the matter of <u>Omar Ahmad v. Lyft</u>, Case No: AAA Action No. 01-20-0001-7550, related to data analysis, independent contractor status, and damages.  Report filed September 4, 2020.

In the matter of <u>Emilia Santos, et al. v. United Parcel Service Inc,</u>, Case No: 3:18-cv-01377-EMC, related to statistical analysis of data, rebuttal, and trial plan issues.  Report filed September 18, 2020.  Deposition September 25, 2020.

In the matter of <u>HFR R&B Holdings, LLC v. Mapletree SR Management Pte. Ltd</u>, JAMS Reference No: 1220061992, analysis of wage and hour issues in connection with a purchase price dispute.  Report filed September 21, 2020.  Arbitration testimony November 20, 2020.

In the matter of Lisa <u>Boczko v. Lyft, Inc.</u>, Case No: AAA Action No. 01-20-0000-7324, related to data analysis, independent contractor status, and damages.  Report filed September 18, 2020.

In the matter of <u>Oscar Granados v. The GEO Group.</u>, Case No: 8:20-cv-00478-DOC-DFM, related to calculating loss of earnings capacity in a personal injury matter.  Report filed October 9, 2020.

In the matter of <u>Charles Hoffman v. Lyft, Inc.</u>, Case No: AAA Action No. 01-20-0001-6875, related to data analysis, independent contractor status, and damages.  Report filed October 15, 2020.

In the matter of <u>Larry Roach, et al. v. Wal-Mart Stores, Inc.</u>, Case No: 5:18-CV-02536 AB-KK, related to rebuttal of opposing expert.  Report filed October 30, 2020.

In the matter of <u>Roberto Ruiz, et al., v.  Unity Courier Services, et. al.</u>, Case No: BC724435, related to statistical analysis of data in support of motion to strike. Report filed November 11, 2020.  Deposition testimony February 25, 2021.

In the matter of <u>Daniel Barnett v. Lyft, Inc.</u>, Case No: AAA Action No: 01-20-0001-7323, related to data analysis, independent contractor status, and damages.  Report filed December 9, 2020.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Deena Asamurai, et, al. v. First Technology Federal Credit Union</u>, Case No: S-CV-0044446, related to statistical issues associated with trial plan.  Report filed December 14, 2020.

In the matter of <u>Dean A. Robbins, et al, v. Phillips 66 Company, et al</u>., Case No: 3:18-cv-00292-RS (consolidated Case No. 19-cv-01558-RS), related to statistical analysis of data and statistical issues associated with trial plan.  Report filed December 21, 2020.  Deposition testimony January 15, 2021.

In the matter of <u>Michael Lavigne, et, al. v. Herbalife Ltd.</u>, Case No: 2:18-cv-07480-JAK (MRWx), related to statistical analysis of the relationship between earnings and event attendance of Herbalife distributors. Report filed January 11, 2021. Deposition testimony February 2, 2021.

In the matter of <u>Michelle Hinds, et, al. v. FedEx Ground Package Systems,</u> Case No: 4:18-cv-01431-JSW (AGT), related to trial plan issues, rebuttal of opposing expert. Report filed February 5, 2021. PAGA declaration filed February 25, 2022.  Deposition testimony April 8, 2022.

In the matter of <u>Mary Jane Gonzales, et. al., v. Healthcare Services Group, Inc</u>, et al. Case No: CGC-18-570988, related to statistical analysis of data and trial plan issues.  Report filed February 11, 2021.  Supplemental report filed May 30, 2021.

In the matter of <u>Louis Ibarra, et al. v. Artisan Screen Printing, et. al.</u>, Case No: BC644708, related to statistical analysis of data in connection with class certification issues.  Report filed February 19, 2021. Deposition testimony March 27, 2021.

In the matter of <u>Victor Polina, et. al. v. Skechers USA Inc</u>., et al., Case No: 19STCV20234, related to video observation study and statistical analysis of data in connection with suitable seating claims. Report filed March 2, 2021.  Deposition testimony March 5, 2021.

In the matter of <u>Eric Ayala, et. al., v. UPS Supply Chain Solutions, et al.</u>, Case No: 5:20-cv-00117 PSG-AFM, related to statistical analysis of data, video observation, rebuttal of opposing expert, and critique of trial plan.  Report filed March 15, 2021. Deposition testimony April 7, 2021.

In the matter of <u>John Elmy, et. al. v. Western Express, et. al.</u>, Case No: 3:17-CV-01199, related to statistical analysis of data related to class certification issues.  Report filed March 17, 2021.

In the matter of <u>Kevin Anderson et. al. v. Equinox Holdings Inc., et. al</u>, Case No: 37-2018-00014364-CU-OE-CTL, related to statistical analysis of data, discussion of trial plan issues, rebuttal of opposing experts, and rebuttal of survey conducted by opposing counsel.  Report filed April 2, 2021.

In the mater of <u>Michelle Frey v. Creative Artists Agency</u>, Case No: 1210037212, related to analysis of economic damages.  Declaration filed April 20, 2021. Arbitration testimony May 13, 2021.

In the matter of <u>Herman Overpeck, et. al. v. FedEx Corporation, et. al.</u>, Case No:  4:18-cv-07553-PJH (DMR), related to statistical analysis of data and rebuttal of opposing expert.  Report filed June 1, 2021.  Deposition testimony August 10, 2021.

**ATTACHMENT A**

resolution economics LLC                                      **Robert W. Crandall, M.B.A.**

In the matter of <u>Hernan Hernandez v. Restoration Hardware, et. al.</u>, Case No: CIVDS1723322, related to statistical of data and rebuttal of opposing expert.  Report filed June 4, 2021.  Deposition testimony June 18, 2021.  Supplemental report filed September 2, 2021.

In the matter of <u>Ronald Held, et. al. v. Hitachi Automotive Systems Americas</u>, et. al., Case No: 18-CI-00294, related to statistical analysis of data.  Report filed June 28, 2021. Rebuttal report filed July 23, 2021.  Deposition testimony August 24, 2021.

In the matter of <u>Randy Salinas, et. al. v. The Cornwell Quality Tools Company, et al.</u>,  Case No: 5:19-cv-02275-FLA-SP, related to statistical analysis of data and discussion of business model issues.  Report filed July 2, 2021.   Deposition testimony July 20, 2021.

In the matter of <u>Christine Crump, et al. v. Hyatt Corporation, et. al.</u>, Case No: 4:20-cv-00295-HSG, related to statistical analysis of data, critique of opposing experts, and trial plan.  Report filed July 15, 2021.

In the matter of <u>Marvin Nash, et. al. v. Horizon Freight System Inc., et. al.</u>, Case No: 3:19-cv-01833-VC, related to rebuttal of opposing experts survey and data study.  Report filed July 23, 2021.  Rebuttal report filed September 10, 2021.

In the matter of <u>Earnest Cuadra, et. al. v. FedEx Ground Package System, et. al.</u>, Case No: 2:20-cv-10719-JFW (SKx), related to rebuttal of opposing expert's survey.  Report filed July 26, 2021.  Deposition testimony July 27, 2021. Supplemental report filed August 16, 2021.

In the matter of <u>Natalie Haaverson, et al. vs. Tavistock Freebirds LLC et al.</u>, Case No: RG19030716, related to analysis of restaurant operations.  Report filed August 16, 2021.  Supplemental report filed September 20, 2021.

In the matter of <u>Claudia Alvarado, et. al. v. Wal-Mart Associates Inc., et. al</u>, Case No: 2:20-cv-01926-AB-KK, related to analysis of class certification issues and critique of opposing expert.  Report filed August 16, 2021. Deposition testimony September 23, 2021.

In the matter of <u>Kathleen Williams and Michael Hill v. City of Long Beach, et al</u>, Case No: 2:18-cv-01069-AB-JC, related to discussion of data and racial profiling claims.  Report filed August 20, 2021.  Rebuttal report filed September 17, 2021.  Deposition testimony October 8, 2021.

In the matter of <u>Yolanda Bennett v. AT&T Services Inc</u>., Case No: 4:20-cv-03581-JST, related to analysis of economic damages.  Report filed August 31, 2021.  Rebuttal report filed September 30, 2021.

In the matter of <u>Sherman Garnett v. County of San Bernardino, et al.</u>, Case No: CIVDS1938394, related to analysis of economic damages.  Deposition testimony September 3, 2021.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Elsie Romero, et. al. v. Select Employment Services, et al</u>., Case No: 2:19-cv-06369-AB-AGR, related to statistical analysis of data and trial plan issues. Report filed September 10, 2021.

In the matter of <u>Valerie Sampson, et. al. v. Knight Transportation</u>, et. al., Case No: 2:17-cv-00028 JCC, related to statistical analysis of data and labor market benchmarking. Report filed October 12, 2021. Rebuttal report filed October 29, 2021. Supplemental declaration December 22, 2021.

In the matter of <u>Brian Dittman, et. al. v. Medical Solutions Inc.</u>, Case No: 2:17-cv- 01851-MCE-CKD, related to statistical analysis of data and labor market benchmarking. Report filed October 14, 2021.

In the matter of <u>Marlea Dell Anno v. City of San Diego</u>, Case No: 37-2017-00000118-CU-OE-CTL, related to analysis of economic damages. Report filed October 15, 2021. Deposition testimony October 20, 2021. Trial testimony March 15, 2022.

In the matter of <u>Donna Preston v. Lyft</u>, AAA Action No. 01-20-0005-0881, related to data analysis, independent contractor status, and damages. Report filed October 19, 2020.

In the matter of <u>Joseph Kennedy v. Lyft</u>, AAA Action No. 01-20-0005-0613, related to data analysis, independent contractor status, and damages. Report filed October 19, 2020.

In the matter of <u>Daniel McCoy v. Lyft</u>, AAA Action No. 01-20-0005-0878, related to data analysis, independent contractor status, and damages. Report filed October 19, 2020.

In the matter of <u>Camille Green, et. al. v. Cornerstone Services Inc., et al</u>., Case No: 1:20-cv-00706-MWM, related to statistical analysis of data. Report filed October 22, 2021.

In the matter of <u>Stephen Kohr v. ULINE Inc., et. al.</u>, Case No: CIVIDS1912069, related to statistical analysis of data. Report filed October 25, 2021. Deposition testimony November 4, 2021.

In the matter <u>Julian Vargas, et. a. v. Quest Diagnostics Clinical Laboratories Inc</u>., et. al., Case No: 2:19-cv-08108-DMG, related to statistical issues and trial management plan. Report filed November 1, 2021. Deposition testimony November 15, 2021.

In the matter of <u>Anthony Mostajo, et. al. v. Nationwide Mutual Insurance, et. al</u>., Case No: 2:17-CV-00350-JAM-AC, related to statistical analysis of data and rebuttal of survey. Report filed November 5, 2021.

In the matter of <u>Giuliana Mendiola v. Regents of the University of California</u>, et. al., Case No: 5:20-cv-00832-ODW-KK, related to analysis of economic damages. Report filed December 24, 2021.

In the matter of <u>George Stickles, et. al. v. Atria Senior Living, et al</u>., Case No: 3:20-cv-09220-WHA, related to statistical analysis of data and rebuttal of opposing expert. Report filed December 31, 2021.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of Karen Hartstein, et. al. v. Hyatt Corporation, et. al., Case No: 2:20-cv-04874-DSF-JPR, related to rebuttal of opposing experts.  Report filed January 7, 2022.

In the matter of Frank Fodera, et. al. v. Equinox Holdings Inc., et al., Case No: 3:19-cv-05072-WHO, related to statistical analysis of data and rebuttal of opposing experts.  Report filed February 4, 2022. Rebuttal report filed February 23, 2022. Supplemental report filed August 3, 2022.

In the matter of Sharey Thomas, et. al. v. Maximus Inc., Case No: 3:21-cv-00498-DJN, related to statistical analysis of data.  Report filed February 10, 2022. Supplemental report filed March 1, 2022.

In the matter of Harjus Birk v. The Regents of the University of California, Case No: 37-2020-00007663-CUWT-CTL, related to analysis of economic damages.  Report filed March 4, 2022.

In the matter of Brian Koos v. The Regents of the University of California, Case No: 18STCV00470, related to analysis of economic damages.  Report filed March 7, 2022.

In the matter of Verna Clarke, et. al. v. AMN Services Inc., Case No:. 2:16-cv-4132 DSF (KSx), related to statistical analysis of data.  Report filed March 8, 2022.

In the matter of Farzin Morena v. Tesla Inc. Jams Arbitration No: 1240023994, related to economic damages.  Report filed March 11, 2022.  Supplemental report filed April 24, 2022. Deposition testimony April 26, 2022.

In the matter of Hekmatollah Yosifi v. The Regents of the University of California, Case No: BC724191, related to economic damages.  Deposition testimony March 14, 2022.

In the matter of Alfredo Martinez and Justin Page v. Southern California Edison, et. al., Case No: BC670461, related to analysis of economic damages.  Deposition testimony March 17, 2022. Trial testimony May 24, 2022.

In the matter of George Chacon, et. al. v. Express Fashion Operations LLC, et al.., Case No: 8:19-CV-00564 JLS (DFMx), related to statistical analysis of data.  Report filed March 24, 2022. Deposition testimony April 18, 2022 and April 28, 2022.

In the matter of Maurice Frank, et. al. v. Golden Gate Bell, et. al., Case No: RG18913275, related to statistical analysis of data.  Report filed March 25, 2022.

In the matter of Dawn Winship v. PruCo Securities, FINRA Case No: 19-00083, related to analysis of economic damages and rebuttal of opposing expert.  Report filed March 24, 2022.  Arbitration testimony March 30, 2022.

In the matter of Racklin v. Zeta Global Corp, United States District Court for the Eastern District of Virginia – Alexandria Division, Civil Action No: 1:21-cv-01035-AJT-JFA related to analysis of economic damages.  Co-authored with Richard Goldberg. Report filed on April 13, 2022.

**ATTACHMENT A**

In the matter of <u>Todd Hearn v. Pacific Gas & Electric Company</u>, Case No: 20CV000391, related to analysis of economic damages and rebuttal of opposing expert.  Deposition testimony April 21, 2022. Trial testimony October 3, 2022.

In the matter of <u>Vanna Troung v. American Red Cross, et. al.</u>, Case No: 2:21-cv-05789 GW(GJSx), related to analysis of economic damages.  Report filed May 2, 2022. Rebuttal Report May 23, 2022.

In the matter of <u>Cecilia Rodriguez, et. Al. v. Wal-Mart Associates, Inc.</u>,  Case No: 2:20-cv-07045, related to rebuttal of opposing expert's proposed survey.  Report filed May 10, 2022.

In the matter of <u>Carla Sanchez, et. al. v. Sam's West Inc., et. al.</u>, Case No: 2:21-CV-05122-SVW-JC, related to rebuttal of opposing expert's proposed survey. Report filed May 11, 2022.  Deposition testimony May 27, 2022.

In the matter of <u>Andres Lopez v. Giorgio Armani Corporation</u>, Case No: BC71329, related to statistical analysis of data and rebuttal of plaintiff's trial plan.  Report filed May 20, 2022. Deposition testimony November 10, 2022.

In the matter of <u>Amanda Bowers, et. al. v. Prolink Staffing Services</u>, et al., Case No: 21STCV22188, related to statistical analysis of data.  Report filed June 1, 2022. Supplemental report filed March 29, 2023.

In the matter of <u>Jennifer Hua v. Western Asset Management Company</u>, et. al., Case No: 19STCV31305, related to analysis of economic damages and rebuttal of opposing expert. Deposition testimony August 25, 2022.

In the matter of <u>Roberts v. TransAm</u>, et al., Case No: 2:21-cv-02073-JWB-GEB, related to analysis of minimum wage and allegations of fraud.  Declaration filed July 22, 2022. Declaration filed September 6, 2022.  Deposition testimony October 27, 2022.

In the matter of <u>Jennifer Brum, et. al. v. MarketSource Inc., et. al.</u>, Case No: 2:17–CV–00241–KJM–JDP, related to statistical analysis of data, rebuttal of opposing experts, and discussion of trial plan. Report filed August 9, 2022. Deposition testimony September 7, 2022.

In the matter of <u>Gregory Andrews v. US Bank</u>, Case No: 8:22-cv-00117-DOC-DF, related to analysis of economic damages. Report filed September 7, 2022.  Rebuttal report filed October 7, 2022.

In the matter of <u>Nicholas Tomaszewski v. City of Palmdale, et. al.</u>, Case No: MC026483, related to analysis of economic damages and rebuttal of opposing expert.  Deposition testimony September 12, 2022.

In the matter of <u>Michael Gonzalez, et. al. v. Charter Communications, et al.</u>, Case No: 2:20-cv-08299-SB-AS, related to statistical analysis of data.  Report filed September 20, 2022.  Rebuttal report filed October 10, 2022.

**ATTACHMENT A**

**resolution economics** LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of Anthony Jones v. City of Alhambra, et. al., Case No: 19STCV11721, related to analysis of economic damages and rebuttal of opposing expert.  Report filed September 20, 2022.  Deposition testimony September 22, 2022.

In the matter of Bonnie Gawf v. City of Monterrey, Case No: 20CV003232, related to analysis of economic damages and rebuttal of opposing expert.  Report filed September 20, 2022.  Deposition testimony September 23, 2022.

In the matter of Kyle Walker v. Howmedica Osteonics Corp., et al., Case No: 22-cv-002640-MMA-JLB, related to analysis of economic damages.  Report filed October 14, 2022.  Rebuttal report filed November 4, 2022.  Deposition testimony December 8, 2022.

In the matter of Julio Garcia, et. al. v. Walmart, et al., Case No: 18-cv-00500-L-MDD, related to statistical analysis of data and rebuttal of opposing expert.  Report filed October 21, 2022.  Rebuttal report filed December 9, 2022.  Deposition testimony January 5, 2023.

In the matter of Austin Works, et. al. v. Flowers Foods Inc., et al. Case No: 3:21-cv-03567, related to analysis of data and independent contractor issues.  Report filed October 17, 2022.  Deposition testimony November 29, 2022.

In the matte of Desmond Augustine, et. al.  v. United Parcel Service, et. al., Case No: BC636468, related to statistical analysis of data and rebuttal of opposing experts.  Report filed October 24, 2022.

In the matter of Carla Janzen v. Regents of the University of California, et. al., Case No: 19STCV24840, related to analysis of economic damages and rebuttal of opposing expert.  Trial testimony October 28, 2022.

In the matter of Martin J. Walsh, Secretary of Labor, et al. v. Nursing Home Care Management Inc., et. al., Case No: 21-2583-CFK.  Related to analysis of potential unpaid wages and rebuttal of opposing expert. Report filed November 18, 2022.

In the matters of Stephanie Walker v. Lyft, Steven Ortega v. Lyft, Michael Foster v. Lyft, Gabriel Lopez v. Lyft, Michael Ayres v. Lyft, and Antonio Alves v. Lyft,  AAA Action Nos. 01-22-0001-7556, 01-22-0001-7557, 01-22-0001-7521, 01-22-0001-7463, 01-22-0001-7402, and 01-22-0001-7417,  respectively, related to data analysis, independent contractor status, and damages.  Reports filed December 2, 2022.

In the matter of Lucio Lemus, et. al. v. Owens Brockway Container Glass Company, Case No: 2:21-CV-00146 FLA (AFMx), related to statistical analysis of data and rebuttal of opposing expert.  Report filed December 9, 2022. Deposition testimony January 9, 2022.

In the matter of Armando Haro, et. al. v. Walmart Inc., Case No: 1:21-cv-00147, related to analysis of video data.  Report filed December 14, 2022.  Deposition testimony January 4, 2023.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Nicholas Lara, et al. v. Z Golf Food & Beverage Services, et al.,</u> Case No: RIC1905177, related to statistical analysis of data and rebuttal of opposing expert. Report filed December 16, 2022. Deposition testimony January 6, 2023.

In the matter of <u>Juan Carlos Corral, et al. v. Staples the Office Superstore LLC,</u> Case No: 2:22-cv-01254-MCS-(PVCx), related to statistical analysis of data and rebuttal of opposing expert. Report filed January 27, 2023.

In the matter of <u>Kathy Arrison, et al. v. Walmart Inc., et. al.</u>, Case No: CV-21-00481-PHXSMB, related to the scientific collection of data and statistical analysis of data. Report filed February 3, 2023. Deposition testimony March 16, 2023.

In the matter of <u>Joseph Ash, et al. v. Flowers Foods Inc, et al.</u>, Case No: 1:21-CV-03566, related to analysis of independent contractor issues. Report filed February 16, 2023.

In the matter of <u>David Padilla, et al. v. Walt Disney Parks and Resorts, et al.</u>, Case No: 2019-01077209-CU-OECXC, related to statistical analysis of data, scientific collection of data, and rebuttal of opposing expert. Report filed February 17, 2023. Deposition testimony March 24, 2023.

In the matter of <u>Edward Castillo v. Burrtec Industries, et al,</u>. Case No: 19STCV31323, related to analysis of economic damages. Report filed March 14, 2023. Deposition testimony March 17, 2023.

In the matter of <u>Antoine Richard, et al. v. Flowers Foods Inc, et al.</u>, Case No: 6:15-CV-02557, related to analysis of independent contractor issues. Report filed March 15, 2023.

In the matter of <u>Raymond Knight, et. al, v. Flowers Foods Inc., et. al.</u>, Case No: NO. 21cv3568, related to analysis of independent contractor issues. Report filed March 16, 2023.

In the matter of <u>Home Point Financial Corporation v. Donald Mark Lane, Candace Robertson Christopher Wilkins, and Guaranty Home Mortgage Corporation</u>, Case No: 6:20-cv-01819-CEM-EJK, related to analysis of economic damages. Report filed March 31, 2023.

In the matter of <u>Claudia Carr, et. al. v. Walmart Inc., et. al.</u>, Case No: 5:21-cv-01429-AB-KK, related to statistical analysis of data and rebuttal of opposing expert. Report filed April 7, 2023.

In the matter of <u>Requel Martin v. Jacobs Engineering, et. al</u>, Case No: 2:22-cv-06240-MRW, related to analysis of economic damages. Report filed April 19, 2023.

In the matter of <u>Jerome King, et. al, v. Flowers Foods Inc., et. al.</u>, Case No: 3:21-cv-00579, related to analysis of independent contractor issues. Report filed May 1, 2023.

**ATTACHMENT A**

# Attachment B

**<u>List of Materials Relied Upon</u>**

- Verified Complaint for Injunctive Relief and Damages and Demand for Jury Trial

- Verified First Amended Complaint for Injunctive Relief and Damages and Demand for Jury Trial

- Deposition Transcript of Chip Adkins

- Deposition Transcript of Teresa Reber

- Deposition Transcript of Donald Mark Lane

- Deposition Transcript of Candace Robertson

- Deposition Transcript of Christopher Wilkins

- Declaration of Donald Mark Lane

- Order Granting in Part and Denying in Part Motion for Preliminary Injunction

- Plaintiff's Initial Disclosures

- Defendants' Initial Disclosures

- Transcript of Motion for Expedited Discovery Hearing Before the Honorable Embry J. Kidd United States Magistrate Judge

- Transcript of Motion for Preliminary Injunction Evidentiary Hearing Before the Honorable Carlos E. Mendoza United States District Judge

- Plaintiff's Objections and Responses to Defendant Donald Mark Lane's First Set of Interrogatories

- Plaintiff's Objections and Responses to Defendant Christopher Wilkin's First Set of Interrogatories

- Plaintiff's Objections and Responses to Defendant Candace Robertson's First Set of Interrogatories

- Plaintiff's Supplemental Responses to Defendant Candace Robertson's First Set of Interrogatories

- Plaintiff's Objections and Responses to Candace Robertson's First Request for Production of Documents

- Plaintiff Home Point Financial Corporation's Supplemental Rule 26(a)(1) Disclosures

- Defendant Guaranty Home Mortgage Corporation's Response to Plaintiff's Second Set of Requests for Production

- Plaintiff's Objections and Responses to Defendant Candace Robertson's Second Set of Interrogatories

---

Rebuttal Expert Report of Robert Crandall

- GHMC Productions
  - GHMC 000001 - GHMC 003296

- Home Point Productions
  - HPLANE 0000001 - HPLANE 00005516

- Lane Productions
  - LANE 000001 - LANE 000991

- Robertson Productions
  - ROBERTSON 000001 - ROBERTSON 000396

- Wilkins Productions
  - WILKINS 000001 - WILKINS 000283

- https://www.mba.org/

- Quarterly MBA Loan Performance Report:
  - https://www.mba.org/news-and-research/research-and-economics/single-family-research/mortgage-bankers-performance-reports-quarterly-and-annual

Rebuttal Expert Report of Robert Crandall